# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DEMETRIUS TERRENCE FRAZIER** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )**Case no.  2:04-CV-0211-RDP-RRA** |
| | ) |
| **WARDEN BARBARA BOUCHARD,** | ) |
| **AND THE ATTORNEY GENERAL** | ) |
| **FOR THE STATE OF ALABAMA,** | ) |
| | ) |
| **Respondents.** | ) |

## MEMORANDUM OPINION

This action seeks habeas corpus relief with respect to petitioner Demetrius Terrence Frazier's ("Frazier") state court conviction and death sentence on a charge of capital murder.  (*See* 28 U.S.C. § 2254).

## PROCEDURAL HISTORY

On June 6, 1996, Frazier was found guilty of capital murder during the course of a robbery as charged in Count I of the Indictment.[1]  A penalty hearing immediately

---

[1]Frazier was charged with three counts of capital murder under the Indictment.  Count I was capital murder during a robbery.  The jury was unable to reach a decision as to Count II, which charged Frazier with murder during a burglary.  Count III charged Frazier with murder during rape. The jury found Frazier guilty of the lesser included offense of murder as to Count III, but the conviction was reversed on direct appeal as a double jeopardy violation.  Count II and Count III are relevant to the Habeas Petition only to the extent Frazier argues at various intervals that he was acquitted of capital murder during a burglary and impliedly acquitted of rape, and these events cast doubt upon or show error was committed in connection with the Count I conviction and sentence.

followed and on June 7, 1996, the jury, by a vote of 10 to 2, recommended that he be sentenced to death.

A formal sentencing hearing as required by Alabama Code § 13A-5-47 (1975) was conducted on August 8, 1996, and, in accordance with the jury's recommendation, the trial court judge sentenced Frazier to death.

Frazier appealed his conviction and sentence to the Alabama Court of Criminal Appeals. On March 26, 1999, that court entered a published opinion affirming Frazier's conviction and death sentence as to Count I of the Indictment. *See Frazier v. State*, 758 So.2d 577 (Ala. Crim. App. 1999).

The Supreme Court of Alabama affirmed the conviction and sentence on December 30, 1999, finding no reversible error, plain or otherwise. *See Ex Parte Frazier*, 758 So.2d 611 (Ala. 1999).

The United States Supreme Court denied Frazier's petition for writ of *certiorari* on October 2, 2000. *See Frazier v. Alabama*, 531 U.S. 843 (2000).

Frazier then filed a petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on September 24, 2001. (Rule 32 C.R. Vol. 7, Tab. 31, pp. 1-178).[2] The State filed an Answer on January 31, 2002. (*Id.* at Vol.

---

[2]The court will utilize the following method of citation to the record. References to specific pages of the court record on direct appeal are designated "C.R.____", and references to the transcript on direct appeal are designated "R.____." References to the court record of the Rule 32 proceedings

8, Tab. 32, pp. 1-75).  Frazier's petition was summarily denied by the trial court in a one (1) page docket entry order on February 8, 2002.  (*Id.* at Vol. 14, Tab. 47).  On March 19, 2002, Frazier's counsel filed "an Emergency Motion to Reconsider and Withdraw the Case Action Summary Sheet denying his Rule 32 petition; and in the Alternative, to Withdraw its Case Action Summary Sheet, enter a new order, and ensure that petitioner is promptly notified of that order."  (*Id.* at Vol. 10, pp. 1-12).[3]  Simultaneously therewith, Frazier filed an amended Rule 32 petition.  (*Id.* at Vol. 9-10, Tab. 33, pp. 1-209).  All of the claims in the amended petition were exactly the same as the original petition, except that Frazier added a juror misconduct claim.  (*Id.* at Vol. 10, Tab. 33, pp. 191-204).

On March 21, 2002, Frazier also filed a Notice of Appeal.  (*Id.* at Vol. 10, pp. 639-48).  The State responded with a Motion to Strike Frazier's motion for

---

are designated "Rule 32 C.R. __", and references to the transcript on collateral appeal are designated "R.____." The court will strive to list any page number associated with the court records by reference to the numbers at the bottom of each page of a particular document, if said numbers are the most readily discoverable for purposes of expedient examination of that part of the record. Otherwise, the page numbers shall correspond with those listed at the upper right hand corner of the record. Additionally, if there is an easily identifiable tab number close to any cited material, the court has made reference to that for the reader's benefit.

[3]Frazier points out that the State requested, and was afforded four months to respond to the Rule 32 petition.  The case action summary shows that the State twice asked for extensions of time to answer and was granted same.  (Rule 32 C.R., Vol. 7, pp. 1-3).  On February 4, 2002, four days after the State filed its January 31, 2002 answer,  Frazier filed an unopposed  motion requesting to file a reply brief by March 15, 2002.  *Id.* at 3.  Still, the trial court summarily dismissed the entire petition on February 8, 2002.

3

reconsideration on the grounds that the trial court had no authority to consider such a post-judgment motion because the provisions within Alabama Rule of Criminal Procedure 32 did not afford such a mechanism in post-conviction proceedings, and that Frazier's only avenue for relief was through the state appellate process. (*Id.* at Vol. 10, pp. 662-65). The trial court granted the State's motion to strike Frazier's motion to reconsider on April 3, 2002. (*Id.* at Vol. 7, p. 7). The trial court never mentioned or addressed Frazier's amended Rule 32 petition.

On February 28, 2003, the Alabama Court of Criminal Appeals remanded the case with instructions to the trial court directing it to correct numerous deficiencies in its judgment, and directed the trial court to hold an evidentiary hearing if Frazier's claims met the requirements for such a hearing. *Frazier v. State*, 884 So.2d 908 (Ala. Crim. App. 2003). The appellate court also found that the juror misconduct claim in the amended petition could not be heard because:

> it was filed after the appellant had knowledge that his original petition had been denied, and beyond the two year statute of limitations period. The certificate of final judgment was issued on December 30, 1999, and the amended petition was filed on March 19, 1992. Thus, it was precluded from review by the trial court. Rule 32.2(c), Ala.R.Crim.P.

*Frazier v. State*, 884 So.2d 908, 911 (Ala. Crim. App. 2003).

After that remand, no evidentiary hearing was held, and on March 7, 2003, the trial court entered a corrected order in which it again denied Frazier post-conviction

4

relief.  On August 15, 2003, the Alabama Court of Criminal Appeals affirmed and

adopted the trial court's decision as its own in an unpublished opinion.  *Frazier v.*

*State*, CR-01-1317 (Ala. Crim. App. 2003).

The Supreme Court of Alabama denied certiorari review on January 30, 2004.

Shortly thereafter, on February 3, 2004, Frazier filed the present Habeas Petition (the

"Petition" or the "Habeas Petition") in this court.

## FACTUAL BACKGROUND

The Alabama Court of Criminal Appeals, in its decision on direct appeal,

adopted the trial court's rendition of the facts as set out in its sentencing order.

*Frazier v. State*, 758 So.2d 577, 583 (Ala. Crim. App. 1999).  The order reads:

> During the early morning of November 27, 1991, the
> defendant saw a light on in Pauline Brown's ground floor
> apartment. He removed a screen and entered through the
> window.
>
> In searching the apartment, he found $5 or $10 in a
> bedroom.  Ms. Brown, who was asleep in her bedroom,
> was awakened by the defendant, who was armed, to
> demand more money.  She gave him $80 out of her purse.
> After forcing her at gunpoint to have sexual intercourse
> from the rear, she begged him not to kill her.  He then put
> the pistol to her head and shot.
>
> The defendant then left the apartment to see if anyone
> [had] heard the shot and, satisfied they had not, returned to
> the apartment to search for more money and to make sure
> she was dead.  He went to her kitchen and ate some

5

> bananas and left the apartment.  The pistol was thrown in
> a ditch.
>
> Ms. Brown died as a result of the gunshot to the back of
> her head.

(Supp. Rec., C.R. 12.)[4]

(*Id.*).

## THE SCOPE OF FEDERAL HABEAS REVIEW

Pursuant to 28 U.S.C. § 2254(a), a federal district court is prohibited from entertaining a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court . . ." unless the petitioner alleges "he is in custody in violation of the Constitution or laws or treaties of the United States."  In other words, this court's review of habeas claims is limited to federal constitutional questions.  Claims pertaining solely to questions of state law fall outside the parameters of this court's authority to provide relief under § 2254.  Thus, unless otherwise expressly stated, use of the word 'claim' in this opinion presupposes a claim of federal constitutional proportion.

## I.    Exhaustion and Procedural Default

Prior to seeking relief in federal court from a state court conviction and sentence, a habeas petitioner is first required to present his federal claims to the state

---

[4](*See* C.R. Vol. 4, Tab, 23, Supp. Rec. pp. 12-14).

court by exhausting all of the state's available procedures.  The purpose of this

requirement is to ensure that state courts are afforded the first opportunity to correct

federal questions affecting the validity of state court convictions.  As explained by

the Eleventh Circuit:

> In general, a federal court may not grant habeas corpus relief to a state
> prisoner who has not exhausted his available state remedies.  28 U.S.C.
> § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a State court shall not
> be granted unless it appears that . . . the applicant has exhausted the
> remedies available in the courts of the State. . . .").  "When the process
> of direct review . . . comes to an end, a presumption of finality and
> legality attaches to the conviction. . . .  The role of federal habeas
> proceedings, while important in assuring that constitutional rights are
> observed, is secondary and limited.  Federal courts are not forums in
> which to relitigate state trials." *Smith v. Newsome*, 876 F.2d 1461, 1463
> (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887(1983)).

> Exhaustion of state remedies requires that the state prisoner "fairly
> presen[t] federal claims to the state courts in order to give the State the
> opportunity to pass upon and correct alleged violations of its prisoners'
> federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing
> *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal quotation
> marks omitted).  The Supreme Court has written these words:

>> The federal claim must be fairly presented to the state
>> courts . . . . it is not sufficient merely that the federal
>> habeas applicant has been through the state courts. . . .
>> Only if the state courts have had the first opportunity to
>> hear the claim sought to be vindicated in a federal habeas
>> proceeding does it make sense to speak of the exhaustion
>> of state remedies.

> *Picard*, 404 U.S. at 275, 92 S.Ct. at 512. *See also Duncan*, 513 U.S. at
> 365, 115 S.Ct. at 888 ("Respondent did not apprise the state court of his
> claim that the evidentiary ruling of which he complained was not only
> a violation of state law, but denied him the due process of law
> guaranteed by the Fourteenth Amendment.").
>
> Thus, to exhaust state remedies fully the petitioner must make the state
> court aware that the claims asserted present federal constitutional issues.
> "It is not enough that all the facts necessary to support the federal claim
> were before the state courts or that a somewhat similar state-law claim
> was made." *Anderson v. Harless*, 459 U.S. 4, 5-6, 103 S.Ct. 276, 277,
> 74 L.Ed.2d 3 (1982) (citations omitted).

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

Moreover, if a petitioner fails to raise his federal claim to the state court at the

time and in the manner dictated by the state's procedural rules, the state court can

decide the claim is not entitled to a review on the merits, *i.e.,* the claim is procedurally

defaulted. Usually, if the last state court to examine a claim explicitly finds that the

claim is defaulted because the petitioner failed to follow state procedural rules, then

federal review of the claim is also precluded pursuant to federal procedural default

principles. As explained by the Eleventh Circuit:

> The federal courts' authority to review state court criminal convictions
> pursuant to writs of habeas corpus is severely restricted when a
> petitioner has failed to follow applicable state procedural rules in raising
> a claim, that is, where the claim is procedurally defaulted. Federal
> review of a petitioner's claim is barred by the procedural default
> doctrine if the last state court to review the claim states clearly and
> expressly that its judgment rests on a procedural bar, *Harris v. Reed*, 489
> U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), and that

8

> bar provides an adequate and independent state ground for denying relief. *See id.* at 262, 109 S.Ct. at 1042-43; *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, *see Presnell v. Kemp*, 835 F.2d 1567, 1578-79 (11th Cir. 1988), *cert. denied*, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

*Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991). Federal deference to a state court's clear finding of procedural default under its own rules is so strong that a:

> state court need not fear reaching the merits of a federal claim in an *alternative* holding. Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris*, 489 U.S. at 264 n. 10, 109 S.Ct. 1038 (emphasis in original). *See also Alderman v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir. (where a Georgia habeas corpus court found that the petitioner's claims were procedurally barred as successive, but also noted that the claims lack merit based on the evidence, "this ruling in the alternative did not have an effect . . . of blurring the clear determination by the [Georgia habeas corpus] court that the allegations was procedurally barred"), *cert. denied*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994).

*Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).

The Supreme Court defines an "adequate and independent" state court decision as one "[which] rests on a state law ground that is *independent* of the federal question

9

and *adequate* to support the judgment.'" *Lee v. Kemna,* 534 U.S. 362, 375 (U.S. 2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991) (emphases added)). Whether or not a state procedural rule is "adequate and independent" so as to have a preclusive effect on federal review of a claim "'is itself a federal question.'" *Id.* (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965).

A state procedural rule is "independent of the federal question" when it "rests solidly on state law grounds [that are] not intertwined with an interpretation of federal law." *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001) (quoting *Card v. Dugger*, 911 F.2d 1494, 1516 (11th Cir. 1990)).  To be considered "adequate," by a federal court, the state procedural rule must be both "'firmly established and regularly followed.'" *Lee v. Kemna,* 534 U.S. at 375 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984).  In other words, the rule must be "clear [and] closely hewn to" by the state for a federal court to find it to be adequate. *James v. Kentucky*, 466 U.S. at 345.  This does not mean that the procedural rule must be applied rigidly in every instance, or that occasional failure to do so eliminates its "adequacy."  Rather, the "adequacy" requirement means only that the procedural rule "must not be applied in an arbitrary or unprecedented fashion." *Judd v. Haley,* 250 F.3d at 1313.  If it is adequate, then the federal court normally will foreclose its review.  If however, the rule is not firmly established, or if it is applied in an arbitrary, unprecedented and

10

manifestly unfair fashion, it is not adequate to preclude federal review.  *Card v. Dugger*, 911 F.2d at 1517.

The state procedural rules at issue in this case are Alabama Rules of Criminal Procedure 32.2(a)(2)-(5), 32.3 and 32.6(b).  Frazier does not dispute that Rule 32.2 is an adequate and independent state procedural rule for federal preclusion purposes. (Doc. 24, p. 30).  However, he does argue that "the pleading and proving rules imposed by Rules 32.3 and 32.6(b)" are not entitled to the same federal deference. (*Id.*).  This court disagrees.  Persuasive authority for finding Rule 32.3 and Rule 32.6(b) to be adequate and independent state procedural rules can be found in the following excerpt of the Eleventh Circuit's unpublished opinion in  *Jenkins v. Bullard*, 2006 WL 3635410,*5, 210 Fed. Appx. 895, 900 (11th Cir. 2006):

> Rules 32.3 and 32.6(b) have been firmly established and regularly followed by the Alabama courts.  The Court of Criminal Appeals has consistently affirmed, as it did with Jenkins, lower court decisions that have summarily dismissed Rule 32 petitions that do not include specific facts which would entitle the petitioner to collateral relief.  *See, e.g., Shaw v. State*, 949 So.2d 184, ---- (Ala. Crim. App. 2006); *Tubbs v. State,* 931 So.2d 66, 68 (Ala. Crim. App. 2005); *Boyd v. State*, 913 So.2d 1113, 1126-32 (Ala. Crim. App. 2003); *Chambers v. State*, 884 So.2d 15, 18-19 (Ala. Crim. App. 2003).[5]

---

[5]It is also clear that Alabama courts have regularly followed and applied this requirement of Rule 32.6(b) since well before Frazier's Rule 32 petition was filed in 1999.  *See Wilson v. State*, 650 So.2d 587 (Ala. Crim. App. 1994); *Johnson v. State*, 675 So.2d 85 (Ala. Crim. App. 1995); *McNair v. State*, 706 So.2d 828 (Ala. Crim. App. 1997); *Bryant v. State*, 739 So. 2d 1138 (Ala. Crim. App. 1998).  The Alabama courts also have consistently applied Rule 32.6(b) in the interim, *i.e.*, since Frazier's collateral petition was filed, as can be seen in the cases cited above by the Eleventh Circuit,

Of course, there are also instances where the doctrines of procedural default and exhaustion intertwine.   For instance, if a petitioner's federal claim is unexhausted, the district court will traditionally dismiss it without prejudice or stay the cause of action in order to allow the petitioner to first avail himself of his state remedies.   However, "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile [under the state's own procedural rules,]" this court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect[.]"  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971) and *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998)).

There are only three circumstances in which an otherwise valid state-law ground will not bar a federal habeas court from considering a constitutional claim that was procedurally defaulted in state court: (1) where the petitioner had good "cause" for not following the state procedural rule and was actually "prejudiced" by not having done so; (2) where the state procedural rule was not "firmly established and regularly followed"; and (3) where failure to consider the petitioner's claims will

---

as well as the following cases: *Duncan v. State*, 925 So. 2d 245 (Ala. Crim. App. 2005); *Thomas v. State*, 908 So.2d 308 (Ala. Crim. App.  2004); *Taylor v. State*, 879 So.2d 1210 (Ala. Crim. App. 2003); *Burgin v. State*, 857 So.2d 162 (Ala. Crim. App. 2002).  Thus, the rule appears to be "firmly established and regularly followed."

12

result in a "fundamental miscarriage of justice." *See Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring); *see also*, *e.g.*, *Coleman v. Thompson*, 501 U.S. at 749-50 (holding that a state procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice") (citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."); *Smith v. Murray*, 477 U.S. 527, 537 (1986) (same); *Davis v. Terry*, 465 F.3d 1249, 1252 n.4 (11th Cir. 2006) ("It would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (in turn quoting *Murray v. Carrier*, 477 U.S. at 496)).

## A.    The "Cause and Prejudice" Standard

As the "cause *and* prejudice" standard clearly is framed in the conjunctive, a petitioner must prove both parts.  To show cause, a petitioner must prove that "some

objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Ibid*. In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." *Ibid*. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. *Id*., at 486-488, 106 S. Ct., at 2644-45.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). *See also Murray v. Carrier*, 477 U.S. at 488-89 ("Ineffective assistance of counsel . . . is cause for a procedural default."); *Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.").

Once cause is proved, a habeas petitioner also must prove prejudice. Such a showing must go beyond proof "that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

14

## B.     The "Fundamental Miscarriage of Justice" Standard

In a "rare," "extraordinary,"[6] and "narrow class of cases,"[7] a federal court may

consider a procedurally defaulted claim in the absence of a showing of "cause" for

the procedural default, if: (1) a "fundamental miscarriage of justice" has "probably

resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S.

527, 537-38 (1986) (quoting, respectively, *Engle v. Isaac*, 456 U.S. 107, 135 (1982),

and *Murray v. Carrier*, 477 U.S. at 496);[8] or (2) the petitioner shows "by clear and

convincing evidence that[,] but for a constitutional error, no reasonable juror would

have found the petitioner eligible for the death penalty." *Schlup v. Delo*, 513 U.S.

298, 323-27 & n.44 (1995) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992));

*see also, e.g., Smith v. Murray*, 477 U.S. at 537-38.

---

[6] *Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.").

[7] *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) ("Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default.   These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.  We have described this class of cases as implicating a fundamental miscarriage of justice.") (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

[8] Specifically, the *Murray v. Carrier* Court observed that, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  477 U.S. at 496.

Even when exhaustion and procedural default are not at issue, federal review of a claim that has been decided on the merits by a state court is fairly restrictive.

## II.    Rules Governing Habeas Corpus Cases Under § 2254

### A.    28 U.S.C. § 2254(d) and (e)

When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief.  Indeed, under AEDPA, a petitioner is only entitled to relief on a federal claim if he shows that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or that the court's rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  *See also Williams v. Taylor*,  529 U.S. 362, 404 (2000); *Brown v. Payton*, 544 U.S. 133 (2005); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  "Moreover, a state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence."  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

A state court's adjudication of a claim will be sustained under § 2254(d)(1), unless it is "contrary to" clearly established, controlling Supreme Court precedent, or it is an "unreasonable application" of that law.  These are two different inquiries, not to be confused, nor conflated, as the Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362 (2000), saying:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to ...* clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of ...* clearly established Federal law, as determined by the Supreme Court of the United States." (Emphases added.)

*Williams,* 529 U.S. at 404.  The statute limits the source from which "clearly established Federal law" can be drawn to "holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412; *see Jones v. Jamrog*, 414 F.3d 585 (6th Cir. 2005); *Sevencan v. Herbert*, 342 F.3d 69 (2nd Cir. 2003); *Warren v. Kyler*, 422 F.3d 132, 138 (3rd Cir. 2005) ("[W]e do not consider those holdings as they exist today, but rather as they existed as of the time of the relevant state-court decision.") (internal quotation marks and citation omitted).

17

A state-court determination can be "contrary to" clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Likewise, a state-court determination can be an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407; *see also Putman v. Head*, 268 F.3d 1223 (11th Cir. 2001). Whether a particular application of Supreme Court precedent is "reasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable." The question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," *even if incorrect*. *See Bell v. Cone*, 535 U.S. 685, 694 (2002).

18

Having explained the scope of this court's authority to review state court decisions, it is now appropriate to examine the federal procedural rules applicable to the controversy presently before the court.

**B.      Procedural Rules Governing Habeas Corpus Cases Under § 2254**

Since "habeas corpus review exists only to review errors of constitutional dimension," a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2c." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (other citations omitted).  A petitioner must specify all grounds for relief available to him, state the facts supporting each ground, and state the relief requested. 28 U.S.C. § 2254, Rule 2(c)(1)(2)(3) of the *Rules Governing Section 2254 Cases*.  A "general reference to the transcripts, case records and briefs on appeal patently fails to comply with Rule 2(c)." *Phillips v. Dormire*,  2006 WL 744387, *1, No. 4:04CV1483 (E.D. Mo. 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990).

The burden of proof is on the habeas petitioner to establish a factual basis for the relief he seeks.  *Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983); *Corn v. Zant*, 708 F.2d 549, *reh'g denied*, 714 F.2d 159 (11th Cir. 1983).  Consequently, a petitioner must provide substantial evidence to meet his burden of proof to show why federal post-conviction relief should be awarded.  *Douglas v. Wainwright*, 714 F.2d

1532, *reh'g denied*, 719 F.2d 406 (11th Cir. 1983), *vacated on other grounds*, 468 U.S. 1206 (1984) and 468 U.S. 1212 (1984), on remand 739 F.2d 531 (11th Cir. 1984). That burden is to demonstrate at least *prima facie* evidence establishing the alleged constitutional violation. The mere assertion of a ground for relief, without more factual detail, does not satisfy petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c), *Rules Governing § 2254 Cases in the United States District Courts*.

With these principles in mind, the court now turns to Frazier's claims.

## THE CLAIMS

Frazier has raised a number of claims in this case.[9] The court will address each of them in turn.

---

[9]At the outset the court notes that the initial 'paragraph' following the title of every claim presented by Frazier is a sentence that reads, "All other allegations in this petition are fully incorporated into this claim by specific reference." It is Frazier's responsibility to clearly and succinctly set out the legal and factual basis of each and every claim for which he contends he is entitled to habeas relief. Frazier cannot satisfy this responsibility with this introductory statement. Accordingly, the only "allegations" that will be considered are those that Frazier has specifically set out within the body of the particular claim he purports to bring.

**Claim IV:**[10]        **Denial of Frazier's Right to Effective Assistance of Trial Counsel**

Frazier alleges he was denied effective assistance of counsel during four stages of the trial court proceedings. (Doc. 7, ¶¶ 26-170, pp. 9-46). He claims his trial counsel: (1) failed to investigate guilt issues prior to trial; (2) was ineffective during voir dire; (3) was ineffective during the guilt phase of trial; and (4) was ineffective during the penalty phase of trial. Before the court begins its discussion regarding each of these claims, a prefatory explanation of the general constitutional standard applicable to ineffective assistance of counsel claims shall be addressed.

## A.    The Standard for Ineffective Assistance of Counsel

The Supreme Court has established a two-pronged standard for judging, under the Sixth Amendment, the effectiveness of attorneys who represent criminal defendants at trial or on direct appeal in *Strickland v. Washington*, 466 U.S. 668 (1984).[11]

---

[10]The court follows the organization of the grounds for relief stated in Frazier's Petition. Roman numerals I, II, and III in the Petition do not state any grounds for relief. The grounds for relief begin at Roman numeral IV.

[11]Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a defendant at trial or on direct appeal from the conviction. *See* 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted).

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687 (emphasis supplied); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) (same). The two parts of the *Strickland* standard are conjunctive, and a petitioner accordingly bears the burden of proving *both* "deficient performance" *and* "prejudice" by "a preponderance of competent evidence." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). Thus, a court is not required to address both aspects of the *Strickland* standard when a habeas petitioner makes an insufficient showing on one of the prongs. *See*, *e.g.*, *Holladay v. Haley*, 209 F.3d

---

The [*Coleman*] Court went on to conclude that because errors of post-conviction counsel cannot be *constitutionally ineffective*, a petitioner "must 'bear the risk of attorney error that results in a procedural default.'" Thus, because [petitioner] had no constitutional right to counsel during his post-conviction proceedings, his attorneys' errors during those proceedings cannot constitute cause to excuse his procedural default. Because [petitioner] has failed to establish one element of the cause and prejudice exception, he cannot show the exception applies.

*Johnson v. Singletary*, 938 F.2d 1166, 1175 (11th Cir. 1991) (*en banc*) (emphasis supplied) (quoting *Coleman*, 501 U.S. at 752 (in turn quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), and citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)).

22

1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

### 1.    The Performance Prong

To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness": a rule that is defined in terms of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688; *see also Williams*, 529 U.S. at 390-91 (same); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (same).  The *Strickland* Court instructed lower federal courts to be "highly deferential" when engaging in such assessments, and to "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance:"

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

> action might be considered sound trial strategy.  There are countless
> ways to provide effective assistance in any given case.  Even the best
> criminal defense attorneys would not defend a particular client in the
> same way.

*Strickland*, 466 U.S. at 689 (emphasis supplied) (citations and internal quotation

marks omitted); *see also*, *e.g.*, *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)

(holding that, "[w]hen reviewing whether an attorney is ineffective, courts should

always presume strongly that counsel's performance was reasonable and adequate")

(internal quotation marks omitted)).

   To overcome the presumption that counsel's conduct fell within the wide range

of reasonable professional assistance, the habeas petitioner "must establish that no

competent counsel would have taken the action that his counsel did take." *Chandler*

*v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*) (footnote and citation

omitted).

   The reasonableness of counsel's performance is judged from the perspective

of the attorney, at the time of the alleged error, and, in light of all the circumstances.

*See*, *e.g.*, *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers

"the benefit of the doubt for 'heat of the battle' tactical decisions"); *Mills v.*

*Singletary*, 161 F.3d 1273, 1285-86 (11th Cir. 1998) (noting that *Strickland*

performance review is a "deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors").

> Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted. [*Chandler*, 218 F.3d] at 1317.   Indeed, as we have recognized, "[a]bsolute rules would interfere with counsel's independence-which is also constitutionally protected-and would restrict the wide latitude counsel have in making tactical decisions." *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

*Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

In short, an attorney's performance will be deemed deficient only if it is objectively unreasonable (*i.e.*, falls below the wide range of competence demanded of attorneys in criminal cases), and it is shown that no competent attorney would have taken the action that petitioner's counsel did take.  *See*, *e.g.*, *Chandler*, 218 F.3d at 1315; *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990).

### 2.    The Prejudice Prong

In addition to showing deficient performance, a petitioner must show prejudice. To satisfy the prejudice prong, a habeas petitioner "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Williams*, 529 U.S. at 391 (same).   Stated somewhat differently, "[a] finding of prejudice requires proof of unprofessional errors so egregious that the trial was rendered unfair and the verdict rendered suspect." *Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001) (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996) (in turn quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)) (internal quotation marks omitted); *see also*, *e.g.*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (holding that, to show prejudice, "a defendant must show that counsel's errors were so serious that they rendered the defendant's trial unfair or unreliable, not merely that the outcome would have been different").

A habeas petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'"   *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693).   The fact that counsel's error may have "had some conceivable effect on the outcome of the proceeding" is not sufficient to show prejudice.   *Strickland*, 466 U.S. at 693; *see also Gilreath*, 234 F.3d at 551 (same); *Tompkins v. Moore*, 193 F.3d 1327, 1336 (11th Cir. 1999) (same).

Instead, a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'" *Brown v. Jones*, 255 F.3d 1272, 1278 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687).

In summary, "[t]he benchmark for judging any claims of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or subsequent direct appeal] cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 686.

### 3.   Deference Accorded State Court Findings of Historical Fact

"Ineffectiveness of counsel is a mixed question of fact and law." *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001) (citing *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000)). "State court findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to a presumption of correctness under 28 U.S.C. § 2254(d)." *Thompson*, 255 F.3d at 1297.

### B.   Organization of Frazier's Claims of Ineffective Assistance of Trial Counsel

Frazier make numerous claims of ineffective assistance of trial counsel. (Doc. 7, pp. 9-45). As respondent correctly points out, Frazier divides these claims into four broad categories, but does not list or separate many of the individual claims within those categories. (Doc. 16, p. 2). Frazier replies that the court should examine

his claims as he, the petitioner has pleaded them, because he is the "'master of the complaint'" and may "present, maintain and abandon" his claims as he deems fit. (Doc. 24, p. 18)(quoting *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997).

This court will adopt Frazier's four categories in addressing his ineffectiveness claims. However, because the sub-claims within each category flow in a stream of consciousness, the court will attempt to analyze those claims in a logical and cohesive manner during its discussion, and address the sub-claims individually and collectively in the context of the guilt and penalty phases of the trial.

### C.   The Claims

#### 1.   Failure to Adequately Investigate Guilt Case

Frazier next maintains that trial counsel failed to adequately investigate his guilt case. (Doc. 7, ¶¶ 26-57, pp. 9-17). The court will address each aspect of this argument in turn.

#### (a)   Failure to Investigate Mitchell as Possible Suspect

Frazier alleges "[t]rial counsel failed to investigate prosecution witness Tyrone Mitchell as a possible suspect for the robbery." (*Id.* at 10). He contends competent counsel would have done this because: Mitchell had business and personal relationships with the victim over the years, "he had visited with the victim at her home the night she died; he had visited the victim frequently and thus knew the

28

layout of her home and her possessions; he admitted he moved the victim's body and disturbed other trace evidence," and he entered the apartment through the kitchen window purportedly used by the intruder before the police arrived.   (*Id.*). (citing R. 232-50).  Frazier also declares Mitchell's testimony about the conditions of the crime scene and actions upon arrival at the apartment conflicted with other testimony.  (*Id.*).

On collateral review, the trial court's summary dismissal of this claim, as adopted by the appellate court, reads

> Frazier contends that had trial counsel investigated the facts of his case, they would have discovered evidence that created a reasonable doubt that he was the perpetrator or sole perpetrator of the crime.  Frazier contends that had trial counsel investigated prosecution witness Tyrone Mitchell, they would have discovered facts that he was potentially culpable.  Frazier's only attempt to support this claim is by summarizing Mitchell's trial testimony.
>
> This Court heard Mitchell's testimony.  Frazier pleads no facts in his Rule 32 petition that, if true, would tend to inculpate Mitchell.  This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), Ala. R. Cr. P.

(Rule 32 C.R. Vol. 14, Tab. 49, p. 20).

After careful consideration, this court finds that Frazier's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier

29

failed to state a claim upon which relief could be granted, Frazier cannot show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

Every piece of information Frazier complains his trial counsel should have "investigated" was testified to by Mitchell at trial. The range of inferences which could have been drawn from that evidence were available to the jury (had they been inclined to consider Mitchell as a suspect). The record shows Mitchell had worked at Bama Foods with the victim for six years at the time of her death and she had driven him to work in the mornings for about one year.[12] He considered himself a friend of the victim, had seen her socially for about three years, and had been at her apartment the evening before the murder. When Ms. Brown did not pick Mitchell up for work the next morning, he found a way to get to work by himself. He and other co-workers became concerned when the victim did not come to work or call in because "that wasn't like her. . . ." (*Id.* at 233).

Mitchell attempted to call her several times with no response, and when she had not arrived by "first break" at 9:30 a.m., Mitchell borrowed a car and went to her apartment. (*Id.*). Mitchell knocked on the front door of the apartment but received

---

[12]Mitchell's entire testimony is part of the record. (R. Vol. 2, pp. 231-61).

no answer. He noticed 'Mike' (who later testified and identified himself as Michael Smith), the maintenance man, coming down the side of the building.

After knocking on the apartment door and receiving no answer, Mike informed Mitchell that Ms. Brown's kitchen window had been open and he had just shut it. Mike and another maintenance man used a knife or screwdriver to slide open the kitchen window and Mitchell crawled through it into the kitchen.  Mitchell went into the bedroom, where he found Ms. Brown laying face down with her nightgown pulled up on her back.  He called to her, turned her over, got a damp rag and tried to wipe the mucus from her nose.  He also noticed blood and that she was swollen.

Mitchell realized she was dead and went immediately to the front door, opened it and told someone to call for help.  The maintenance men came in and followed him to the bedroom.[13]  Other spectators were in the house as well.  "Everybody" noticed that the apartment "had been gone through, you know, somebody had been through it." (*Id.* at 241).  When prompted by the prosecutor on redirect examination, Mitchell testified that he noticed, "change was strowed [*sic*] all through the house.  It was going - - and from the door to her car, too."  (*Id.* at 256)*.*  At some point, Mitchell

---

[13]Mitchell's testimony is unclear at this point.  He does attest a "couple" came in when referring to the maintenance men, but then states "he" followed Mitchell back to the bedroom, indicating only one maintenance man.

went outside and the paramedics and police arrived.  He spoke with police about what he had witnessed and was then released.

Based on the foregoing, the trial court was correct in concluding that, other than referencing Mitchell's trial testimony, Frazier has not pointed to any information suggesting that trial counsel could have discovered, had he known the substance of Mitchell's testimony before trial and further investigated Mitchell, that would have pointed to Mitchell as the perpetrator of the crimes.  Therefore, Frazier cannot establish counsel was objectively deficient for failing to investigate Mitchell as a potential suspect and certainly cannot show he was prejudiced by counsel's failure to do so.  For the foregoing reasons, this claim is procedurally defaulted, or in the alternative, merits no relief pursuant to § 2254(d).

Next, Frazier contends trial counsel "had an obligation to investigate whether Mitchell falsely testified about the 'trail of change' outside the victim's apartment." (Doc. 7, pp. 10-11).  In support of this assertion, Frazier declares Mitchell did not mention the change trail until the prosecution engaged in leading questions about the subject on redirect.  (*Id.* at 10) (citing R. 256).  In contrast, the evidence technician processing the crime scene testified he did not see or take any coins as evidence, and would have photographed the coin trail if it had looked out of the ordinary.  (*Id.*) (citing R. 296-301).

On collateral review, the trial court's summary dismissal of the claim, as adopted by the state appellate court reads as follows:

> Frazier's only support for this claim is to argue that Mitchell did not testify that there was a trail of coins from the victim's apartment to her car until asked by the State on redirect examination.  Frazier fails to proffer any specific facts in his Rule 32 petition that, if true, would establish Mitchell lied on the stand.  *See*, *Thomas v. State*, 766 So.2d 892 (holding that claims of failure to investigate must specifically show what information would have been discovered and that its admission might have changed the outcome).  This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, p. 21).

After careful consideration, this court finds that Frazier's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the trial court's procedural default ruling can be construed as a decision on the merits in that Frazier failed to state a claim upon which relief could be granted, Frazier cannot show the trial court's decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.  All of the factual support for this claim is testimony presented at trial, and Frazier has not offered any additional information

that would have established Mitchell was lying.[14]  Nor is there any factual support for the claim that, if counsel had further investigated the matter, Mitchell's testimony could have been discredited.  This claim is procedurally defaulted, or in the alternative, does not merit relief pursuant to § 2254(d).[15]

Frazier also complains because trial counsel did not retain an expert to compare Mitchell's fingerprints and body fluids to those found at the scene.  (Doc. 7, p. 11). After examining this claim, the trial court held that Frazier, "failed to plead or argue that the results of these tests would have yielded any exculpatory evidence that would have benefit[t]ed his defense.  This claim is summarily dismissed because it fails to meet the specificity and full factual pleading requirements of Rules 32.3 and 32.6(b) ARCrP."  (Rule 32 C.R. Vol. 14, Tab. 49, pp. 21-22).

Frazier's claim regarding trial counsel's failure to retain an expert is procedurally defaulted because the state court relied upon adequate and independent

---

[14]Moreover, Mike Smith, the maintenance worker, testified that he too, had seen the change trail.  (R. Vol. 2, pp. 267-68, 276-77).  He also corroborated Mitchell's version of the morning's events to the extent he (Mike) had personal knowledge of same, but stated that the only individuals present at the scene with Mitchell were himself, and two other men working with him (Mike) on his yard crew.  (*Id.* at 268-79).

[15]Frazier does not allege that a criminalist would have found any information beneficial to the defense.  Therefore, Frazier cannot establish that counsel was objectively deficient for failing to investigate Mitchell as a potential suspect and certainly cannot show he was prejudiced by counsel's failure to do so.  This claim is procedurally defaulted, or in the alternative, does not merit relief pursuant to § 2254(d).

state procedural rules to dismiss the claim. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot show the trial court's decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

Finally, Frazier complains trial counsel were ineffective because they did not cross-examine Mitchell as to whether he had sexual relationship with the victim, whether they had sex on night of killing, what time he left the victim at home that night, and what condition she was in when he left. (Doc. 7, p. 11). The trial court summarily dismissed the claim for failure to meet the specificity and full factual pleading requirements pursuant to Rules 32.3 and 32.6(b) ARCrP, finding that "Frazier fails to proffer in his Rule 32 [petition] what the answers to the questions . . . would have been or that the answers would have yielded any exculpatory evidence." (Rule 32 C.R. Vol. 14, Tab 49, p. 22).

Frazier's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted,

Frazier cannot show the trial court's decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

Again, Frazier does not state what information counsel would have discovered had he asked Mitchell about a sexual relationship with Ms. Brown, and how that information would have been beneficial to the defense. Therefore, Frazier cannot establish that counsel was objectively deficient for failing to hire a criminalist and certainly cannot show he was prejudiced by counsel's failure to do so. This claim is procedurally defaulted, or in the alternative, does not merit relief pursuant to § 2254(d).

### (b)    Failure to Investigate Potential Culpability of Clintsey

Frazier asserts that although his trial counsel knew the police initially suspected the victim's ex-boyfriend, Bobby Ray Clintsey, counsel did nothing to investigate "Mr. Clintsey's potential culpability." (Doc. 7, p. 11) (citing R. 423). In summarily dismissing this claim pursuant to Rules 32.2 and 32.6(b), the Rule 32 court decision, as adopted by the state appellate court reads as follows:

> The Court of Criminal Appeals has held that "claims of failure to investigate must show *with specificity* what information would have been obtained with investigation, and whether, assuming the evidence

36

is admissible, its admission would have produced a different result." *Thomas v. State*, 766 So.2d at 892  (other citation omitted) (emphasis added [by trial court]).  Frazier fails to proffer in his Rule 32 petition what, if any, beneficial evidence would have been discovered had trial counsel investigated Clintsey or how it might have changed the outcome of his trial . . . .

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 22-23).

Frazier's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order,  Frazier cannot establish that counsel was objectively deficient nor can he show that he was prejudiced by counsel's failure to do so.  This claim is due to be dismissed as procedurally defaulted, or in the alternative denied on the merits.

### (c)    Failure to Secure Independent Examination of Fingerprint Evidence

Frazier alleges his trial counsel failed to secure an independent examination of the fingerprint evidence.  (Doc. 7, pp. 12-13).  As the trial court aptly observed, Frazier makes a laundry list of complaints ranging from failing to secure an independent expert to failing to adequately cross-examine the state's expert within

the body of this claim. ( *Id.*).  The trial court's order, as affirmed and adopted by the

appellate court states:

> Frazier claims trial counsel was ineffective for 1) failing to move for
> funds for an expert to independently examine fingerprint evidence; 2)
> failing to challenge the procedures used by the State's fingerprint expert;
> 3) failing to consult a criminalist regarding possible contamination of
> the crime scene; and 4) failing to challenge the chain of custody of the
> recovered fingerprint and other crime scene evidence.
>
> The Court must review Frazier's claims of ineffective assistance of
> counsel in the light of all the evidence admitted against him at trial.  *See*
> *Cade v. State*, 629 So.2d 38, 40-41 (Ala. Crim. App. 1993); *Thomas*,
> 766 So.2d 870.  Despite this laundry list of alleged failures on the part
> of his trial counsel, Frazier fails to plead any facts in his Rule 32 petition
> that would establish that had trial counsel moved for funds for expert
> assistance, consulted with a criminalist, or cross-examined the State's
> finger print expert regarding the procedures employed in analyzing the
> finger prints recovered from the crime scene, that there is a reasonable
> probability that results of the guilt-phase of this trial would have been
> different.  *Strickland*, 466 U.S. 694, 104 S.Ct. at 2068.  These claims are
> summarily dismissed because they fail to meet the full factual pleading
> and disclosure requirements of Rules 32.3 and 32.6(b) ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 23-24).

Even if the trial court's procedural default ruling is actually a decision that

primarily relied upon or was so intertwined with federal law that it should be

understood to be a decision on the merits, *i.e.*, even if the court found that Frazier

failed to state a claim upon which relief could be granted, Frazier cannot show the

trial court's decision was contrary to or an unreasonable application of clearly

established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

Frazier points out many things he believes counsel should have done in order to compare the fingerprint evidence or cross-examine the State's expert witness in a more adequate manner, but notably he does not assert the fingerprint testimony would have (1) been ruled inadmissible, (2) exonerated him, or (3) have been viewed as so questionable that it would have afforded little or no weight by the jury. His argument that the jury would have been willing to consider a well-supported attack on the fingerprint evidence because of the manner in which they disposed of the three count Indictment against him is simply off the mark. There is no reasonable probability that the outcome of the trial would have been different even if the fingerprint evidence had been attacked. Accordingly, this claim is procedurally defaulted, or in the alternative, due to be denied.

### (d) Failure to Meet with Frazier in a Reasonable Manner Before Trial

Frazier alleges that although he was incarcerated in the City of Birmingham Jail for approximately one year before trial, counsel "failed to meet with him in a reasonable manner before trial." (Doc. 7, p. 13). Specifically, Frazier declares it was nearly one year before counsel met with him the first time, and thereafter counsel only

saw him three times before trial. (*Id.*) (citing R. 186). Frazier complains counsel did "not adequately discuss trial strategy, nor did they fully explain the implications of a not guilty plea or his rights and options at trial." (*Id.*) (citing R. 195).

When this claim was raised by appellate counsel on direct appeal, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law.

> The appellant claims that his trial counsel were ineffective because, he alleges, counsel failed to "communicate with him, and adequately advise him of his rights and options." (Appellant's brief, p. 24.) Specifically, the appellant claims that his counsel met with him only three times before trial, and that counsel failed to adequately discuss with him the possibility and ramifications of pleading guilty to the charged offenses. In support of these assertions, the appellant directs this Court to the lengthy discussion that occurred before trial in which he indicated to the trial court that he was dissatisfied with his trial counsel. (See Part II of this opinion for an excerpt of that discussion.)[16]
>
> In that discussion, counsel responded that they had spent many hours preparing for the case. In addition, counsel indicated that while they had discussed the possibility of the appellant's pleading guilty in return for a recommendation from the prosecution of a sentence of life without parole, they had not discussed the possibility of the appellant's pleading guilty in return for a recommended death sentence. The trial court instructed the appellant's counsel to discuss with the appellant all the potential ramifications of pleading guilty to the charged offense. After a discussion with his counsel, the appellant apparently decided to proceed with the trial.

---

[16]The court addresses Frazier's expressed dissatisfaction with his trial counsel in its collective examination of Frazier's Claims VI, VII and VIII, *infra*.

The appellant has met neither prong of the *Strickland* test. He has presented no evidence, other than his unsubstantiated assertion at trial, that his counsel met with him only three times before trial. Even assuming for the sake of argument that counsel met with the appellant in person only three times before trial, the appellant has failed to establish how this alone rendered counsel's performance deficient, or how he was prejudiced by any allegedly deficient performance. The appellant has additionally failed to prove his allegation that his counsel were ineffective because they did not inform him at an earlier date of the possibility and ramifications of pleading guilty in return for a recommended death sentence, or how he was prejudiced by not having received this information sooner.

*Frazier v. State*, 758 So2d 577, 597 and 599 (Ala. Crim. App. 1999).

This court has carefully examined the record and Frazier's allegations. While it is understood that a federal court should defer to the state court's findings of fact, this court must seriously question the trial court's initial assumption that Frazier failed to prove counsel only visited him on three occasions. Frazier clearly complained to the trial court that his counsel had only visited him three times. While counsel stated that they had worked many hours on Frazier's case, they did not deny that they had only met with him at the jail on several occasions. Regardless, the trial court's ultimate findings on this issue are correct to the extent it found that trial counsel stated that he had discussed a plea of guilty in exchange for a sentence of life without parole, but had not discussed entering a plea in exchange for the death

penalty.[17]  The trial court also afforded trial counsel the immediate opportunity to discuss the matter with Frazier, for the express purpose of insuring that Frazier understood the ramifications of a plea.  Counsel did so, and Frazier indicated he understood the situation.

This court also notes that Frazier's claim is presented in the narrow context of trial counsel's alleged failure to discuss plea possibilities and the ramifications of Frazier not entering a plea.  In that light, this court finds that Frazier has failed to show counsel was objectively deficient in the number of visits had with Frazier prior to trial.  An adequate discussion on that matter would have taken a very short amount of time to accomplish; indeed, an adequate discussion actually took place and that conversation is reflected on the record.  Frazier simply cannot show any possible prejudice.[18]  This claim is due to be denied.

### (e)    Failure to Reasonably Attempt to Contact Witnesses

Frazier next alleges his trial counsel failed to make a reasonable effort to contact any witnesses who might have been of use at the guilt phase of trial.  (Doc.

---

[17](*See* R. Vol. 2, p. 192).

[18]In Claim XXIV of his Petition, Frazier does attempt to make an ineffectiveness claim against *appellate* counsel for prematurely raising this particular ineffectiveness claim against *trial* counsel on  direct appeal, and then failing to properly support the claim.  (Doc. 7, pp. 119-121).  However, for the reasons discussed above, it is obvious that his ineffectiveness claim against appellate counsel is without merit.

7, p. 13).  Counsel also moved to see the crime scene shortly before trial, but then

failed to argue why such an inspection would be useful, and informed the court that

he had not personally viewed the scene.  The motion was denied. (*Id.*) (citing C.R. 35

& R.10).

When the trial court examined these allegations on collateral review, it made

the following findings:

> Frazier also claims . . . that trial counsel did not make a reasonable effort
> to contact witnesses that *might have* been useful to his defense. Frazier's
> Rule 32 petition fails to identify any witness by name, fails to proffer
> what their testimony would been, or fails to contain any argument about
> how additional testimony might have changed the outcome of his trial.
> *See Thomas v. State*, 766 So.2d at 860, 893 (Ala. Crim. App.
> 1998)(holding that "[a] claim of failure to call witnesses is deficient if
> it does not show what the witnesses would have testified to and how that
> testimony might have changed the outcome.")  This claim is summarily
> dismissed because it fails to meet the specificity and full factual
> pleading and disclosure requirements of Rules 32.3 and 32.6(b),
> Ala.R.Cr. P.
>
> . . . .
>
> Frazier fails to proffer any facts or argument in his Rule 32 petition
> about why a view of the crime scene by trial counsel would have
> benefited (sic) his defense.  This claim is summarily dismissed because
> it fails to meet the specificity and full factual pleading and disclosure
> requirements of Rules 32.3 and 32.6(b) ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 17-18).

Frazier's claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier cannot establish that counsel was objectively deficient nor can he show that he was prejudiced by counsel's failure to do so. This claim is due to be denied.

### (f)    Failure to Consult a Criminalist

Frazier alleges trial counsel failed to consult a criminalist to determine the extent of any crime scene contamination, which affected the collection/analysis of forensic evidence. (Doc. 7, p. 14). In support of this assertion, Frazier points to Tyrone Mitchell and others who entered the crime scene before police arrived. (*Id.*). This claim has already been addressed in (c) hereinabove; it is without merit.

### (g)    Failure to Investigate Extradition Circumstances

Frazier alleges trial counsel was ineffective because he did not investigate the circumstances surrounding his Michigan extradition. (Doc. 7, p. 14). Frazier contends that he did not knowingly and voluntarily submit to extradition and counsel's error subjected him to the death penalty in Alabama because the death

penalty is not available under Michigan law. ( *Id.*). In its order dismissing the claim

as adopted by the state appellate court, the trial court wrote:

> Frazier alleges "[he] did not voluntarily and knowingly submit to
> extradition." This is Frazier's entire claim to the court. Frazier fails to
> plead any facts in his Rule 32 petition that would establish his
> extradition from Michigan to Alabama was involunt[ary]. This claim is
> summarily dismissed because it fails to meet the specificity and full
> factual pleading requirements of Rules 32.3 and 32.6(b) ARCrP. *See*
> *Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding
> that "'none of Bearden's claims [of ineffective assistance of counsel]
> were pleaded with any specificity'").

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 5-6).

This claim is procedurally defaulted because the state court relied upon

adequate and independent state procedural rules to dismiss it. Even if the trial court's

procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it

found that Frazier failed to state a claim upon which relief could be granted, for the

reasons clearly enunciated in the trial court's order, Frazier cannot show the state

court's decision was contrary to or an unreasonable application of clearly established

federal law.

Frazier fails to identify what motion(s) counsel could have filed to prevent

Frazier's extradition or render it unconstitutional after the fact, and how those

motions would have been successful. Thus, he cannot establish that counsel was

objectively deficient nor can he show that he was prejudiced by counsel's failure to

investigate his extradition.  This claim is procedurally defaulted, or in the alternative, due to be denied.

> **(h)     Failure to Investigate and Challenge the Circumstances Surrounding Frazier's Statements to Police Officers**

Frazier alleges his trial counsel were ineffective for failing to investigate the circumstances surrounding his statements to Alabama and Michigan police officers, and as such, failed to adequately challenge the statements.  (Doc. 7, p. 14).  Frazier adds that the statements were "in large measure false, inaccurate and unreliable due to police misconduct, and Mr. Frazier's mental illness, brain damage and mental retardation." (*Id.* at 14-15).  Frazier also criticizes trial counsel for using the same line of questioning at the suppression hearing and trial to cross examine the police officers about Frazier's statement. (*Id.*).

The trial court's summary dismissal of the claim, as affirmed by the appellate court, reads as follows:

> [Frazier] alleges. . . that trial counsel did not adequately investigate the facts surrounding his confessions to Michigan and Alabama law enforcement officers, prior to the pre-trial suppression hearing or during

trial.  Frazier incorporates claims [G, H and S[19]] of his petition into this claim by reference. . . .

This claim contains only bare allegations and conclusory statements with no factual support.  This claim is  summarily dismissed for failure to meet the specificity and full factual pleading requirements of Rules 32.3 and 32.6(b) ARCrP.  *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding that "none of Bearden's claims [of ineffective assistance of counsel] were pleaded with any specificity.")

(Rule 32 C.R. Vol. 14, Tab. 49, p. 6).

This claim is procedurally defaulted because the state court relied upon

adequate and independent state procedural rules to dismiss it.  Even if the trial court's

procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it

found that Frazier failed to state a claim upon which relief could be granted, for the

---

[19]For reference purposes only, Claim G in Frazier's Rule 32 petition is titled, "The trial court reversibly erred when it failed to determine Mr. Frazier's competency to stand trial." (Rule 32 C.R. Vol. 7, Tab. 31, pp. 64-70).  A version of Claim G reappears in the present Petition as Claim VII, asserting that the trial court failed to determine Frazier's competency to stand trial.  (Doc. 7, pp. 52-56).

Claim H in Frazier's Rule 32 petition is titled, "Mr. Frazier's convictions and sentence are unconstitutional because he was mentally incompetent throughout the legal proceedings below." (Rule 32 C.R. Vol. 7, Tab. 31, pp. 70-75).  A version of Claim H reappears in the present Petition as Claim VIII, asserting that Frazier was mentally incompetent throughout the proceedings.  (Doc. 7, pp. 56-60).

Claim S in Frazier's Rule 32 petition is titled, "Mr. Frazier was denied his state and federal constitutional rights at the guilt and sentencing phases of trial, and during his multiple police interrogations by two law enforcement entities, due to the government's use of his coerced and/or involuntary confession."  (Rule 32 C.R. Vol. 7, Tab. 31, pp. 108-114).  A version of Claim S reappears in the present Petition as Claim XX, asserting that Frazier's statement was involuntary and the product of coercion, such that the trial court erred in allowing it into evidence.  (Doc. 7, pp. 93-97).

reasons clearly enunciated in the trial court's order, Frazier cannot show the state court's decision was contrary to or an unreasonable application of clearly established federal law.

For instance, although Frazier declares that counsel did not adequately challenge his statements because they failed to investigate the circumstances surrounding his statement, he never has revealed what those imperative circumstances were and how, if investigated and utilized by counsel, the admission of the statements would have been successfully challenged. He also asserts that the statements were false and inaccurate for various reasons,[20] but fails to inform the court of any specific inaccuracies and why the statements were unreliable.

Moreover, trial counsel did litigate the police misconduct aspect of Frazier's claim during a pre-trial suppression hearing, and Frazier proffers nothing to show what counsel could have done that would have changed the outcome of the proceeding. As far as his last assertion, Frazier fails to allege what kind of questioning counsel should have done to elicit responses that would either have

---

[20]Even under the most generous reading of Frazier's Rule 32 petition, two of these reasons (mental retardation and brain damage), cannot be considered to have been raised at any time before the filing of the present Petition. The failure of Frazier to assert that he is brain damaged during any state court proceeding renders that allegation procedurally defaulted for purposes of habeas review. Moreover, for reasons set out in the discussion of Claims IV(4), V, VI, VII, VIII of this Memorandum Opinion, *infra*, Frazier has failed to state a claim that he was or is incompetent, brain damaged, or mentally retarded.

48

resulted in the suppression of the confession or caused the jury to substantially discount the weight of the confession. This claim is procedurally defaulted, or in the alternative, is due to be denied.

### (i)      Failure to Engage a Mental Health Expert

Frazier alleges he received ineffective assistance of trial counsel because counsel failed to initially support, continue to pursue and hire a mental health expert to assist with a motion for mental evaluation even though evidence that Frazier suffered from mental illness, brain damage and mental retardation were readily available from variety of sources. (Doc, 7, pp. 15-16). The court shall divide this claim into two categories: (1) Frazier's claim that counsel failed to support, argue, and renew the motion for mental evaluation; and (2) Frazier's claim that counsel failed to hire a mental health expert to assist in the matter. The claims are categorized in this manner because appellate counsel raised an ineffectiveness claim against trial counsel on direct appeal only in connection with the motion for mental evaluation. (C.R. Vol. 5, Tab. 24, pp. 27-28). The second category of claim—that trial counsel was ineffective for failing to seek and present the testimony of a mental health expert in this matter—was not raised until the Rule 32 petition. (See C.R. Vol. 7, Tab. 31, pp. 7-8).

The court begins with the first category, *i.e.*, trial counsel's purported failure to support, argue and renew the motion for mental evaluation.  This claim, as it appeared in the appellate brief reads as follows:

> [T]rial counsel were ineffective in that they failed to provide the trial court with enough information to support a court-ordered mental evaluation of the Appellant, prior to the day of trial.  Prior to trial, defense counsel made a motion for a mental examination of the Appellant.  (Vol. 1, p. 60).  In this motion defense counsel alleged that the Appellant had a history of irrational, violent behavior and that he had become increasingly difficult to communicate with, making it almost impossible for him to assist in his defense.[21]
>
> The trial court held a pre-trial motion hearing, at which time he addressed the motion for a mental examination.  When asked to explain the grounds for the motion, defense counsel responded as follows:
>
>> "Defense Counsel: Your Honor, Mr. Street, who filed these motions, called me this morning and was extremely ill and had to go to the doctor.  He was scheduled - - he was supposed to handle the motions.  And I didn't get a chance to discuss that aspect with him or what has taken place on it.  So I'm not prepared to give the Court an answer at this time."

---

[21]The motion indicated that a mental evaluation was needed because:

> 4.  The Defendant, over the past several years has had several incidents during which time the Defendant exhibited uncontrollable violent behavior which was not in keeping with the history of the Defendant and which may indicate the onset of some mental disease or disorder;
>
> 5.  The Defendant has become very difficult to communicate with and assisting counsel in preparing for his defense appears limited.

(R. Vol. 1, Tab. 5, p. 61).

"The Court: Has the defendant to your knowledge had any history of mental illness or disease or defect?"

"Defense Counsel: To our knowledge the only information we have is what is alleged in the petition itself, Your Honor, with regard to past problems with regard to court proceedings and so forth.  I believe it's alluded to in the petition itself."

"The Court: Well, I'm going to deny it at this point.  If you get any further information that's relevant to that issue, I need to know as soon as possible."

"Defense counsel: Yes, sir."

(Vol. 1, R. 3-4).

Defense counsel apparently did not investigate any further, and never returned to the court with any additional information.

This Court recently examined the propriety of conducting a mental examination prior to trial.  As this Court held in *Roy v. State*, 680 So.2d 936 (Ala. Cr. App. 1996), if the mental examination had been conducted, the defense may have been able to pursue a defense of insanity, or at the very least have been able to offer evidence of a mental condition in mitigation during the sentencing phase of the trial. However, as this Court stated, "without a psychiatric evaluation, defense counsel was unable to pursue these avenues, and therefore, was unable to effectively represent his client." *Roy*, at 941.  Because they failed to provide the requisite information to the trial judge, the defense was unable to obtain the funds for the necessary mental examination.  If they had been more diligent, and had performed their responsibilities to the degree required, they could have provided the judge with the information he requested, and would have succeeded in obtaining the mental examination.  Their failure to do so obviously prejudiced the Appellant.

(C.R. Vol. 5, Tab. 24, pp. 27-28).

After reviewing the foregoing claim on direct appeal, the Alabama Court of

Criminal Appeals made the following findings of fact and conclusions of law:

> The appellant next claims that his trial counsel were ineffective because
> they failed to present sufficient information to support a court-ordered
> mental evaluation prior to trial.  The appellant not only fails to state
> what additional information could have been presented in support of the
> motion, but he also fails to establish that the additional information
> would have warranted a court-ordered mental evaluation. Again, the
> appellant has failed to meet either prong of the *Strickland* test.

*Frazier v. State*, 758 So.2d 577, 599 (Ala. Crim. App. 1999).

In his Habeas Petition, Frazier makes no attempt to show the appellate court's

decision was contrary to or an unreasonable application of clearly established federal

law, or that the decision was based upon an unreasonable determination of the facts

in light of the evidence before it.  For reasons made obvious in the brief itself and

clearly enunciated in the appellate court's order,  Frazier did not state a claim upon

which relief could be granted because he failed to show that his trial counsel was

objectively deficient or that he was prejudiced thereby.  This claim is due to be

denied.

With regard to the second category of the claim, that counsel should have

consulted with, prepared and presented expert testimony regarding Frazier's mental

health, it appeared in the Rule 32 petition as follows:

Assuming arguendo, that Mr. Frazier's statements to the police are true, defense counsel was ineffective for failing to consult with, prepare and present the testimony of a competent mental health expert at the guilt phase of Mr. Frazier's trial. Claim [[[ **Ake** [(sic)] is incorporated by reference as if fully set forth herein.

Had trial counsel consulted with a competent mental health expert, they would have also conducted a full and accurate assessment of Mr. Frazier's psychiatric and neurologic conditions, taking into consideration his genetic, other biological, and environmental factors that influenced his development at every point in his life, including in utero, infancy, early childhood, adolescence, and adulthood, which would have provided admissible evidence that a combination of genetic, biological and environmental factors affected Mr. Frazier at various stages in his development, causing a combination of various mental diseases or defected which rendered Mr. Frazier unable to appreciate the nature and quality or wrongfulness of his acts. See Ala. Crim. Code § 13A-3-1.

Reasonably competent defense counsel would have consulted with, prepared and presented, at the guilt phase of Mr. Frazier's capital trial, the testimony of a competent mental health professional demonstrating that at the time of the charged homicides, Mr. Frazier suffered from a constellation of mental illnesses and defects which significantly impaired his perception of his environment and his responses to those perceptions. Mr. Frazier did not have the capacity to, nor did he in fact, deliberate, premeditate and/or plan to kill or injure in any of these situations.

Defense counsel's performance fell below an objective standard of reasonableness for defense counsel in a capital case; there is a reasonably [(sic)] probability that, but for counsel's deficient performance, Mr. Frazier would not have been convicted of capital murder and sentenced to death. *Strickland v. Washington*, 466 U.S. 693-694.

> Reasonably competent counsel would also have investigated and presented available evidence that established reasonable doubt that Mr. Frazier was actually guilty of capital murder, and/or evidence that Mr. Frazier's mental state diminished his culpability for the charged crimes. Reasonably competent counsel would also have retained appropriate mental health consultants prior to the guilt phase of Mr. Frazier's capital trial and would have provided critical background material to them.

(Rule 32 C.R. Vol. 7, Tab. 31, pp. 7-8).

The trial court's summary dismissal of the above claim on collateral review, as adopted by the Alabama Court of Criminal Appeals, reads as follows:

> The Alabama Court of Criminal Appeals held in *Thomas v. State*, 766 So.2d 860, 893 (Ala. Crim. App. 1998), that '[a] claim of failure to call witnesses is deficient if it does not show what the witnesses would have testified to and how that testimony might have changed the outcome.' The allegations contained in this claim are speculative, conclusionary, and unsupported by any facts. Frazier fails to identify in his Rule 32 petition any mental health expert by name of proffer 'any evidence to show that any independent expert witness would testify as he indicated so that there would be a reasonable probability of a different result in the case. *Strickland v. Washington*, 466 U.S. at 694 . . .' *Callahan v. State*, 767 So. 2d 380, 295 (Ala. Crim. App. 1999). This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP. *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding that "none of Bearden's claims [of ineffective assistance of counsel] were pleaded with any specificity."

(Rule 32 C.R., Vol. 14, Tab. 49, pp 6-7).

This claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it. Even if the trial court's

procedural default ruling can be construed as a decision on the merits in that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier cannot show the state court's decision was contrary to or an unreasonable application of clearly established federal law.  As such, this claim is procedurally defaulted, or in the alternative, without merit.

Under any theory that Frazier's claim could be viewed as properly before this court for review, he is not entitled to relief.  In the present Petition, Frazier again alleges that counsel was ineffective for failing to confer with a mental health expert and that such expert testimony would have established that at the time of the murder and trial that he "suffered from severe mental illness, including psychotic delusions, brain damage and mental retardation, that he did not have the capacity to, nor did he in fact deliberate, premeditate or plan to kill or injure." *(Id.)*. These illnesses, he argues, would have "diminished or negated culpability, competency to stand trial or knowingly and intelligently waive constitutional rights." (*Id.*).

According to Frazier, "reasonably competent counsel would also have investigated and presented available evidence that established a reasonable doubt that Mr. Frazier was actually guilty of capital murder, and evidence that Mr. Frazier's mental state profoundly diminished his culpability for the charged crimes." (*Id.* at 16).

First and foremost, the court finds that for purposes of investigation for the *guilt* phase of trial, evidence concerning Frazier's mental health would only be significant if it showed that Frazier was legally insane (as defined by Alabama law) at the time the offense was committed or that Frazier was legally incompetent during the pendency of trial.

Frazier's arguments are fatally flawed.  Frazier never alleged he was brain damaged during any state court proceeding, and as such, that aspect of this claim is procedurally defaulted for purposes of habeas review.  Moreover, for reasons set out in the discussion of Claims IV(4), V, VI, VII, VIII of the Memorandum Opinion, Frazier cannot establish he is incompetent, brain damaged, mentally retarded, or suffered from a mental illness so severe that he would have been found legally insane at the time of the offense.  Thus, even (1) if trial counsel were objectively deficient for failing to adequately support the motion for mental evaluation, and renew his motion at a later time, and (2) appellate counsel[22] was objectively deficient on direct appeal for failing state an ineffectiveness claim against trial counsel concerning the motion, Frazier has simply failed to show he was prejudiced by either failure.  The

---

[22]In Claim XXIV of his Petition, Frazier does attempt to make an ineffectiveness claim against appellate counsel for prematurely raising an ineffectiveness claim against trial counsel on direct appeal, and then failing to support the claim.  (Doc. 7, pp. 119-121).  However, for the reasons discussed above, it is obvious that his ineffectiveness claim against appellate counsel is without merit.

same reasoning would apply to Frazier's contention that counsel was ineffective for failing to have an expert testify as to his mental deficiencies.

### (j)     Failure to Request Motion for Change of Venue

Frazier alleges his trial counsel were ineffective for failing to request a motion for change of venue, because "[d]ue process mandates a change in venue when there is pervasive, inflammatory pre-trial publicity[]" that would affect his right to a fair and impartial jury.  (Doc. 7, pp. 16-17) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966); *Rideau v. Louisiana*, 373 U.S. 723 (1963); *Heath v. Jones*, 941 F.2d 1126 (11th Cir. 1991)).

Frazier alleges that a motion for change of venue was necessary in his case because:

> During the weeks immediately preceding Mr. Frazier's trial, *The Birmingham News* published several articles that would have affected the jurors' views on the death penalty, homicides, and crime in Alabama generally.  The articles include, but are not limited to the following: a May 25, 1996 article regarding a life sentence for the killing of five people; a May 23 article regarding Alabama Attorney General Jeff Sessions' disappointment over the legislatures failure to pass death penalty and other crime legislation; four articles on May 20 and 21 regarding judicial and legislative candidates' positions on the death penalty and crime; a May 20 article regarding the final trial in a multiple defendant death prosecution; a May 19 story on the start of a capital murder trial with five victims; and seven articles between May 3 and 17 regarding more candidates' positions on the death penalty and other crime issues.

(*Id.* at 17).   Additionally, Frazier complains counsel did not submit evidence of

written and broadcast media covering the murder and investigation of Frazier. (*Id.*)

(citing R. 178-180).  He also accuses counsel of failing to adequately *voir dire* the

jury on that issue, and failing to object when the trial court did not sequester the jury.

(*Id.*)(citing R. 164 (as to sequestration)).

> The trial court examined this claim and found that:

> Frazier fails to proffer any facts in his petition that, if true, would show
> the listed articles were read by anyone on his jury or, if they were, that
> those articles unduly influenced their verdict.  This claim is summarily
> dismissed because it fails to meet the specificity and full factual
> pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP.
> *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App.
> 2001)(finding that 'none of Bearden's claims [of ineffective assistance
> of counsel] were pleaded with any specificity.

> . . . .

> [With regard to counsel's failure to ask the venire about publicity],
> Frazier fails to identify any specific juror that was exposed to pretrial
> publicity, or if there were, that it prejudiced the[m] in any way.  This
> claim is summarily dismissed because it fails to meet the specificity and
> full factual pleading and disclosure requirements of Rules 32.3 and
> 32.6(b), ARCrP.  *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim.
> App. 2001)(finding that 'none of Bearden's claims [of ineffective
> assistance of counsel] were pleaded with any specificity.

(Rule 32 C.R. Vol. 14, Tab. 49 p. 9).

Finally, with regard to the sequestration claim, the trial court's decision, as

adopted by the appellate court reads as follows:

Frazier's only attempt to support this claim is to list the dates of certain newspaper articles. None of the listed articles appears to be about Frazier's specific case. Whether to allow a jury to separate during a trial lies within the discretion of the trial court. Rule 19.3 ARCrP. Frazier has pleaded no facts in his Rule 32 petition (i.e., media coverage, the names of specific jurors whose verdict was affected) that would lend any support to this bare allegation. Moreover, as the trial judge over this case, not sequestering the jury did not prejudice Frazier. This claim summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP. *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding that 'none of Bearden's claims [of ineffective assistance of counsel] were pleaded with any specificity."

(Rule 32 C.R. Vol. 14, Tab. 49 p. 9).

This claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier cannot show the state court's decision was contrary to or an unreasonable application of clearly established federal law.

The right to a fair and impartial jury, free from the prejudicial influence of external factors like inflammatory publicity, is clearly established. The Supreme Court has recognized that publicity of a criminal case, either before or during a trial, can prejudice jurors and, thereby, deprive a defendant of the right to a fair trial by an

59

impartial jury.  *See*, *e.g.*, *Chandler v. Florida*, 449 U.S. 560, 574 (1981) (observing that any highly publicized criminal trial presents a risk of compromising a defendant's right to a fair trial); *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966) (holding that a jury's deliberations should be based upon evidence presented in open court, not on external publicity).

The standards governing the question of whether a defendant's motion for a change of venue or for a continuance should be granted because of extensive publicity prejudicial to the interests of the accused derive from the Fourteenth Amendment's Due Process Clause, "which safeguards a defendant's Sixth Amendment right to be tried by a panel of impartial, indifferent jurors." *Coleman v. Kemp*, 778 F.2d 1487, 1489 (11th Cir. 1985) (internal citations and quotation marks omitted); *see also*, *e.g.*, *United States v. Davis*, 583 F.2d 190, 197 (5th Cir. 1978) ("A fundamental principle of due process requires that the jury's verdict be based on evidence received in open court, not from outside sources.").[23]

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors.  The failure to accord an accused a fair hearing violates even the minimal standards of due process.  "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136.  In the ultimate analysis,

---

[23]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

> only the jury can strip a man of his liberty or his life.  In the language of
> Lord Coke, a juror must be as "indifferent as he stands unsworne."  Co.
> Litt. 155b.  His verdict must be based upon the evidence developed at
> the trial.   This is true, regardless of the heinousness of the crime
> charged, the apparent guilt of the offender or the station in life which he
> occupies.   It was so written into our law as early as 1807 by Chief
> Justice Marshall in 1 Burr's Trial 416 (1807).   "The theory of the law is
> that a juror who has formed an opinion cannot be impartial." *Reynolds
> v. United States*, 98 U.S. 145, 155.

*Irvin v. Dowd*, 366 U.S. at 722 (some citations omitted).

Nevertheless, "even pervasive, adverse publicity does not inevitably lead to an

unfair trial." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 554-55 (1976).

Moreover, a change of venue is not mandated simply because "potential jurors have

been exposed to the facts of the case." *Meeks v. Moore*, 216 F.3d 951, 960 (11th Cir.

2000).  Instead, the question a trial court must ask when considering a defendant's

motion for change of venue is whether the publicity surrounding the case has given

jurors such fixed opinions that they cannot impartially judge the defendant's guilt or

innocence based upon evidence presented at trial.  That was the holding in *Patton v.

Yount*, 467 U.S. 1025 (1984), in which the Supreme Court said:

> The Court of Appeals below thought that the fact that the great majority
> of veniremen "remembered the case" showed that time had not served
> "to erase highly unfavorable publicity from the memory of [the]
> community."  This conclusion, without more, is essentially irrelevant.
> *The relevant question is* not whether the community remembered the
> case, but *whether the jurors* at [the petitioner's] trial *had such fixed
> opinions that they could not judge impartially the guilt of the defendant.*

> *Irvin*, 366 U.S. at 723.  It is not unusual that one's recollection of the
> fact that a notorious crime was committed lingers long after the feelings
> of revulsion that create prejudice have passed. . . .

*Id*. at 1035 (emphasis supplied).

When addressing that question, the trial judge should recognize that the constitutional requirement of impartiality does not require that only persons having *no knowledge* of the underlying criminal offense be seated as jurors.

> It is not required . . . that the jurors be totally ignorant of the facts and
> issues involved.  In these days of swift, widespread and diverse methods
> of communication, an important case can be expected to arouse the
> interest of the public in the vicinity, and scarcely any of those best
> qualified to serve as jurors will not have formed some impression or
> opinion as to the merits of the case.  This is particularly true in criminal
> cases.  To hold that the mere existence of any preconceived notion as to
> the guilt or innocence of an accused, without more, is sufficient to rebut
> the presumption of a prospective juror's impartiality would be to
> establish an impossible standard.  *It is sufficient if the juror can lay
> aside his impression or opinion and render a verdict based on the
> evidence presented in court.*

*Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961) (emphasis supplied) (citations omitted).

*See also*, *e.g.*, *Mills v. Singletary*, 63 F.3d 999, 1011-12 (11th Cir. 1995) (holding that the jury was not prejudiced, even though 70 of 84 venirepersons had some knowledge of the case, 55 of those 74 had seen at least one article about the case, and 24 prospective jurors were stricken for bias, because the media coverage of the capital murder case had been primarily factual).

A habeas petitioner must present evidence of at least two circumstances in order to establish juror bias that rises to the level of a constitutional violation:  (1) "inflammatory, prejudicial pretrial publicity," *Coleman v. Kemp*, 778 F.2d 1487, 1490 (11th Cir. 1985) (quoting *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980)), that (2) *either* (a) actually prejudiced an individual juror who deliberated on verdicts, *see*, *e.g.*, *Murphy v. Florida*, 421 U.S. 794, 800-03 (1975); *Mills v. Singletary*, 63 F.3d at 1009, *or* (b) so saturated the community from which jurors were summoned, and so pervaded the trial court proceedings, that it gives rise to a presumption of inherent prejudice.  *See*, *e.g.*, *Sheppard*, 384 U.S. at 355-57 (prejudice presumed because trial judge allowed reporters free reign in the courtroom, and failed to take protective measures); *Estes v. Texas*, 381 U.S. 532, 544 (1965) (prejudice presumed, despite no identifiable showing of prejudice to any defendant, because the trial court proceedings were televised); *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963) (prejudice presumed because defendant's confession was televised prior to trial); *Woods v. Dugger*, 923 F.2d 1454, 1460 (11th Cir. 1991) (prejudice presumed due to the hostile atmosphere pervading the small, rural community in which defendant's capital murder trial for the killing of a prison guard occurred, and, a number of prison guards attended the trial in full uniform to show solidarity with the deceased); *Coleman v. Kemp*, 778 F.2d 1487, 1540 (11th Cir. 1985) (prejudice presumed because

63

of "inflammatory and prejudicial pretrial publicity that so pervaded the [small town in which the murders occurred] as to render virtually impossible a fair trial before an impartial jury"); *Isaacs v. Kemp*, 778 F.2d 1482, 1484-86 (11th Cir. 1985) (same). *But see*, *e.g.*, *Mills v. Singletary*, 63 F.3d at 1013 (prejudice not presumed in a capital murder case from pretrial publicity that included fifteen newspaper articles and television reports concerning the victim's murder and defendant's arrest, because most news articles and other media accounts of the case did not focus upon the defendant, but instead were factual in nature, and, only 15% of the venire was excused for bias due to pretrial publicity).

As can be seen by this expansive explanation of the factors involved in pre-trial publicity, there was no error in the trial court's findings that the claims were procedurally defaulted.  The explanation further supports this court's alternate holding that even if the state court's decision could be considered an adjudication on the merits of the claims, Frazier clearly failed to state a claim upon which relief could be granted.  This claim is due to be procedurally defaulted, or in the alternative, due to be denied.

### 2. Ineffective Assistance of Counsel During Voir Dire and Jury Selection

Frazier alleges that trial counsel were ineffective during voir dire and jury selection for a number of reasons. (Doc. 7, ¶¶ 58-66, pp. 17-20). Frazier's complaints can be divided into three categories: (1) counsel failed to ask important questions of the venire, (2) counsel failed to object to venirepersons who were wrongfully struck or should not have remained in the jury pool, and (3) counsel failed to make any *Batson* or *J.E.B.* objections and failed to preserve the composition of the jury for appellate review. (*Id.*).

### (a) Failure to Ask Important Questions of Venire

Beginning with the first category, the court will first outline Frazier's contentions and then address them together. Frazier argues that the following questions were not asked of the venire:

### (1) Exposure to Media

Although given court authority to do so, counsel failed to "[en masse or] individually[24] questions jurors on their exposure to media surrounding the case. . ." (*Id.* at 18).

---

[24]This included one potential juror (B. Jackson), who informed the court that he worked in *The Birmingham News* sales and circulation department. (*Id.*) (citing R. 85).

### (2)   Views on the Death Penalty

Counsel also did not individually question the jurors regarding their views on the death penalty, even though he had been given authority to do so. (*Id.*).  Counsel did not ask any veniremember if they would *automatically* vote for the death penalty if a defendant was convicted of capital murder. (*Id.*) (citing *Morgan v. Illinois*, 504, US 719, 725-735 (1992).

### (3)   Bias in Favor of, or Relationships with, the Prosecution

There were several police officers and relatives of police officers on the venire, yet counsel never questioned these individuals about "bias in favor of the prosecution or the extent of their personal relationships with the prosecution team.  (*Id.*). However, Frazier identifies only Birmingham Police Officer B. Treadway and D. Jones, "whose son was with the Birmingham Police Department" as being those venirepersons who should have been questioned.  (*Id.*) (citing R. 92 and R 117, respectively).

### (4)   Previous Service as a Juror in a Criminal Trial

Counsel failed to ask any venireperson if they had previously served as a juror in a criminal trial, and if so, what verdict was reached. (*Id.*).  According to Frazier,

any juror who had previously convicted a defendant in a criminal trial would have warned counsel that that individual was prone to convict.  (*Id.*).

### (5)    Victim of Crime

Counsel failed to asked if any venireperson had been the victim of crime, which he contends "often increases the odds" that juror will be more sympathetic to the prosecution.  (*Id.*).  He expresses shock that counsel was not prompted to ask this question "[e]ven when potential juror" Cosby raised her hand and offered that she was unsure if she could be fair because her son had been murdered, daughter had been the victim of an attempted rape, and she had been victim of robbery.  (*Id.* at 18-19).  Frazier points out that trial counsel did not ask Ms. Cosby any follow up questions and did not move to strike her for cause.  (*Id.* at 19) (citing  R. 124-25).  However, he does that admit that the prosecutor asked and Cosby stated she didn't think she could serve on the jury.  (*Id.*).

The trial court's order, as adopted by the Alabama Court of Criminal Appeals, summarily dismissed all of the above claims for "fail[ure] to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP. *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding that 'none of Bearden's claims [of ineffective assistance of counsel] were pleaded with any specificity."  (Rule 32 C.R. Vol. 14, Tab. 49, pp. 10-13).   The court found that

Frazier had not identified anyone exposed to "pretrial publicity or, if they were, that it prejudiced the[m] in any way." (*Id.* at 10). Nor did Frazier identify any jurors whose views on the death penalty were prejudicial, "or that the jury did not follow the Court's instructions regarding the law of the case." (*Id.*).

The court also pointed out that while Frazier identified two veniremembers as having connections to law enforcement, either personally or through relatives, he does not state that either individual actually served on his jury, "or if they did, that they were biased against him. Additionally, Frazier proffers no facts showing any other veniremember was acquainted with or even knew a police officer." (*Id.* at 11). The court found Frazier's claims about counsel's inquiry as to the veniremembers prior jury service or if anyone had been the victim of crime to be "speculative" in the sense that those members should be presumed to be biased and lacking any facts to support it. (*Id.* at 11-13).

These claims are procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claims. Even if the trial court's procedural default ruling can be construed as a decision on the merits in that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier's Petition lacks any legal argument whatsoever to show the state court's decision was contrary to or an

unreasonable application of clearly established federal law.  This claim is procedurally defaulted, or in the alternative, due to be denied.

### (b)    Failure to Object to Venirepersons

The second category of claims asserts that counsel either failed to object to or wrongfully allowed certain veniremembers to be struck from the jury.

### (1)    Removal of Two Jurors Who Made Statements Sympathetic to Defense

Frazier first alleges:

> Counsel was ineffective when he "failed to object to improper removal from the pool of two jurors who made statements sympathetic to" the defense.  *Id.*  The first potential juror Ms. Poythress, indicated that she might be opposed to death penalty, but then when asked by the prosecutor whether she would automatically vote against the death penalty, Poythress replied, "'I *think* I would.'"  *Id.* (quoting R. 151). Frazier accuses counsel of making no attempt to rehabilitate.  Therefore, the trial interpreted her responses as equivocal, and when state moved to strike her, counsel did not object.  *Id.* (citing R. 151-152).

(Doc. 7, pp. 19-20).

The trial court's order, as adopted by the Alabama Court of Criminal Appeals, summarily dismissed this claim for "fail[ure] to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP.  *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding that 'none of Bearden's claims [of ineffective assistance of counsel] were pleaded with any

specificity." (Rule 32 C.R. Vol. 14, Tab. 49, p. 13). According to the trial court, "Frazier has not proffered any questions in his Rule 32 petition that trial counsel could have asked that would have rehabilitated this prospective juror." (*Id.*).

The claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found in that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier's Petition lacks any legal argument whatsoever to show the state court's decision was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.[25] This claim is procedurally defaulted, or in the alternative, due to be denied.

### (2)   Second Venireperson Lawrence

Frazier also alleges trial counsel was ineffective because he moved to strike the second venireperson, Mr. Lawrence (at the direct behest of Frazier), even though

---

[25]Due to her anti-death penalty stance while the venire was questioned as a whole, the trial court allowed opposing counsel to conduct individual *voir dire* regarding Ms. Poythress' death penalty stance outside the presence of the jury.   (R. Vol. 2., pp. 150-52).   Ms. Poythress unequivocally stated she would never vote for the death penalty because of her religious beliefs and that she felt "that it's wrong."   (*Id.* at 150).   The trial court asked her if there would ever be any circumstance that she would be able to impose the death penalty, and she answered, "No."   (*Id.* at 151).

Lawrence "voluntarily articulated that Mr. Frazier's young age would play a role in his deliberations . . . . *and* his insistence that he could be impartial." (*Id.*) (citing R. 152-56). Frazier complains that counsel should have convinced him that Mr. Lawrence would have been "a good person to leave on the jury" and that an inquiry should have been done as to why Frazier did not want Mr. Lawrence on the jury. (Doc. 7, pp. 19-20).

The trial court's order, as adopted by the Alabama Court of Criminal Appeals, denied this claim on the merits for failure "to state a claim or establish a material issue of fact or law as required by Rule 32.7(d)." (Rule 32 C.R. Vol. 14, Tab. 49, p. 14). As support for its decision, the court wrote, "The record indicates Frazier himself, after individual voir dire, stated that he did not want [Lawrence] . . . .to serve on the jury. In addition, the Court challenged this potential juror for cause because the Court was concerned with his understanding of the judicial process." (*Id.*) (citing R. 157).

This claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier's Petition lacks any legal

argument whatsoever to show the state court's decision was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.[26]   This claim is procedurally defaulted, or in the alternative, due to be denied.

### (3)    Prior Relationship Between Venireperson Hatton and Prosecutor Brown

Finally, Frazier alleges counsel was ineffective because he did not "inquire into the exact nature" of a prior relationship between venireperson Hatton and prosecutor Brown, and instead allowed Hatton to remain in the jury pool. (Doc. 7, p. 20) (citing R. 132).   The sole basis for the need for this additional inquiry was the fact that

---

[26]It is true that venireperson L. Lawrence, during individual *voir dire*, communicated several times that he believed that because of Frazier's young age at the time of the crime, there must be something wrong with Frazier. (R. Vol.2,  pp. 152-57). ("[H]e had to be under the influence of something, on drugs or something, that's what I'm saying.").   Lawrence also stated that he would not be in favor of the death penalty unless the individual admitted they had committed the crime. (*Id.*  at 154).   When the trial court asked Lawrence if he could follow sentencing guidelines as instructed by the court with regard to whether or not the death penalty was appropriate, Lawrence answered, "Well, just like I had to go with the majority, you know.  But I would rather, you know, get off, get out of it, because the majority, you got to go with what the majority says."   (*Id.* at 155). The trial court then twice told that Lawrence did not have to go with the majority, and asked if Lawrence understood that, to which Lawrence answered, "Yeah, yes[]" and "That's right."   (*Id.*).

The prosecuting attorney then asked the court to instruct Lawrence not to discuss the case with the jury, and Lawrence stated he would not.  *Id.* at 156.   Although Frazier's counsel did not move to challenge Lawrence, Frazier himself spoke up and said, "I don't want him, I don't want him."  (*Id.* at 156-57).   Defense counsel then challenged Lawrence, and the trial court responded: "I'm going to challenge him.  Frankly, I'm not sure he knows, understands the process.  I'm a little concerned about his preconceived notions about things."  (*Id.* at 157).

Hatton stated that prosecutor Brown had struck him from a previous jury and prosecutor Brown denied having done so.  (*Id.*).

The trial court's order, as adopted by the Alabama Court of Criminal Appeals, summarily dismissed this claim for "fail[ure] to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP.  *See Bearden v. State*, 825 So.2d 868, 871 (Ala. Crim. App. 2001)(finding that 'none of Bearden's claims [of ineffective assistance of counsel] were pleaded with any specificity."  (Rule 32 C.R. Vol. 14, Tab. 49, p. 15).  According to the trial court,

> Frazier's only support for this claim is to point out that during voir dire, Juror Smith said that Brown had struck him from a jury four or five years before.  Brown denied striking Smith.  Frazier has pleaded no facts in his Rule 32 petition that, if true, would establish trial counsel's failure to ask Smith additional questions caused Frazier to be prejudiced.
>
> Moreover, Frazier fails to proffer any facts showing Smith actually served on his jury, or that he was actually biased.

(*Id.* at 14-15).

This claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it.  Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier's Petition lacks any legal

73

argument whatsoever to show the state court's decision was contrary to or an unreasonable application of clearly established federal law.   This claim is procedurally defaulted, or in the alternative, due to be denied.

> **(c)** **Failure to Make *Batson* and *J.E.B.* Objections and Failure to Preserve the Composition of Jury**

With regard to the third category, Frazier alleges:

> Trial counsel failed to object to the State's race and gender discrimination in its use of peremptory challenges.  *Batson v. Kentucky*, 476 U.S. 79 (1986); *J.E.B. v, Alabama*, 511 U.S. 127 (1994).  Counsel should have argued that a prima facie case of discrimination existed. Counsel also failed to make a record of the racial composition of the jury and the prosecution's use of peremptory strikes.

(Doc. 7, p. 20).

Appellate counsel raised this issue on direct appeal, whereupon the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law:

> The appellant alleges that his trial counsel were ineffective because they did not make a *Batson* motion at the conclusion of jury selection. In addition, he argues that:

>> "defense counsel did not even preserve for the record what the racial composition of the jury was, nor did they indicate what strikes were used against blacks, whites, females, males, etc. The only reference to the racial composition of the jury comes directly from the appellant himself, when he complained about the jury being ten whites and only four

blacks [see Part II and Part III of this opinion[27]]. . . .  The
failure of defense counsel to preserve this information for
the record, renders the appellant incapable of raising this
issue on appeal."

(Appellant's brief, p. 28.)

The Alabama Supreme Court has held that "the failure of trial counsel
to make a timely *Batson objection to a prima facie case of purposeful
discrimination by the State* in the jury selection process through its use
of peremptory challenges is presumptively prejudicial to a defendant."
*Ex parte Yelder*, 575 So.2d 137, 139 (Ala. 1991), cert. denied, 502 U.S.
898, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991). (Emphasis added.)  The
record does not raise an inference of purposeful discrimination in the
prosecution's use of its peremptory challenges.  See *Smith v. State*, 37
Ala.App. 116, 64 So.2d 620, 621 (Ala.Cr.App.1998), quoting *Rieber v.
State*, 663 So.2d 985, 991 (Ala.Cr.App.1994), aff'd, 663 So.2d 999
(Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437
(1995) ("[f]or plain error to exist in the *Batson* context, the record must
raise an inference that the state ... engaged in 'purposeful discrimination'
in the exercise of its peremptory challenges.")  We simply cannot
determine from the record before this Court whether a prima facie case
of discrimination was present, and whether counsel should have made
a *Batson* motion.  This Court will not presume error from a silent record.
 *Stegall v. State*, 628 So.2d 1006, 1009 (Ala.Cr.App.1993). It is possible
that counsel's decision not to make a *Batson* motion was a strategic
choice.  Accordingly, the appellant has failed to establish that
his counsel were ineffective for not making a *Batson* motion.  This situation
exemplifies why claims of ineffective assistance of counsel should first
be presented to the trial court before being addressed on appeal. See
*Jackson v. State*, 534 So.2d 689, 692-93 (Ala.Cr.App.1988); *Ex parte
Ingram*, 675 So.2d 863, 865 (Ala.1996).

*Frazier v. State,*  758 So.2d 577, 600 (Ala. Crim. App. 1999).

---

[27]*See* discussion of Claims VI, VII and VII in this Memorandum Opinion, *infra*.

Other than the brief description of this claim, which is the three sentence paragraph quoted in its entirety under the heading of this sub-claim, Frazier makes no legal or factual argument to convince this court that the state court's decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, or an unreasonable determination of the facts in light of the evidence before it.  This claim is due to be denied.[28]

### 3.     Ineffective Assistance of Counsel During the Guilt Phase

Frazier alleges that his trial counsel was ineffective during the guilt phase of trial for the following reasons set out fully below. (Doc. 7, ¶¶ 67-91, pp. 20-29)

### (a)     Failure to Call Even One Witness On His Behalf

Frazier alleges his trial counsel was ineffective because they failed to call even one witness on his behalf at the guilt phase of trial.  (Doc. 7, p. 20).  The trial court's summary dismissal of the claim on failure to comply with Alabama Rules of Criminal Procedure 32.3 and 32.6(b), as affirmed and adopted by the Alabama Court of Criminal Appeals reads as follows:

> Frazier fails . . .  to proffer in his Rule 32 petition the name of a single defense witness trial counsel could have called, proffer what their

---

[28]In Claim XXIV of his Petition, Frazier attempts to make an ineffectiveness claim against appellate counsel for prematurely raising this particular ineffectiveness claim against trial counsel on direct appeal, and then failing to properly support the claim.  (Doc. 7, pp. 119-121).  However, for the reasons discussed above, it is obvious that his ineffectiveness claim against appellate counsel is without merit.

testimony would have been, or indicated how their testimony would have changed the outcome of the trial. *See Thomas v. State*, 766 So.2d 860, 893 (Ala. Crim. App. 1998)(holding "a claim of failure to call witnesses if defic[ient] if it does not show what the witnesses would have testified to and how that testimony might have changed the outcome.")

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 27-28).

This claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, for the reasons clearly enunciated in the trial court's order, Frazier's Petition lacks any legal argument whatsoever to show the state court's decision was contrary to or an unreasonable application of clearly established federal law. This claim is procedurally defaulted, or in the alternative, due to be denied.

### (b)    Failure to Object to Improper Victim Impact Evidence

Frazier also alleges that trial counsel failed to object to improper victim impact evidence at trial. (Doc. 7, pp. 20-21). First, Frazier believes objections should have been made when the victim's mother, Augusta Stark, testified regarding the "identity, date and time of death[,]" of her daughter. (*Id*. at 20). According to Frazier, such testimony was improper victim impact evidence because this evidence was

77

established by other witnesses. (*Id.*). Frazier also asserts that trial counsel allowed the prosecutor to lead Ms. Stark, without objection. (*Id.*).

Frazier complains about other victim impact evidence that counsel failed to object to at trial, including the following list:

> [the] prosecutor's opening and closing arguments at the guilt phase centered around the life history and family of the victim, R. 198-99; 456-457;459;465; argument that intimated that if the victim's daughters had been home they would have been killed too, R. 217; argument that [the] granddaughter will never know grandmother. R. 220; . . .[29]

(*Id.* at 20-21).

Frazier alleges that "by describing the victim's background and her children, and by emphasizing the fact that Ms. Brown had been preparing for Thanksgiving"[30] when she died, "the prosecutor exhorted the jury to base its verdict on passion and emotion rather than on" the evidence, and this denied him the right to a fair trial and due process. ( *Id.* at 21) (citing *Taylor v. Kentucky*, 436 U.S. 478, 488-489 (1978);

---

[29] Frazier makes additional allegations of misconduct about which he claims counsel should have objected, but a review of the record shows those comments took place at the *penalty* phase of trial, not the guilt phase trial:

> thanking the jury on the victim's family's behalf; R. 564; refers to his friendship with the victim's family and argues the victim would want defendant to receive death penalty, R. 565; and much of the penalty phase closing argument in which prosecutor paints a scenario of a future Thanksgiving of the grandchild the victim will never see. R. 573-574.

(*Id.* at 20-21).

[30] Once again, this argument occurred at the *penalty* phase of trial.

*Woodson v. North Carolina*, 428 U.S. 280 (1976); *Ex parte Rieber*, 663 So.2d 999,

1005 (1995) (testimony regarding victim's family not relevant to guilt or innocence,

and impermissible admitted in guilt phase)).

The trial court's order, as adopted by the Alabama Court of Criminal Appeals

on collateral review, held:

> [With regard to ]. . . the victim's mother's testimony, [while it] may have
> contained personal information about the victim, the bulk of her
> testimony was obviously an attempt by the prosecutor to establish the
> time of death of the victim.   Additionally, the Alabama Court of
> Criminal Appeals held on direct appeal that the testimony of the victim's
> mother was "properly admitted into evidence; [it was] relevant to the
> prosecution's reconstruction of the crime." *Frazier*, 758 So.2d at 602.

> . . . .

> Frazier also claims . . . that trial counsel was ineffective for failing to
> object to other instances of alleged prosecutorial misconduct,
> contending that the prosecutor urged the jury to render a verdict based
> on passion and emotion and not evidence of guilt or innocence.

> On direct appeal, the Court of Criminal Appeals held:

>> In this case the evidence against [Frazier] was compelling -
>> [Frazier] confessed and his confession was corroborated by
>> the [S]tate's evidence. . . . [E]ven if the prosecutor's
>> comments were constructed as an improper attempt to
>> invoke sympathy for the victim and her family, no plain
>> error occurred.

> *Frazier*, 758 So. 2d at 604.

79

Based on the holding of the Court of Criminal Appeals, Frazier is unable to established ineffective assistance under *Strickland*. *See Williams v. State*, 783 So.2d 108, 133 (Ala. Crim. App. 2000) (holding a finding of no plain error on appeal establishes petitioner was not prejudiced under *Strickland*). This allegation is summarily dismissed because it fails to state a claim or establish a material issue of fact or law exists as required by Rule 32.7(d) (ARCrP).

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 42-44).

The court has carefully examined Frazier's assertions and is unimpressed with his attempts to insert penalty phase arguments into this claim. It is equally unimpressed that the material factual portions of the claim are no more specific and developed than this:

[Counsel failed to object to the following:] prosecutor's opening and closing arguments at the guilt phase centered around the life history and family of the victim, R. 198-99; 456-457;459;465; argument that intimated that if the victim's daughters had been home they would have been killed too, R. 217; argument that [the] granddaughter will never know grandmother. R. 220; . . . .

(Doc. 7, pp. 20-21).

It is Frazier's responsibility to develop his claim and he cannot make vague assertions and expect the court to scour the record in search of support for his conclusory assertions that the prosecutor's comments were improper and that counsel was constitutionally ineffective for failing to object to the comments. Thus, the court

must consider Frazier's piecemeal factual allegations at face value, *i.e.*, as they appear in the claim quoted above.

With this in mind, the court notes that Frazier never makes any specific argument to show that the state court's decision on the merits of the claim is contrary to or an unreasonable application of clearly established law, nor has he argued specifically why the court's decision is based upon an unreasonable interpretation of the facts in light of the evidence before it.  Therefore, the court is left with a hollow assertion that the prosecutor's misconduct violated Frazier's right to a fair trial and string citations to two Supreme Court cases: *Taylor v. Kentucky*, 436 U.S. 478, 488-

489 (1978)[31] and *Woodson v. North Carolina*, 428 U.S. 280 (1976),[32] neither of which

supports his claim.

The last case cited by Frazier is an Alabama Supreme Court case, wherein that

court found that although testimony regarding the victim's family was improper at the

guilt phase of trial (because it did not involve the issue of guilt or innocence),

---

[31]In *Taylor v. Kentucky*, the prosecutor engaged in conduct that could have been, but were not corrected by the trial court, despite efforts of the defense attorney.  In that portion of the case cited by Frazier, the prosecutor, in his opening argument, observed that a warrant had been taken out against the defendant, he had been indicted and read the indictment to the jury.  436 U.S. at 488.  Then, in his closing argument the prosecutor intimated the defendant was guilty simply because of his status as a defendant.  (*Id.* at 486-88).

 Trial counsel in *Taylor* tried in vain to convince the trial court to give a jury instruction as to the presumption of innocence and an instruction to the jury that the indictment was not evidence.  (*Id.* at 488-89).  The trial court refused to do so.  The trial court also gave "Spartan" instructions on the prosecution's burden of proof beyond a reasonable doubt "and none at all on the jury's duty to judge [the defendant] only on the basis of the evidence heard at trial."  (*Id.* at 486).   The Supreme Court reversed the conviction, holding:

> The prosecutor's description of those events was not necessarily improper, but the combination of skeletal instructions, the possible harmful inferences from the references to the indictment, and the repeated suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine dangers that the jury would convict petitioner on the basis of those extraneous considerations, rather than on the evidence introduced at trial.  That risk was heightened because the trial essentially was a swearing match between victim and accused. [footnote omitted].

(*Id.* at 487-88).

[32]*Woodson v. North Carolina* has nothing to do with prosecutorial misconduct at the guilt phase of trial or counsel's ineffectiveness for failing to object to that misconduct.  428 U.S. 280 (1976).  *Woodson* clarifies a capital defendant's constitutional right to have the factfinder listen to evidence of his background and character as a means to achieving an appropriate, individualized sentencing determination.

Reiber's right to fair trial and due process was not violated based on the based on the trial record. *Ex Parte Reiber*, 663 So.2d 999, 1005-1006 (Ala. 1995).

Neither Frazier's claim as pled, nor any of the cases cited by Frazier, show that the Alabama state court's *Strickland* analysis in connection with this claim of ineffective assistance is contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it. Even if the prosecutorial argument, testimony and comments at the guilt phase of trial were improper and counsel failed to object to the improper comments, Frazier still cannot show he was prejudiced by counsel's error because the evidence against him at trial was overwhelming. There is no reasonable probability that, but for counsel's failure to object to the comments and testimony, Frazier would have been acquitted. This claim is due to be denied.

### (c)    Failure to Object to the Admission Of, or to Impeach, Irrelevant Hair and Semen Evidence

Next, Frazier alleges that counsel failed "to object to the admission of or impeach irrelevant hair and semen evidence." (Doc. 7, p. 21). He argues the evidence was irrelevant because it did not link Frazier to crime and "lead to the highly prejudicial interpretation that the victim had been sexually assaulted." (*Id.*)

83

Frazier also declares that counsel didn't object to the trial court's failure to qualify forensic scientists Huys, Higgins and Drexler, all of whom testified about hair and semen analysis, failed to adequately cross-examine the scientists on those issues, and completely failed to rebut their testimony by use of expert witnesses. (*Id*. at 21-22) (citing R. 350-352; 360).

Frazier specifically complains that Huys did not testify regarding the procedure for testing semen, and the lab standards for ensuring reliability of the test and the methodology he used to do so. (*Id*. at 21). Nor did Higgins specify his method or procedure for determining gun powder on victim's hair or standards of reliability in his lab. (*Id*. at 22). Frazier makes no specific allegations concerning Drexler. (*Id.).*

The trial court's order regarding these claims, as adopted by the Alabama Court of Criminal Appeals on collateral review, reads as follows:

> Evidence that semen and foreign hair were present in or on the victim was relevant to prove the rape element in count III of the indictment against Frazier. Moreover, this claim is without merit because Frazier was not convicted of murder during rape. Therefore, Frazier cannot show that he was prejudiced by the admission of this evidence as required by *Strickland.* This claim is summarily dismissed because it fails to state a claim or establish a material issue of fact or law exists as required by Rule 32.7(d), ARCrP.
>
> . . . .
>
> Frazier also claims. . . that trial counsel did not adequately cross-examine the State's expert regarding the hair and semen evidence.

Frazier fails to state in his Rule 32 petition how trial counsel's cross-examination of the State's expert was inadequate or indicate what questions trial counsel could [have] asked that would have caused a different result a trial. This claim is summarily dismissed because it fails to comply with the specificity and full factual pleading and disclosure requirements of Rule 32.3 and Rule 32.6(b), ARCrP. Moreover, even if Frazier had pleaded this claim with the requisite specificity, he would still not be entitled to relief. As previously stated, Frazier was not convicted of count III of the indictment (intentional murder during a rape), thus, even if this claim were sufficiently pleaded it would fail to state a claim or establish a material issue of law or fact exists as required by Rule 32.7(d), ARCrP.

. . . .

[Next, Frazier] claims that trial counsel were ineffective for not objecting to the trial court's failure to qualify as experts State's witnesses Larry Huys, David Higgins and Steven Drexler.

Huys, Higgins and Drexler all testified to their extensive qualifications to testify as experts in their respective fields. (R. 345-346, 355-356, 374-375). Frazier fails to plead any facts in his Rule 32 petition that would establish some alleged failure to qualified Huys, Higgins and Drexler as experts caused him to be prejudiced under *Strickland*. This claim is summarily dismissed fails to comply with the specificity and full factual pleading and disclosure requirements of Rule 32.3 and Rule 32.6(b), ARCrP.

. . . .

Frazier claims that Huys and Higgins testified to the bases of their opinions and to the the (sic) procedures used to formulate those opinions. (R. 346-350; 357-362). Frazier fails to plead any facts in his Rule 32 petition that would undermine the reliability of Huys's and Higgins's testimony. Frazier also fails to identify in his Rule 32 petition the name of any expert that would have testified differently. *Strickland*, 466 U.S. at 687. This claim is summarily dismissed because it fails to

state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d), ARCrP.

. . . .

Frazier also claims that trial counsel did not adequately cross-examine the State's experts or rebut their testimony with expert witnesses. Frazier fails to plead any facts in his Rule 32 petition any grounds that were available but not presented by his trial counsel that would have entitled him to expert assistance. This claim is summarily dismissed because it fails to comply with the specificity and full factual pleading and disclosure requirements of Rule 32.3 and Rule 32.6(b), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 24-27).

Frazier's claim regarding the inadmissibility of hair and semen evidence is without merit. The hair and semen evidence were relevant to the crime as Frazier made a statement that he had raped Ms. Brown. Even if this were a case where the evidence should not have been admitted (*e.g.*, because its probative value was outweighed by the prejudice it could have caused Frazier) - and it is not - Frazier simply cannot show prejudice because the jury did not find him guilty of rape.

Frazier's complaints about the forensic witnesses and trial counsel's purported deficiencies in addressing the witnesses and subject matter to which they testified also afford him no relief. Initially, this court finds the claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim. Even if the trial court's procedural default ruling can be

construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot (and has not even attempted to) show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

Frazier offers no factual support to show that the forensic experts were not qualified, and provides no evidence to overcome the state court's factual finding that the experts were indeed qualified to testify at trial.    Nor has he proffered any evidence to support his contention that had counsel had objected their qualifications, the experts would not have been allowed to testify at trial.  Similarly, Frazier does not offer anything to suggest how and why the technique, methodology and reliability of the testing performed by the experts[33] could have been successfully attacked through cross-examination.  In fact, Frazier does not even hint that there is any evidence that these witnesses *were* unqualified and that their procedures *were* faulty or unreliable. Moreover, Frazier does not explain how any other expert could have rebutted the testimony presented by the state's forensic experts such that the state's experts would have been discredited to any degree.  Thus, he cannot establish his counsel was

---

[33]Frazier does not even make any specific allegations about Drexler.

objectively deficient for the purported failures listed in support of the portion of his claim.[34]

Finally, and most importantly, Frazier does not state how, even if counsel had performed in the manner he asserts they should have, the outcome of his trial would have been any different. The physical evidence, in and of itself, did not directly link Frazier to the crime. Thus, even if his trial counsel had responded differently to the presentation of the forensic evidence in this case, Frazier has not shown why that would have made any difference in the trial's outcome.

For these reasons, to the extent the state court procedurally defaulted the individual claims underlying the issues surrounding the expert testimony given in Frazier's case, the claims are procedurally defaulted for federal review purposes. Alternatively, to the extent these claims were adjudicated by the state court on the merits, they are due to be denied here as well.

---

[34]Again, Frazier cannot show he was prejudiced by the hair and semen evidence because it was not shown to belong to him and the jury acquitted him of the charge that involved the allegation of rape. That an expert testified to gunpowder residue in connection with Ms. Brown resulted in no prejudice to Frazier because there was no dispute that Ms. Brown had been shot to death. Other than Frazier's own statement, nothing about this fact linked him to the crime, since no murder weapon was ever found.

(d)     **Failure to Litigate the Admission of References to Frazier's Incarceration in Michigan for an Unrelated Crime**

Frazier next alleges that, "[t]rial counsel failed to litigate in a reasonably competent manner the admission of multiple, irrelevant and highly prejudicial references to Mr. Frazier's incarceration in Michigan for an unrelated crime when he was interrogated by Alabama law enforcement officials." (Doc. 7, p. 22). Part of Frazier's argument about ineffective assistance is based on the fact that his counsel filed a pre-trial motion to exclude prejudicial evidence, was informed before court that he could exercise that motion if and when prejudicial evidence became an issue, but then never objected to inflammatory testimony offered by the State regarding Frazier's Michigan incarceration. (*Id.* at 23).

Frazier declares the following references undermined the fairness and reliability of his trial: (1) witness Kenneth Bresnahan testified he worked in the sex crimes unit of the Detroit Police Department, and that he had spoken on one occasion to Frazier in his cell, several days prior to the day that Frazier asked for him and ultimately made a statement concerning the Brown murder, (*id.* at 22) (citing R. 387; 407);[35] (2) Kenneth Glass, a Sergeant with the Birmingham Police Department,

---

[35]Frazier also states that Detective Bresnahan made the statement that he knew from previous contact with Frazier that Frazier would not talk if distracted. (*Id.*). This is erroneous. Detroit Police Officer Childs made that statement. (R. Vol. 3, p. 412).

testified he went to Michigan after being contacted by the Detroit Police Department and met with Frazier at the Wayne County Jail, (*id.*) (citing R. 423-24); and (3) Frazier's written statement that was introduced as State's Exhibit 3 and read "Sex Crimes" at the top of the pages, (*id.*) (citing C.R. 76-81).

Frazier agues that "[e]ach of these references to . . . [his] incarceration in Detroit and Officer Bresnahan's interest in him for sex crimes unrelated to the Alabama crime, served to invite the jury to convict [him] improperly on the basis of other crimes evidence and bad character.  The repeated references were tantamount to putting a mug shot before the jury with a notation by it that said, 'charged with a sexual offense.'" (*Id.* at 22-23).  In making this argument, Frazier relies upon *Atkins v. Atty Gen. Of Alabama*, 932 F.2d 1430 (11th Cir. 1991), wherein counsel was found to be ineffective for failing to object to fingerprint card with a notation regarding a previous arrest being admitted into evidence.  (*Id.* at 23).

The trial court's summary dismissal of Frazier's claim, as affirmed and adopted by the Alabama Court of Criminal Appeals on collateral review, reads as follows:

> The testimony presented by the State on which Frazier bases his claim, was simply an explanation of why these police officers had contact with him and why he was moved from the Wayne County Jail to Detroit Police Headquarters.  There was no testimony elicited at trial concerning what Frazier's pending charges were in Michigan, and, in fact, his audio-taped statement was redacted to remove any possible prejudicial material.  (R. 366-370)  Frazier fails to proffer in his petition any legal

authority that trial counsel could have presented that would have required this Court to exclude the testimony of the named officer. This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b) ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 28-29).

Initially, this court finds the claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss it. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot (and has not even attempted to) show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

When this claim is carefully examined, ultimately, the only inflammatory information Frazier is really complaining about is that the jury might have become privy to the fact that Frazier was incarcerated in Michigan for a sex crime. However, the examples he gives do not necessarily demonstrate this information. While Detective Kenneth Bresnahan did testify that he worked in the Sex Crimes Unit of the department, he did not testify about any other case he may have been investigating

Frazier for other crime other than the Alabama case.  The jury was never informed why Frazier was incarcerated in Michigan.

Certainly the jury was aware Frazier was incarcerated, and it was also aware that he was accused in this case of a sex crime—murder during a rape.  Indeed, Frazier had given a statement to law enforcement officers regarding his involvement in the robbery, rape, and murder of Ms. Brown.  Considering that rape was a part of those offenses, the sex crimes notation on the top of the investigative report was not inflammatory or prejudicial.  However, the fact that Frazier was incarcerated for another offense when he asked to give a statement regarding the Brown murder does not make the testimony surrounding the circumstances of his statement prejudicial or inflammatory.[36]

In any event, the jury was obviously unaffected by any references by Bresnahan, Childs, or Glass to Frazier's incarceration in Michigan.  Even if Frazier is correct and the jury might have suspected he was being held in Michigan for an unrelated sex crime, the jury acquitted Frazier of rape.  In light of the strength of the State's case against Frazier, it is readily apparent that his trial was not rendered unfair

---

[36]One practical view of this issue is to observe that if counsel repeatedly objected to this testimony, much more attention, curiosity, and speculation would have been drawn to the question of exactly what type of offenses Frazier may have been incarcerated for in Michigan.

or unreliable by the testimony about which he complains.  This claim is procedurally

defaulted, or in the alternative, due to be denied.

> **(e)     Failure to Request a Hearing Regarding Bearden Diagram and Report That Were Not Provided to Counsel and Were Not Produced at Trial**

Frazier alleges counsel was ineffective for failing to request a hearing to

examine why the report and diagram made by Greg Bearden was not provided to

counsel and not produced at trial.  (Doc. 7, pp. 23-24).  Frazier asserts the report and

diagram were important because Bearden was the only evidence technician who

surveyed the crime scene, collected fingerprints and took photos.  (*Id.*).  Frazier

accuses Bearden's testimony of being "wholly inadequate" and claims he should have

been impeached because he could not remember where the victim's purse was when

he surveyed the scene, whether the front door of the apartment was open when he

entered, or who else was in the apartment when he collected evidence.  (*Id.*) (citing

R. 285, 293, 294, respectively).[37]  Frazier also alleges Bearden's testimony directly

contradicted other state witnesses, but he provides no additional detail or explanation

for that hollow assertion.

---

[37]Elsewhere, Frazier intimates that this was an admission by Bearden that the report contained exculpatory evidence.  (*Id.* at 23) (citing R.  297).  The court has examined the record and dismisses this argument as meritless.

Frazier also argues that counsel should have asked for a hearing to obtain the missing report and diagram, and when he found that the items could not be located, he should have moved to strike Bearden's testimony and exclude the physical evidence he recovered.  (*Id.* at 23-24).  Frazier relies upon *Brady v. Maryland*, 373 U.S. 83 (1963) and *California v. Strombetta*, 467 U.S. 479, 488-89 (1984), for his assertion that counsel should have asked the trial court to (1) evaluate the materiality of the lost evidence and the degree of prejudice to him, and (2) instruct the jury they could draw an adverse inference from the spoliation of the evidence.  Frazier contends that a fingerprint was the only evidence linking him to the crime other than his own statement, and therefore the report and diagram may have called the collection of that evidence into question.

The trial court's summary dismissal of this claim on collateral review, as affirmed and adopted by the Alabama Court of Criminal Appeals, reads in pertinent part as follows:

> The Court of Criminal Appeals has held that:
>
> A *Brady* violation occurs where: (1) prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial.
>
> *McMillian v. State*, 616 So.2d 933, 942 (Ala. Crim. App. 1993). Bearden testified that he followed the proper procedures for turning in

94

his report and diagrams to the proper place, but that when he went to retrieve them for trial, he discovered that they had been lost. (R. 299, 304) Frazier's claim that Bearden's report and diagram *might have* called into question the identity of his fingerprint recovered at the murder scene, is entirely speculative. There is no indication from the record, and Frazier proffers no facts in his Rule 32 petition, that there was a break in the chain of custody of the fingerprint recovered at the murder scene by Bearden which was later identified as belonging to Frazier. This Court would not have admitted evidence offered by the State without a proper chain of custody being established. Frazier also fails to plead any facts in his Rule 32 petition indicating that the lost report and diagram contained any information that could have been used to impeach Bearden's testimony. This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 29-30).

The foregoing claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot (and has not even attempted to) show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it. This claim is procedurally defaulted, or in the alternative, due to be denied.

On the face of his own pleading, Frazier's *Brady* and *Strombetta* theory lack substance.  There were no facts that the diagram and report purportedly could have corroborated or revealed.   Moreover, an instruction to the jury regarding the spoliation of the evidence was unnecessary.   The jury was welcome to draw an adverse inference from the loss of the report and diagram without a court instruction.

Similarly, a hearing regarding the report and diagram would not have made any difference as to the outcome of the trial as it is undisputed that the report and diagram were lost.  Frazier does not allege that there was exculpatory (or even beneficial) information in the report and that he could have used it to undermine any testimony that Bearden (or any other witness) gave, nor does he assert that the diagram drawn by Bearden would have depicted the crime scene any better than the photos actually introduced into evidence.  He certainly has not explained how the report and diagram would have possibly changed the fingerprint evidence.  By the same token, Frazier has failed to reveal what difference it would have made in his case if the location of the victim's purse been noted and if the front door of the apartment had been open or shut.  When the testimony of other eyewitnesses to the crime scene who arrived before Bearden is examined, it is clear that the location of the purse and the status of the front door is immaterial and irrelevant.  Finally, Frazier does not specifically state how Bearden's testimony was contradicted by other witnesses and how the report and

diagram would have affected any such (as yet unknown) contradiction.  Frazier has failed to show that his counsel was deficient for failing to request a hearing or that he was prejudiced thereby.  This claim is procedurally defaulted, or in the alternative, due to be denied.

> **(f)      Failure to Request a Jury Instruction Regarding Negative Inferences from Frazier's Redacted Statement**

Frazier alleges that trial counsel was ineffective for failing to request an instruction to the jury to the effect that it should not draw any negative inferences from Frazier's redacted statement.  (Doc. 7, p. 24).  Instead the parties simply agreed, and the trial court instructed the jury that the parties had agreed there "'was some extraneous material . . . deleted from the tape, and there may be some short blanks in there.  And I just wanted to explain why those gaps may be there when you listen to the tape, alright?"  (*Id.*) (quoting R. 429).

In summarily dismissing this claim on collateral review, the trial court held, and the appellate court affirmed and adopted its holding, as follows:

> Frazier fails to plead any facts in his Rule 32 petition giving the slightest indication that any juror had knowledge of the material redacted from his tape-recorded statement or, if they did, made any inference from it. This claim fails to allege any facts that, if true, would establish that trial counsel's performance was deficient or prejudicial as required by *Strickland.*  This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 30-31).

The foregoing claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim. Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot (and has not even attempted to) show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it. This claim is procedurally defaulted, or in the alternative, due to be denied.

### (g) Failure to Request Admonishment of Victim's Family Members After Outburst

Frazier next alleges that trial counsel failed to request that the victim's family members be admonished not to engage in outbursts after the daughter shouted at Frazier *outside* of the jury's presence. (Doc. 7, pp. 23-24 (citing R. 183)).[38] Later, in the jury's presence, the daughter and mother engaged in anguished shouting and

---

[38]This outburst was made by the victim's daughter, Phyllis Brown, outside the presence of the jury and occurred while the defendant was refusing to attend the trial. Ms. Brown cursed and said, "You got to stay in here. You done killed my damn mama and you got to stay here. Ohh, please." (R. Vol. 2, p. 183). Phyllis Brown was not admonished, nor did counsel request that she be admonished. Instead, it appears the trial court ignored the remark and simply continued with the colloquy between the defendant and opposing counsel. (*Id.*).

were asked to leave the courtroom.  (*Id.* at 25) (citing R. 44[3]).[39]  Frazier admits counsel asked for and was denied a mistrial, but argues counsel was nonetheless ineffective because they failed to ask the court to *voir dire* the jurors and admonish them not to be swayed by the outbursts.

The trial court's summary dismissal of this claim on collateral review, as affirmed and adopted by the Alabama Court of Criminal Appeals reads, in pertinent part, as follows:

> The record shows that the first incident cited by Frazier . . . occurred outside the presence of the jury.  Frazier fails to proffer any facts in his petition that would show he was prejudiced by this outburst.  This claim is summarily dismissed because it fails to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d) ARCrP.
>
> In the second instance cited by Frazier. . . , he alleges that trial counsel failed to request that the jury be admonished after the victim's mother and daughter made comments during the playing of Frazier's tape-recorded statement to the jury.

---

[39]The outburst by the victim's daughter, Phyllis Brown and the victim's mother, Ms. Starks occurred when Frazier's taped confession was played to the jury:

> MS. PHYLLIS BROWN:   Why you did that, why did you hurt mama like that?  Why you do her like that?
>
> MS. STARKS: That's my baby.  Oh mercy, I can't take that.  I can't take no more.  (Whereupon, Ms. Starks and Ms. Brown were escorted from the Courtroom.)
>
> THE COURT: Continue the tape.
>
> MR. BROWN: That's all.

(R. Vol. 3, p. 443).

The victim's mother and daughter were escorted out of the courtroom after the incident occurred.  Trial counsel made a motion for a mistrial, claiming Frazier was prejudiced by the comments and that the comments could have had a possible effect on the jury's deliberations.  (R. 445-446)  This Court denied trial counsel's motion for a mistrial, because there was no reasonable possibility that the comments by members of the victim's family prejudiced Frazier.  This Court's ruling was affirmed on direct appeal.  *See Frazier*, 758 So.2d at 597.  *See also, Williams v. State*, 783 So.2d 108, 133 (Ala. Crim. App. 2000)(holding a finding of no plain error on appeal establishes petition was not prejudiced under *Strickland*).  This claim is summarily dismissed, because it fails to state a claim or establish a material issue of fact or law exists as required by Rule 32.7(d), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 31-32).

Other than reiterating his ineffectiveness claim in his Habeas Petition, Frazier has not even attempted to show the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, nor has he argued that the state court based its decision upon an unreasonable determination of the facts in light of the evidence before it.  In fact, Frazier provides no legal support to show that counsel was objectively deficient for the purported failures underlying this claim, and that such failures under the circumstances of this case were constitutionally prejudicial.  This claim is due to be denied.

**(h)    Admittance of Frazier's Guilt During Closing Argument**

Frazier alleges his trial counsel was constitutionally ineffective because counsel admitted Frazier's guilt during closing argument.  (Doc. 7, p. 25).   Trial counsel told the jury:

> [I]f you take the statement for the truth, that he made, was that he was looking for somebody to rob.  Now, I'm not going to stand up here and tell you that was the right thing to do, we're talking about the actions of obviously a stray, nineteen-year-old young man that values were not correct, okay, we can't deny that.  It was his statement, remember.

(*Id.*) (quoting R.  468; 474-476).[40]

Based on the foregoing, Frazier argues the only defense offered to the capital offense charge was that Frazier was young and turned himself into police.  (*Id.*). According to Frazier, such argument pertained only to the level of his culpability, and in no sense could these be considered legal defenses to the crime.   Thus, Frazier asserts counsel simply admitted he was guilty of capital murder and asked for mercy based upon age and acceptance of responsibility.

Respondent argues that Frazier has raised this claim for the first time in his Habeas Petition, and as such, the claim is procedurally defaulted.  (Doc 16, pp. 20-

_____

[40]The actual quote is from page 468 only.  However, in pages 474-76, counsel again emphasized Frazier's age and the fact that he did initiate dialogue concerning the murder with Detroit police officers.

21).  The court disagrees.  A careful examination of Frazier's Rule 32 petition reveals that the substance of the claim was raised as part of Frazier's claim that trial counsel were ineffective for "fail[ing] to present a viable defense at the guilt phase."  (Rule 32 C.R. Vol. 7, Tab. 31, pp. 19-20).  The pertinent portion of the trial court's decision on the subject, as affirmed and adopted by the Alabama Court of Criminal Appeals, reads:

> "Frazier . . . fails to plead in his Rule 32 petition what argument counsel could have made to the jury that would have been so compelling that it might have led to a different outcome.  [This claim is summarily dismissed because it fails] to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b) ARCrP."  (Rule 32 C.R. Vol. 14, Tab. 49, p. 27-28).

The court finds the claim was raised but has been procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot (and has not even attempted to) show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

After careful examination of the entire closing argument made by counsel at the guilt phase of trial, this court finds that Frazier has not referenced that portion of the counsels' argument (and theory) that contended Frazier did not intend to commit murder when he entered Ms. Brown's apartment. Interspersed within his argument that Frazier was young and did come forward regarding the crime, counsel also tried to sway the jury that while the evidence may have suggested Frazier murdered Ms. Brown, the prosecution had not proved beyond a reasonable doubt that Frazier had committed *capital* murder.

The portions of counsel's argument immediately before and after that quoted by Frazier read as follows:

> I think you will recall what I told you in my very short opening that we weren't going to say that she didn't die by gunshot, we weren't going to say she wasn't raped, we weren't going to say her place wasn't burglarized. We haven't contested any of that, we can't deny that. This whole case has been founded and based around the statement of Demetrius Frazier, that Demetrius Frazier voluntarily gave the Detroit Police Department, and that literally is it, I mean, that is your evidence.

> There's one fingerprint that the Police Department was able to compare because Demetrius made a statement; without his statement there would have been no case. So when you talk (sic) that statement back there, that's going to be, that's going to be the important thing for ya'll, is to listen to that.

> And I'm asking you to listen to that, too, because it's very important. It's very important because he is charged with capital murder. And Judge McCormick I going to specifically tell you what capital murder

103

is as opposed to noncapital murder; I'll refer to it as "regular murder." But for this case to be capital murder, you must find that he burglarized with the intent to murder. I'm saying those must go together hand-in-hand.

Did he go in there to murder her? Not as an afterthought. But it's got to be contemporaneous. Did he go in there with the intent to rape and murder her at the same time? It's got to be contemporaneous.

He didn't know she was in there. His own statement, if you take the statement for the truth, that he made, was that he was looking for somebody to rob. Now, I'm not going to stand up here and tell you that was the right thing to do, we're talking about the actions of obviously a stray, nineteen-year-old young man that values were not correct, okay, we can't deny that. It was his statement, remember.

But he was looking for somebody to rob. He burglarized the place looking for money. She was in there. He found his money, he had the sexual intercourse with her. You heard - - you're going to hear the statement again, if you'll listen to it, you heard it from the stand.

And as an afterthought, and I hesitate to use that word "afterthought," but that's important, because he didn't go in there intending to kill her. Something happened, something she said made him mad. He lost it. He lost whatever sense of judgment he had, and he shot her. And that's his own statement. Not that he went in there with the intent to burglarize, to murder at the same time, not that he went in there to rape and murder at the same time, rob and murder at the same time, this occurred as an afterthought to this, and that's why this is not capital murder but this is what I call, like I said, it's regular murder, in Alabama, and you've got to make that decision.

. . . .

And we're saying to you, Ladies and Gentlemen, they did not prove capital murder in this case, and we are asking you . . . to hold the State of Alabama to the burden of proof.

104

(R. Vol. 3, Tab. 12, pp. 466-69, and 470).

Not only was counsel's argument reasonable, it was virtually the only persuasive argument that could have been made to the jury (in light of the overwhelming evidence against Frazier) in order to convince them to convict Frazier of something less than capital murder.  Counsel was neither objectively deficient nor was Frazier prejudiced in any way by the argument.  This claim is procedurally defaulted, or in the alternative, due  to be denied.

**(i)     Failure to Make Certain That the Record Was Preserved Through Transcription of Bench Conferences**

Frazier next complains that several bench conferences at trial were not transcribed and that counsel was ineffective for failing to make certain that the entire record was preserved.  (Doc. 7, p. 25 (citing  (R. 231, 526)[41] and *Dobbs v. Zant*, 506

---

[41]During the trial, defense counsel asked to approach the bench after the prosecution's first witness, the victim's mother, testified.  (R. Vol. 2, p. 231).  Although there is a notation, "bench discussion," there is no transcript as to what was said, and prosecution witness Tyrone Mitchell was immediately called to the stand thereafter.   With respect to a later conference, it is obvious that the court and opposing counsel were having a bench discussion regarding whether the trial should give an "*Allen*" charge to the jury.  (R. Vol. 4, p. 526).  In the course of discussion, the prosecuting attorney said, "I would say that if they're going to comment on that [the "*Allen*" charge], it might be appropriate to have the Defendant."  (*Id.*).  The transcript thereafter reads:

THE COURT:  Well, let's get the Defendant here before we have any further discussion.

THE BAILIFF: Should be momentary.

MR. NEWMANN: Judge, I guess this is off the record.
        (Off the record discussion).

105

U.S. 357, 358-59 (1993) (for the proposition that the Supreme Court emphasized the importance of reviewing capital cases upon a complete record)).

On collateral review, the trial court summarily dismissed the claim, and the appellate court adopted that dismissal, due to Frazier's failure to meet the pleading requirements of Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure. (Rule 32 C.R. Vol. 14, Tab. 49, pp. 32-33).   The state court held, "Frazier fails to proffer in his Rule 32 petition 'any evidence indicating that any issue on appeal was adversely decided because of an incomplete or inaccurate record.'"   (*Id.*) (quoting *Callahan v. State*, 767 So.2d 380, 395 (Ala. Crim. App. 1999)).

The foregoing claim is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.   Further, this court has examined those portions of the record about which Frazier complains were not transcribed, and notes that such references are insufficient to satisfy pleading requirements under the Rules Governing Federal Habeas Proceedings. Alternatively, there were many individuals from whom Frazier could have gleaned the substance of bench discussions that were not transcribed.   As he has not presented

---

THE COURT: Let's go ahead and bring them out.

(*Id.*).   Thereafter, in front of all parties, Frazier and the jury, the court administered an "*Allen*" charge. (*Id.* at 527-28).

any information about what occurred during the bench discussions that could possibly have changed the outcome of his trial, he has again failed to satisfy either prong of an ineffectiveness claim against his trial counsel.  This claim is procedurally defaulted, or in the alternative, due to be denied.

### (j)     Jury Instructions

Next, Frazier alleges his trial counsel were ineffective with regard to four jury instructions.  The court will address each in turn.

### (1)     Failure to Request Jury Instructions on the Lesser Included Offenses of Felony Murder, Manslaughter, Robbery, Burglary and Rape

First, Frazier alleges counsel were ineffective for failing to request jury instructions on the lesser included offenses of felony murder, manslaughter, robbery, burglary, and rape.  (Doc. 7, p. 25 (citing R. 452-53)).  This is the entire claim.  Such a conclusory assertion fails to satisfy pleading requirements under the Rules Governing Federal Habeas Proceedings, and as such, the claim is due to be dismissed on that basis alone.   Nevertheless, because the state court adjudicated the claim on the merits, this court will address it.  In doing so it alternatively finds the claims are without merit.

The trial court's findings regarding Frazier were as follows:

Frazier fails to plead in his Rule 32 petition what particular facts were or could have been produced at trial that would have provided a rational basis for such lesser-included instructions as required by Section 13A-5-41 of the *Code of Alabama*, 1975.  Additionally, by its guilt-phase verdict, the jury found Frazier not guilty of rape when it returned a verdict of intentional murder as a lesser-included offense of count III of the indictment.  The jury was unable to reach a verdict concerning burglary, leading the Court to declare a mistrial on count II of the indictment.  The evidence at trial established beyond any doubt that the victim was shot in the back of the head at close range.  Frazier fails to identify in his Rule 32 petition what evidence was presented at trial that would indicate in any way the victim's death was not intentional.  This claim is summarily dismissed because it fails to state a claim or establish a material issue of law or fact that would entitle him to relief as required by Rule 32.7(d), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 36-37).

Even if these claims were not due to be dismissed for failing to following federal pleading requirements, Frazier has proffered absolutely nothing to show that the state court's decision was contrary to or an unreasonable application of clearly established law, or an unreasonable determination of the facts in light of the evidence before it.  This claim is due to be dismissed, or in the alternative, due to be denied.

### (2)   Failure to Object to a Portion of the Trial Court's Reasonable Doubt Instruction

Second, Frazier alleges his trial counsel were constitutionally ineffective for failing to object to the following portion of the trial court's reasonable doubt instruction:

[T]he only determination you are to make at this time is whether the state has proven beyond a reasonable doubt that the Defendant is guilty of the capital offenses in which he is charged, or some lesser included offense, which I will instruct you on a little later in my instructions. . . . .

[T]he term reasonable doubt that I've been using means just what it says, it means a reasonable doubt, a doubt for which is [good] sensible reason can be given.  It does not mean a mere possible, imaginary or speculative doubt. [. . .] In other words, after considering all the evidence in this case, if you have a doubt about the Defendant's guilt and that doubt has a reason based on the evidence or from any part of the evidence, then you should acquit the Defendant.  However, if after considering all the evidence in this case, *if you do have a doubt for which you can assign a good, sensible reason, then you should convict the Defendant.*

(Doc. 7, pp. 25-26 (citing R. 486, and 499-500, respectively (emphasis added by Frazier).  Frazier declares counsel should have objected to the instruction because it "fail[ed] to give the jury a critical third option supporting the presumption of innocence: not guilty beyond a reasonable doubt."  (*Id.*).  Moreover, Frazier complains that counsel failed to object in order to correct "the court's unclear and confusing reasonable doubt instructions."  (*Id.*).

On collateral review, the trial court dismissed these claims on the merits.  That dismissal was affirmed and adopted by the appellate court as follows:

[With regard to the presumption of innocence complaint,] [t]he record reflects that the Court instructed the jury that if it was not convinced beyond a reasonable doubt that Frazier was guilt as charged in the indictment, or of a lesser-included offense, that it should find him not

109

guilty as to each count of the indictment.  (R. 504-06)[42] This claim is summarily dismissed because it fails to state a claim or establish a material issue of fact or law exists as required by Rule 32.7(d) ARCrP. *See Gibby v. State*, 753 So.2d 1206, 1207-1208 (Ala. Crim. App. 1999)(holding that a post-conviction claim that is refuted by the record is without merit).

. . . .

[With regard to the reasonable doubt instruction,] Frazier alleges that trial counsel were ineffective for not objecting to the Court's jury instruction on reasonable doubt which, according to Frazier, did not make sense.

Frazier's only support for this claim is to quote the Court's reasonable doubt instruction and underline a small portion.  Frazier fails to plead or argue in his Rule 32 petition how the Court's instructions were confusing or cite any legal authority indicating that it was inadequate or inappropriate.  This claim is summarily dismissed because it fails to meet the specificity and full factual pleading and disclosure requirements of Rules 32.3 and 32.6(b) ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 38-39).

Frazier has not provided any evidence to overcome the state court's presumptively correct factual finding that the jury was specifically informed that it had a third option - it could Frazier not guilty of the offenses.  For this reason, and because he has not advanced any argument to convince this court that the state court's

---

[42]Although unmentioned, the trial court also gave an instruction on the presumption of innocence and informed the jury that the defendant could not be found guilty of an offense unless the State proved the offense beyond a reasonable doubt.  (R. Vol. 3, p. 489).

decision was contrary to or an unreasonable application of clearly established federal law, this aspect of Frazier's claim is due to be denied.

As for the 'confusing' reasonable doubt instruction, it is procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claim.  Even if the trial court's procedural default ruling can be construed as a decision on the merits, *i.e.*, even if it found that Frazier failed to state a claim upon which relief could be granted, Frazier cannot (and has not even attempted to) show the decision was contrary to or an unreasonable application of clearly established federal law, nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

It is well known that "[t]he government must prove beyond a reasonable doubt every element of the charged offense." *Victor v. Nebraska*, 511 U.S. 1, 3 (1994) (citing *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed2d 368 (1970)).  However, the constitution neither requires nor prohibits courts from defining reasonable doubt to juries. *Id.* at 5. "Rather, 'taken as a whole, the instruction [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Id.*  (quoting *Holland v. United States,* 348 U.S. 121 (1954)).  In reviewing the constitutionality of such an instruction, "the appropriate standard is whether there exists a 'reasonable likelihood' that the jury read the instruction to lower the required threshold."  *Johnson v. Alabama*, 256 F.3d

111

1156, 1192 (11ᵗʰ Cir. 2001) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)) (other citations omitted).

A review of the instruction shows the trial court left the word "not" out of the last sentence of its instruction. Accordingly, the instruction should have read, "However, if after considering all the evidence in this case, if you do [**not**] have a doubt for which you can assign a good, sensible reason, then you should convict the Defendant."[43] (emboldened word added by this court). There is no reasonable

---

[43]The reasonable doubt instruction read by the trial court to the jury is as follows:

Now, folks, the term "reasonable doubt" that I've been using means just what is says, it means a reasonable doubt, a doubt for which is good, [sic] sensible reason can be given. It does not mean a mere possible, imaginary or speculative doubt.

When we say the burden the on the State to convince you from the evidence beyond a reasonable doubt of the guilt of the Defense, that doesn't mean that the State must convince you to a mathematical certainty, because that could never be done when you depend on the testimony from other human beings.

Reasonable doubt may arise from all of the evidence, the lack of evidence, or from any part of the evidence in this case.

In other words, after considering all the evidence in this case, if you have a doubt about the Defendant's guilt and that doubt has a reason based on the evidence or from any part of the evidence, then you should acquit the Defendant. However, if after considering all the evidence in this case, if you do have a doubt for which you can assign a good, sensible reason, then you should convict the Defendant.
. . . .

One last thing: You've heard it said that if any juror is not satisfied of the Defendant's guilt beyond a reasonable doubt, then you cannot convict, and that's true, because your verdict must be a unanimous verdict, it must be a verdict of all twelve jurors, whether you find him guilty or not guilty.
. . . .

(R. Vol. 3, pp. 499-503).

The trial court then went on to explain each of the verdict forms as to each Count (including the lesser included offenses) and repeatedly reminded the jury that if it found beyond a reasonable

likelihood that this small portion of the reasonable doubt instruction was interpreted by the jury to lower the required standard of proof.  For the foregoing reasons, this claim is procedurally defaulted, or in the alternative, due to be denied.

### (3) Failure to Request an Instruction on Circumstantial Evidence

Frazier next argues that trial counsel was ineffective for failing to request an instruction on circumstantial evidence because the case rested primarily on circumstantial evidence, and such an instruction "must be given for the jury to function properly." (Doc. 7, p. 26).  During his Rule 32 proceedings, Frazier's entire claim on this issue simply read, "Counsel failed to request an instruction on circumstantial evidence."  (Rule 32 C.R. Vol. 7, Tab. 31, p. 24).  The state court summarily dismissed the claim for failure to satisfy the pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b), holding "Frazier fails to identify in the Rule 32 petition what circumstantial evidence was admitted against him that would have entitled him to such an instruction." (Rule 32 C.R. Vol. 14, Tab. 49, p. 35).  The foregoing claim is procedurally defaulted because the state court

---

doubt that Frazier was guilty of an offense, it should mark "guilty" by that offense, but if they were not convinced beyond a reasonable doubt that Frazier had committed an offense, they should mark, "not guilty."  (*Id*. at 503-506).

relied upon adequate and independent state procedural rules to dismiss the claim. This claim also fails to meet federal pleading requirements.[44]

### (4) Failure to Object to the Court's Answer to a Jury Question During Deliberations

Finally, Frazier contends his counsel "failed to object when the court did not properly answer a significant question from the jury during guilt phase deliberations." (Doc. 7, pp. 26-27). Specifically, Frazier asserts that the jury was deadlocked on the burglary/murder charge and one juror asked the trial court to explain the difference between robbery and burglary. (*Id.*). Instead of doing so, the court simply re-read the definition of burglary and did not read the definition for robbery. (*Id.*) (citing R. 522-23). The court then administered an *Allen* charge to the jury, at which time the foreperson declared that the jury was deadlocked and the court dismissed the burglary charge. (*Id.* at 26-27) (citing R. 524-30). Frazier also complains that he was not present during these discussions. (*Id.*).

Frazier argues that had counsel ensured that the court read the robbery instruction to the jury, as it did the burglary instruction, the jury would have also deadlocked on the offense of capital murder during a robbery, particularly since the fingerprint on the kitchen window was only evidence of burglary, not robbery. (*Id.*

---

[44]Of course, even a simple review of the record shows, contrary to Frazier's assertion in his Habeas Petition, that the State's case did not rest primarily on circumstantial evidence.

at 27).  Frazier then concludes that there was no explanation for jury's inability to

reach a verdict on the burglary charge and convict on the robbery charge.  (*Id.*)

On collateral review, the state court made the following findings of fact and

and conclusions of law with regard to the merits of the above claims:

> Prior to the jury's question, Frazier had been found guilty of murder
> during a robbery.  Frazier concedes in his Rule 32 petition that the jury
> was unable to reach a verdict regarding the capital charge of murder
> during burglary.  Frazier cannot be granted relief concerning a jury
> instruction for a crime that he was not convicted of.
>
> . . . .
>
> The record indicates that Frazier was present during the Court's
> explanation to the jury.  (R. 518).  The record, at page 526, which
> Frazier cites in his petition, has nothing to do with a question from the
> jury, but concerns comments made [to] the Court from the prosecutor
> about count II (murder during burglary) of the indictment.
>
> . . . .
>
> The jury had found Frazier guilty of murder during robbery before they
> asked to be re-instructed on murder during burglary.  There is no
> indication from the record that the jury was confused about the elements
> of count I (murder during robbery) of the indictment.  Additionally,
> because Frazier was not found guilty of murder during burglary, he
> cannot establish that trial counsel's performance was deficient or
> cause[d] him to be prejudiced. . . .  Th[ese] claim[s] [are] summarily
> dismissed [for failure] to state a claim or establish a material issue of
> fact or law exists as required by Rule 32.7(d), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 39-40).

Respondent correctly points out that Frazier has "not even attempted to allege, must less show, that this adjudication on the merits was 'contrary to' or an 'unreasonable application of' federal law." (Doc. 18, pp. 58-59).[45]  This claim is due to be denied.

### (k)   Failure to Object to Two Arguments in the Prosecutor's Closing

Frazier also complains that trial counsel failed to object to two improper arguments in the prosecutor's closing.  First, the prosecutor purportedly informed the jury that "a gunshot to the head amounts to intentional murder," an argument Frazier contends is contrary to federal law.  (Doc. 7, pp. 27-28) (citing (R. 462) and *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979)).  Frazier also argues that this error was compounded by the trial court's failure to give a circumstantial evidence instruction.  (*Id.* at 28).

When this claim was raised on collateral review, the state court summarily dismissed the claim on the merits, holding:

> The prosecutor was obviously commenting on the evidence presented at trial, which is entirely proper.  *See Melson v. State*, 755 So.2d 857, 886 (Ala. Crim. App. 1999).  *Sandst[rom] v. Montana*, 442 U.S. 510, 514 (1979), which Frazier cites as authority is distinguishable.

---

[45]Nor has he made any effort to show the trial court's factual findings were unreasonable in light of the evidence before it.  This court has independently examined those portions of the record at issue with regard to the submission of the jury's verdicts and questions, and specifically finds that the trial court's factual findings are correct.  (*See* R. Vol. 4, pp. 510-11).

> *Sandst*[*rom*] dealt with an improper jury instruction from the trial court,
> not a closing argument from a prosecutor."

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 42-43).

Frazier has failed to show the trial court's decision was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the evidence in light of the facts before it.  It is well settled that attorneys may argue in support of reasonable inferences to be drawn from the evidence presented at trial, and Frazier has offered no real legal or factual argument that suggests anything else but that occurred here.  This claim is due to be denied.

Second, Frazier alleges trial counsel failed to object when the prosecutor improperly "incited" the jury to convict Frazier in order to send a message to Frazier "that he can't just [kill someone]" as well as "for Pauline Brown and her family." (*Id.* at 28) (citing  R. 465).  Frazier insists these factors were not relevant to his guilt or innocence, and as such, claims his right to due process and a fair trial and a fair trial were violated.  (*Id.*) (citing *Taylor v. Kentucky*, 436 U.S. 478, 488-489 (1978); *Woodson v. North Carolina*, 428 U.S. 280 (1976).

On collateral review, the state court summarily dismissed the foregoing allegations for failure to state a claim:

> The Court of Criminal Appeals reviewed this comment for plain error
> on direct appeal, and held that "it is clear that the prosecutor was
> encouraging the jury to recommend a death sentence based upon the

evidence and the law." *Frazier*, 758 So.2d at 605. Based on the holding
of the Court of Criminal Appeals, Frazier is unable to establish that trial
counsel's performance caused him to be prejudiced. *See Williams v.
State*, 783 So.2d 108, 133 (Ala. Crim. App. 2000) (holding a finding of
no plain error on appeal establishes petitioner was not prejudiced under
Strickland).

(Rule 32 C.R. Vol. 14, Tab. 49, p. 45).

This court has examined the prosecutorial statement at issue and specifically

finds that the first portion of the statement quoted by Frazier is not improper. The

prosecutor was encouraging the jury to find Frazier guilty because the facts indicated

that he was guilty. Even if the prosecutor's comment about the victim's family was

improper, and even if counsel should have objected to it, Frazier cannot show he was

prejudiced by the statement because the evidence against him was overwhelming.

Neither of the Supreme Court cases[46] cited by Frazier suggest he is entitled to any of

the relief he seeks. This claim is due to be denied.

### (l)    Failure to Object to When the Prosecutor Utilized the Capital Offense for Which He Had Been Convicted as the Sole Statutory Aggravating Factor

Frazier's final argument about trial counsel's ineffectiveness at the guilt phase

of trial is that counsel failed to object when the prosecutor utilized the capital offense

---

[46]*See* footnotes 31 and 32, *supra*.

118

for which he had been convicted as the sole statutory aggravating factor in support of the prosecution's request that he be sentenced to death. (Doc. 7, p. 28).

These allegations do not meet the two pronged standard required to show ineffective assistance of counsel. Additionally, it is well-known that the type of "double-counting" about which Frazier complains is constitutionally acceptable. *See Lowenfeld v. Phelps*, 484 U.S. 231, 238-240 (1988). This claim is due to be denied.

### 4. Ineffective Assistance of Counsel at the Penalty Phase of Trial

Frazier's claims that his counsel were ineffective at the penalty phase of trial can be divided into two categories: (1) failures surrounding opening arguments at the penalty phase; and (2) failure to undertake a reasonable penalty phase investigation and failure to develop and present mitigating evidence. (Doc. 7, ¶¶ 92-156, pp. 28-45). These assertions will be addressed in turn.

### (a) Failures Surrounding Opening Arguments at the Penalty Phase

With regard to this first category, Frazier contends that his counsel should have made an opening statement to the jury at the penalty phase of trial since counsel failed to call any family members and friends to take the stand in Frazier's behalf. (*Id.* at 29). According to Frazier, such an argument should have included a theme "that lingering doubt existed[,]" because the "jury[] clear[ly] reject[ed] of the truth of [his]

119

confession in the guilt phase and the dearth of supporting evidence offered by the prosecution." (*Id.* at 29). Finally, Frazier simply declares that counsel should have objected[47] "when the trial read the penalty phase instructions before argument." (*Id.*) (citing *James v. State*, 723 So.2d 786 (Ala. 1998)).

During the Rule 32 proceedings, Frazier argued that counsel should have made an opening statement to emphasize Frazier's age at the time of the offense and to remind the jury of any lingering doubt that may have existed as to his guilt. There was no claim that counsel should have objected to the timing of penalty phase instructions. (Rule 32 Petition, Vol. 7, Tab. 31, p. 33). As such, the latter claim is procedurally defaulted because it could have been (but was not) raised during state court collateral proceedings. Alternatively, this court finds that even if it were not procedurally defaulted, it is conclusory and due to be dismissed for failure to state a claim upon which relief may be granted.

The trial court dismissed the other aspects of this claim for failing to state a claim upon which relief could be granted, and that dismissal was adopted by the Alabama Court of Criminal Appeals as its own. The trial court's order provides:

---

[47]Actually, counsel for the State and the defense agreed that the instructions would be read prior to the presentation of any penalty phase evidence. (R. Vol. 4, Tab. 16, p. 537).

Frazier claims that trial counsel were ineffective for waiving opening statements in the penalty phase where, according to Frazier, trial counsel could have emphasized his age. . . .

The Court instructed jurors that they could consider Frazier's age as a mitigating circumstance.  (R. 547)  Further, in its closing argument, the prosecutor conceded that Frazier was a young man when he committed the offense.  (R. 565).  This claim is summarily dismissed, because it fails to state a claim or establish that a material issue of fact or law exists as required by Rule 32.7(d).  ARCrP.

. . . .

Frazier also claims . . . that trial counsel were ineffective for not arguing lingering doubt in their penalty phase closing argument.

The Alabama Court of Criminal Appeals has held that lingering doubt is not a mitigating circumstance that may be considered in a jury's penalty-phase deliberations.  *See Melson v. State*, 775 So.2d 857, 898-899 (Ala. Crim. App. 1999).  Obviously, counsel cannot be ineffective for failing to argue in favor of a mitigating circumstance that the jury could not consider.  This claim is summarily dismissed, because it fails to state a claim or establish a material issue of fact as required by Rule 32.7(d), ARCrP.

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 48-49).

With regard to those aspects of the claim dismissed on the merits by the state court, Frazier proffers no Supreme Court precedent (or any other precedent for that matter) that would convince this court that no reasonable counsel would have allowed, without objection, the penalty phase instructions to be read by the trial court prior to the presentation of the penalty case.  Neither has he provided any federal constitutional precedent to support his contention that counsel's failure to argue

121

lingering doubt in his case was objectively deficient performance.  Last but not least,

Frazier has made no effort to argue that even if these jury arguments had been made,

there was a reasonable probability the jury would have recommended life without

parole as opposed to the death penalty.

Frazier has failed to show the state courts' decisions were contrary to or an

unreasonable application of clearly established federal law, nor has he shown the

decisions were based on an unreasonable determination of the facts in light of the

evidence before it.  This claim is due to be denied.

> **(b)**     **Failure to Undertake a Reasonable Penalty Phase Investigation and Failure to Develop and Present Mitigating Evidence**

In his Habeas Petition, Frazier alleges that trial counsel failed to investigate,

develop and present mitigating evidence to the jury at the penalty phase of trial and

failed to retain social and mental health experts to testify on Frazier's behalf.  (Doc.

7, pp. 28-45).  Due to the extensive nature of the allegations of mitigating evidence

in the Petition, and to provide a concise summary of the parameters of Frazier's

claim, the court quotes Frazier's "outline" of the evidence counsel purportedly should

have presented at the penalty phase:

> The jury that sentenced Mr. Frazier to death never learned anything
> about his life, except for the information introduced by the prosecution
> (and extraneous information about crimes committed by Mr. Frazier in

Michigan).[48]   Therefore, the jury did not know about Mr. Frazier's upbringing, his home life, his hometown, his struggles, his illness, or his achievements.   The sentencing decision in Mr. Frazier's case was individualized only in the sense that he was the defendant - without information about his life history, Mr. Frazier's jury was left to punish the crime, not the person.  *Cf. Woodson v. North Carolina*, 428 U.S. 280 (1976) (constitution guarantees individualized sentencing in capital cases ); *Lockett v. Ohio*, 438 U.S. 586 (1978)(relevant mitigating evidence cannot be kept from jury in sentencing phase of capital trial).

The story of Mr. Frazier's home life is bleak and tragic.  He grew up poor and severely lacking in parental guidance.  He never knew his father.  His only male role models were drug dealers, drug users, and thieves.  His mother, sixteen when she gave birth to Mr. Frazier, was not able to provide a safe environment for her family.  Her male companions over the years were violent and abusive.  Other potential female role models were preoccupied with their own burdens or, in one case, died when Mr. Frazier was quite young.

Life was no kinder to Mr. Frazier outside the home.  He grew up in and around condemned homes in condemned urban neighborhoods in Detroit, Michigan.  It was a violent world, and survival required a constant readiness to fight.  An overly sensitive, introverted loner his entire life, Mr. Frazier never received the attention he needed.  Instead, he was abused and ignored, and forced to learn to make his own way, which in turn meant learning to fight.  The jury never heard any of this.

Mr. Frazier also struggled at school, where officials identified him early in his life as having developmental problems and low intelligence.  Head injuries sustained as early as the age of two, and continuing until his teenage years, exacerbated Mr. Frazier's physical, behavioral, and emotional problems.  Eventually, his mother gave her permission for Mr.

---

[48]The parenthetical portion of this allegation is, in essence, one aspect of Frazier's independent juror misconduct claim.  The independent juror misconduct claim is procedurally defaulted for reasons set out below.  But, if Frazier's allegations are true, it cannot be denied that the jury was aware of the information during its deliberations.

Frazier to be placed in a halfway house, an action that Mr. Frazier interpreted as betrayal at the deepest level.

The jury never knew that Mr. Frazier's only friend, his cousin Marcus, was murdered when Mr. Frazier was in his mid-teens.  Once Marcus died, Mr. Frazier's behavioral problems began to expand beyond youthful indiscretion.  Within two years, Mr. Frazier had been arrested on capital murder charges, had he has remained in custody since.

(Doc. 24, pp. 15-16).

Frazier notes that, instead of presenting the foregoing information as mitigating

penalty phase evidence, defense counsel waived opening statements (R. Vol. 4, Tab.

16, pp. 537-38), and the entirety of the defense penalty case consisted of the

following:

Your Honor, we would re-offer, particularly, the testimony of Sergeant Ken Glass concerning the date of birth of Demetrius Frazier, which was October the 29th, 1972, or the testimony that he would have been nineteen at the time of the crime.  That's all we have, and we rest.

(Doc. 7, pp. 28-45 (quoting R. at 555)).[49]

_____

[49]With regard to the State's case, after colloquy with the court, one statutory aggravating factor was allowed to be presented to the jury, and that was capital murder during the course of a robbery, the offense for which the jury had already found Frazier guilty.  (R. Vol. 4, Tab. 16, pp. 531-36).  Moreover, the State also waived its opening statement and did not put on any additional evidence itself at the penalty phase of trial.  (*Id.* at 537-38).  After jury instructions were read, the court asked the State if it intended to put on any evidence, to which prosecutor Brown responded, "Judge, we would re-offer all of the testimony and the documentary evidence, the Exhibits that were allowed into evidence during the guilt phase of trial." (*Id.* at Tab. 17, p. 555).  When defense counsel Street was asked the same question, he made the statement regarding Frazier's age as quoted from Frazier's Petition above.  At that point, defense counsel Street and Newman made closing statements. ( *Id.* at Tab. 20, pp. 556-64).  Thereafter, prosecutor Brown made his closing statement. (*Id.*, pp. 564-74).  The jury was then directed to deliberate.

Frazier argues that, "[a]fter argument, the jury deliberated for a hour and one-half before it returned a recommendation of death by a 10-2 vote.  R. 577 (footnote omitted).  The trial court's written sentencing order states that "[n]o evidence was presented by the State or defendant," and that age was the only mitigating factor that existed."  (*Id.*) (citing SR 12, 15).[50]

When a *substantially* similar, but slightly less factually fleshed out version of the full claim as it appears in the Habeas Petition,[51] was raised by Frazier in the Rule 32 proceedings,[52] the state appellate court affirmed and adopted the trial court's summary dismissal of the claim, which held:

> Frazier's claims that trial counsel was ineffective for failing to investigate, develop, and present evidence of his background, including evidence of his upbringing, family history, institutional history, medical and mental history, history of drug and alcohol abuse, and his character.
> . . .
> Frazier fails to attach to his Rule 32 petition any of the alleged documentation he contends was readily available to establish these claims, nor does he identify the source of this alleged evidence.[53]

---

[50]In a footnote, Frazier asserts, "The record indicates that, on June 6, 1996, the jury deliberated for approximately one hour and twenty-five minutes before the court allowed the jurors to go home.  The transcript for June 7th begins with the announcement of the verdict. R. 574-577."  (*Id.* at n.4).

[51]*See* Habeas Petition (Doc. 7, pp. 28-45).

[52]*See* Rule 32 Petition (Vol. 7, Tab. 31, pp. 33-48).

[53]This portion of the appellate court's order is erroneous and the finding of procedural default will not be honored by this court for federal preclusionary purposes.  Documentary evidence is not necessary at the pleading stage of a Rule 32 petition.  It is only required as part of the burden of

Frazier also fails to proffer in his Rule 32 petition the names of any witnesses that he contends could have been called to testify or proffer to the Court what their testimony would have been. *See Thomas v. State*, 766 So.2d 893 (holding that "[a] claim of failure to call witnesses is deficient of it (sic) does not show what the witnesses would have testified to and how that testimony might have chanted (sic) the outcome."). These claims are summarily dismissed because they fail to meet the specificity and full factual disclosure and pleading requirements of Rules 32.3 and 32.6(b). ARCrP.

(Vol. 14, Tab. 49, pp. 49-50).

Respondent answers that these claims are procedurally defaulted because the state court correctly dismissed the claims for failure to meet the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b). (Doc. 16, p. 26). State court decisions based on Rule 32.3 and Rule 32.6(b) preclude federal review of claims because they are adequate and independent state procedural rules. *Jenkins v. Bullard*, 2006 WL 3635410,*5, 210 Fed. Appx. 895, 900

---

proof. *See* Rule 32.3 of the Alabama Rules of Criminal Procedure. However, as the trial court also found that the claims were inadequately pled under Rules 32.3 and 32.6(b), and that finding was correct, the court will not belabor the point about procedural default.

(11th Cir. 2006).[54]   Therefore, the court agrees with Respondent—this claim is procedurally defaulted.

Alternatively, the court concludes that even if this aspect of Frazier's claim were not procedurally defaulted,[55] and he could establish his counsel was constitutionally deficient for failing to investigate and present mitigating evidence, Frazier has failed to show that he was prejudiced by these failures because there is no reasonable probability that, had the jury heard the mitigating evidence Frazier alleges should have been presented, they would have recommended a sentence of life without parole and the trial judge would have entered a sentence of life without parole.

_____

[54]Unlike Alabama Rule of Criminal Procedure 32.2, a rule setting out the stage of the proceedings during which a particular claim must be raised, the specificity and full disclosure requirements of Rules 32.3 and 32.6(b) require the state court to engage in a much different fact finding process. A state court is entitled to interpret its own rules. Considering the federal deference owed to both state court findings of fact and interpretation of its own rules, federal procedural default principles prevent this court from disturbing the Alabama Court of Criminal Appeals findings in connection with this claim, even though this court may disagree with the appellate court's decision.

[55]In his Habeas Petition, Frazier has detailed the factual allegations initially raised in the Rule 32 petition which was considered by the State court. In reply, Respondent first argues that these factual allegations cannot be considered because they were not initially raised before the state court as required, are unexhausted, and procedurally defaulted. Respondent also argues that if the dismissal order is not honored on the basis of procedural default, then "[t]o the extent these rulings were based on Frazier's failure to substantiate the claims with sufficient evidence, they were 'adjudications on the merits[,]' [and] [p]ursuant to 28 U.S.C. § 2254(d), habeas relief cannot be granted" on this claim. (Doc. 16, p. 27). As this court examines the merits of the claim as an alternative ruling, it will concentrate its attention on the factual allegations made in the Habeas Petition. The court's ultimate conclusion—that Frazier cannot establish the prejudice necessary to satisfy an ineffective assistance of counsel claim—is the same regardless of whether federal review of the claim is examined through the lens of *de novo* review or 28 U.S.C. § 2254(d) review.

In his Petition, Frazier asserts there was a voluminous amount of mitigating evidence that could have been presented at the penalty phase of his trial. (Doc. 7, pp. 28-45). In his supporting brief, Frazier presents "an outline of what counsel could have presented at trial[, but declares his] Amended Federal Habeas Petition . . . contain[s] far more details regarding Mr. Frazier's life history." (Doc. 24, pp. 15-16). This court has studied the additional details in the Petition. On July 24, 2007, Magistrate Judge Armstrong ordered Frazier to expand the record for the express purpose of examining the "'readily available'" details trial counsel allegedly should have investigated and presented. (Doc. 29, pp. 2-3). The expansion order reads, in pertinent part:

> In Claim I.E. of the petition, Frazier contends that his trial counsel were constitutionally ineffective during the penalty phase of his trial for failing] to undertake an [*sic*] reasonable penalty phase investigation by failing to identify, locate, and interview numerous witnesses, including: Mr. Frazier's family members, health care providers, school personnel, persons related to institutions at which Mr. Frazier was placed, caretakers, juvenile and adult probation and parole officers, prior counsel, and court personnel. Additionally, counsel failed to obtain significant, necessary and relevant records and documents relating to Mr. Frazier's life history, or to follow-up on life history facts contained in documents provided to counsel by Alabama and Michigan law enforcement agencies. These records and witnesses were readily available though formal (subpoena, etc.) and informal means (release, phone calls, and letters). An afternoon of such efforts would have yielded a wealth or relevant evidence, and would have provided the foundation for a social history report by a qualified expert.

(Doc. 7, p. 30).

128

For the remaining fifteen (15) pages of Claim I.E., Frazier continues to, for the most part,[56] complain about failures pertinent to the above-quoted summary of the claims and allude to records containing and individuals with knowledge of various aspects of Frazier's life that would have been pertinent to a mitigation case.  *See* (Doc. 7, paragraphs 98-129, 142, 146).

After careful examination of the foregoing, this Court is of the opinion that an Order to Expand the Record is necessary with regard ***only to those paragraphs of Claim I.E. cited above***.  Accordingly, pursuant to Rule 7(b) of the *Rules Governing § 2254 Cases in the United States District Courts*, petitioner is hereby **ORDERED** to expand the record in the above-styled cause within ten (10) days from the date of entry of this order, by filing with the clerk of this court, *any and all* documents, including letters, records, exhibits and affidavits relating to Claim I.E. to the extent it forms the basis of Frazier's factual representations in Claim I.E. of the petition.

(Doc. 29, pp. 2-3).

In response to the magistrate judge's order, Frazier supplemented the habeas record with school, medical, social service, and juvenile records, as well as a 1991 Presentence Investigation Report from the State of Michigan.  (Doc. 33, at Exhibits

---

[56]A footnote was inserted at this point into the magistrate judge's order that reads as follows:

Interspersed at various intervals, Frazier complains that his trial counsel were ineffective at the penalty phase for failing to retain a penalty phase mental health expert, failing to have mitigating evidence presented to the jury by the expert, failing to present an opening argument at the penalty phase of trial, failing to object to the trial court's issuance of instructions to the jury before the penalty phase case began and failing to argue lingering doubt to the jury. See Doc. 7, paragraphs 94 & 130-36.

(Doc. 29, p. 2, n. 1).

2,3,5, 15 and 16).  He also provided the birth certificates of and affidavits from the following family members: his mother Carol Frazier, uncles Albert Frazier and Charles Frazier, sisters Regina Frazier and Sherita Frazier, and brother Eugene Frazier.  (*Id.* at Exhibits 4, 6-11).  Affidavits from Eric Handy, an attorney who represented Frazier in Michigan, and Ann McIntyre, a school psychologist were also attached, along with a childhood photograph of Frazier receiving an art award.  (*Id.* at Exhibits 12-14).  The final Exhibit is a copy of the death certificate of Frazier's cousin, Marcus Rhodes.  (*Id.* at Exhibit 15).

This court has examined the allegations in the Petition and compared them to the information contained in the Supplemental Exhibits.  The Exhibits do indeed provide some support for the allegations concerning Frazier's very tragic upbringing.  However, the supplemental records do not support Frazier's declaration that he is mentally retarded, suffers from brain damage, is seriously mentally ill, or that his aberrant behavior only went beyond youthful indiscretion after the death of his

cousin.   Below, the court sets out excerpts from Frazier's response to the order to expand the record.[57]   Paragraphs 98-129,[58] 142, 146 of the Petition read:

> 98.  In and of itself, Mr. Frazier's tragic family background is substantial mitigating evidence that if presented to Mr. Frazier's jury would have made a difference to the outcome.   Trial counsel did so little investigation, they were not even aware that Mr. Frazier had a family:
>
> > I just want to say a few things for Demetrius.  Young man at the time of this crime, was nineteen years of age, unguided, unbridled, if you wish to use that term, unled, uninfluenced, or influenced badly, whichever the term may be.  *You haven't seen any of his family out here basically because there is none*.   And we can't offer you any background, because he has *no background*.  A young man that has grown up on the streets, literally, that for whatever reason was influenced to do what he did.

R. 55-557, emphasis added.

> 99.  This statement to the jury demonstrates the totality of trial counsels' decision not to investigate Mr. Frazier's social history or any other aspect of his background.  Of course, Mr. Frazier had a real, live family, as trial counsel should have known because official documents <u>in their possession</u> contained the names and locations of Mr. Frazier's mother and siblings.[59]

---

[57]Again, Frazier was directed to provide any and all evidence in support thereof.  As part of its recitation of the excerpts and paragraphs from the Petition, the court will utilize corresponding footnotes and will comment concerning particular Exhibits purportedly offered to support the allegations of the Petition).

[58]Paragraphs 98 through 124 contain the factual allegations of the Petition that are at issue with respect to this part of Frazier's ineffectiveness claim.  The remaining paragraphs are important to understand Frazier's overall summary of the mitigating evidence and the legal parameters of same.

[59]The Exhibits submitted by Frazier show only his mother's name and address.

100. Mr. Frazier not only had a family, he also had a "background" as even a cursory investigation would have revealed.  His life history was available through easily accessible documents relating to Mr. Frazier and his family (*e.g.*, medical records, court files, custodial records, school records, employment records, and vital statistic records); and easily located people ready, willing and able to talk about Mr. Frazier and his life (*e.g.*, Carol Frazier, Regina Frazier, Annette Frazier, Sherita Frazier, Eugene Frazier, Lewgene Beecham, Margie Frazier, Earlene Rhodes, Charles Frazier, John Frazier, Warren McCain, Demetrius Foster, and many others).

101. Mr. Frazier was raised in the most impoverished and literally toxic areas of Detroit, affected by unceasing violence, drug activity, poverty, unemployment and illiteracy.  During his childhood he was surrounded by severe crime, violence, substance abuse, and the deaths of close family and friends.  Mr. Frazier endured the loss of close family members and other caretakers during his childhood and adolescence, as well as the violent deaths of young cousins and friends.[60]

102. Mr. Frazier's mother drank fortified wines and smoked marijuana while pregnant with him.  She also continued to take birth control pills for several months after she became pregnant. Mr. Frazier was delivered during the tenth month of her pregnancy. Mr. Frazier has been a chronic asthmatic throughout his life.[61]

103. Mr. Frazier's mother informed later evaluators that Mr. Frazier's early developmental milestones were achieved with difficulty.  She stated that, when first learning to walk, he walked into walls so often that it was noticed by visitors.  Further, he had never learned to speak

---

[60]*See* Exhibits 6-11.

[61]There is no evidence in the Exhibits that shows Frazier's mother drank or used drugs during her pregnancy.  There is support in the record that she took birth control pills until she was six or seven months pregnant.  The Exhibits do show that his mother believed she was pregnant with Frazier for 10 months, tried to hide the pregnancy with girdles, and did not seek prenatal care.  The Exhibits also show that Frazier had been diagnosed with asthma.

properly, and struggled so badly in trying to speak that he mixed up the words.  Because of his impairments, he became withdrawn.[62]

104.   During his infancy, his mother swung him against a wall to stop him from crying.  When Mr. Frazier was approximately 21 months old, he was treated in a hospital emergency room for blunt force trauma to the forehead after being injured while in the care of relatives.[63]

105.   Mr. Frazier suffered significant multiple head and brain injuries as an infant, child, adolescent and adult, and has been knocked unconscious on multiple occasions.  He has been the victim of stabbings, shootings, and beatings.[64]

106.   Mr. Frazier has never known his father; he was raised by his mother and her thoroughly damaged and dysfunctional family. Mr. Frazier and his mother and siblings lived in a series of crowded, unfit residences with multiple generations of maternal relatives and revolving family friends who were alcohol and drug addicted, mentally ill, physically and sexually abusive towards Mr. Frazier, his siblings and his mother, and involved in criminal activities.   Due to the constant violence, drinking and drug use, and criminal activity at the family

---

[62]This conclusion is drawn from one psychological evaluation when Frazier was six years old.  *See* Exhibit 2A.  There is no other indication throughout his life that he experienced any other difficulties regarding walking; speaking.

[63]There is no evidence offered to support that Ms. Frazier swung her son up against the wall and there is no evidence that Frazier suffered serious brain injury from being dropped by a cousin. The Exhibits that do address these issues are an affidavit from Ms. Frazier wherein she indicated that once, when she and Mr. Frazier (as a baby) were in the bed, he was crying and she pushed him against the wall.  Frazier's 11 year old cousin was also holding him when he was about one year old, and dropped him.  He was taken to the emergency room, and soft tissue swelling was noted on his forehead, but he had no other injuries.  The family was instructed to place ice packs on his forehead every 15 minutes.

[64]The only support in the Exhibits for these allegations is that Frazier was dropped once by his cousin, and that he fell from a ladder at age fourteen while trying to sneak back into his house to skip school.  He was involved in fights, and his sister did testify that she once witnessed his mother beat him.  (The stabbings and shootings occurred while Frazier was in Michigan State Prison.)

home, throughout their childhood and adolescence Mr. Frazier and his siblings were deprived of parental guidance, security, material and financial resources, and humane living quarters.  Additionally, the family home was frequently burglarized.  Mr. Frazier and his siblings slept wherever they could, and were "watched over" by a television and random neighborhood caretakers while their extended family gambled and drank and used drugs.[65]

107.  Mr. Frazier's mother, a teenager when he was born, exposed her children to a series of substance-addicted men, many of whom were involved in criminal activities.  One of Mr. Frazier's long-term common law "stepfathers" died from his drug abuse and complications arising therefrom.  These men physically, sexually and verbally attacked her in the presence of Mr. Frazier and his siblings, to the point that Mr. Frazier and the other children became involved in physical altercations with the men when trying to protect their mother.  As an example, on one occasion Mr. Frazier and his siblings watched as his mother and her boyfriend were repeatedly stabbed by a neighbor; Mr. Frazier helped them get away from the man to prevent him from killing them.[66]

108. Having no job skills or training, the elder men in the family forced Mr. Frazier and his male cousins to engage in criminal activity from a very early age.  Because he was her oldest son, Mr. Frazier's mother expected him to make money and take care of her; therefore, she did not discourage his criminal involvements.[67]

109. At age 14, Mr. Frazier sustained another head injury and a broken wrist reportedly after falling three stories from a ladder.  There was injury to the left parietal lobe of his brain.  While being treated, he

---

[65]The Exhibits are replete with graphic evidence supporting all of these allegations, with the exception of sexual abuse.

[66]The Exhibits support this contention.

[67]None of the Exhibits support this contention.

reported that he had been punched on the left side of his head two weeks prior.[68]

110. Mr. Frazier's early childhood development was abnormal and traumatic. In September 1978, the Detroit Public Schools system referred Mr. Frazier for pre-enrollment psychological evaluation because, at six years old, he could not identify colors, numbers, number names, letters or the alphabet. He did not know the first letter in the alphabet, or the first whole number in sequence. His teacher noted that he required one-to-one instruction in every subject, his attendance was irregular, he was withdrawn and did not participate in activities or academic tasks, and demonstrated a complete lack of progress.[69]

111. Psychological testing administered to Mr. Frazier in February 1979 resulted in IQ scores of 79 on the Stanford-Binet Intelligence Scale and 77 on the Columbia Mental Maturity Scale. He scored at less than the first grade level in both the instructional and potential aspects of the Wide Range Achievement Test diagnostic reading scale. He was functionally a non-reader. The evaluator noted that Mr. Frazier passed all tests at the level of difficulty passed by average three and four year olds. However, at his chronological age level (six years old) he succeeded on only two of six subtests. He completed only one subtest at the year seven level, and failed all tests at the year eight level.[70]

112. Mr. Frazier's evaluator concluded that his performance earned him a mental age which indicated that his intellectual and motor abilities were significantly below his average age mate. After testing was completed, the Detroit public schools classified Mr. Frazier as "borderline." The Detroit Public Schools Office of Psychological

---

[68]Frazier did fall three stories from a ladder while trying to skip school. He also told emergency room doctors that he had been hit in the face weeks earlier. There is no indication from the medical records, however, that he suffered injury to the left parietal lobe of his *brain*. He did receive stitches on the left side of his face and head and did break his wrist as a result of his fall.

[69]These assertions arise during the same time period as Frazier's allegations in paragraph 103, *supra*.

[70]*See* Exhibit 2A.

Services has verified that Mr. Frazier was eligible for special education services while enrolled in the Detroit public school system. Yet, he was placed in a regular class. It does not appear that the school system ever provided Mr. Frazier with special education instruction or services.[71]

113. Even in a case where the defendant's IQ testing scores were above 70, the Eleventh Circuit has found that there is a:

> reasonable possibility that [a] jury [could find] that [the defendant] suffered from mild or borderline mental retardation, or that a non-statutory mitigating circumstance existed. Indeed, it is abundantly clear that an individual 'right on the edge' of mental retardation suffers some of the same limitations of reasoning, understanding, and impulse control as those described by the Supreme Court in *Atkins*. Counsel's failure to investigate this issue at all or to present any of this evidence seriously undermines... confidence in the application of the death sentence.

*Brownlee v. Haley*, 306 F.3d 1043, 1073 (11th Cir. 2002).[72]

---

[71]*See* Exhibit 2A. This arose from one testing period in Frazier's life when he was six years old and just entering school. It is undisputed that Frazier's home life was chaotic and tragic, and thus it is not surprising that he was not particularly socialized nor that he was not informally taught certain rudimentary education principles prior to entering school. Furthermore, if this one 1978 record represents anything, it is evidence of the lowest intellectual and adaptive functioning Frazier ever experienced throughout his entire life. Nevertheless, that record, when considered in conjunction with all other school records, is more properly viewed as a deviation in Frazier's intellectual and adaptive development rather than a proper characterization of it. He was a disciplinary problem for fighting and was frequently absent. Still, in spite of his tragic home life, when he applied himself in school, the record shows he performed on the same level as his peers with regard to academic achievement. For instance, in the fifth grade, Frazier was given a California Achievement Test (CAT). He scored in the fifth grade level for Reading and the sixth grade level for Math. He also won an award for an art project. He achieved his G.E.D. at the W.J. Maxey Boys Training School and it was recommended he attend a community college to achieve a skill.

[72]*See* Exhibit 2A. The court will forego any further discussion of whether Frazier is mentally retarded since he has made a separate Eighth Amendment claim concerning that in Claim V of his Petition.

114.   Due to their poverty and limited social functioning, Mr. Frazier's family had to change residences frequently, moving around the most violent and depressed areas of metropolitan Detroit.  This constant relocation caused Mr. Frazier to have to transfer from school to school.  Mr. Frazier attended at least seven public elementary schools during the period between his enrollment in 1978 and his matriculation to junior high school in 1986.  His attendance was erratic throughout this period, highlighted by 24 absences while in the first grade, 27 ½ absences from the second grade, and 20 absences from the first stage of his third grade years.  It appears that Mr. Frazier was enrolled in the third grade from 1981 through 1983, attending six different schools.[73]

115.   Mr. Frazier was subjected to hostile, pressured school environments, targeted by school and neighborhood bullies who beat him and robbed him of the few precious items he had been able to obtain for himself with pay from a summer job.  Additionally, Mr. Frazier was assigned to the public schools' forced busing program, and was consequently subjected to racial discrimination and harassment, as well as an arduous and dangerous commute to and from school.[74]

116.   In December 1986, when he was 14 years old, Mr. Frazier was referred for school social work service.  His mother noted that he was behaving strangely at home, *e.g.*, waking in the early morning hours, getting dressed and roaming around the house and neighborhood.  The school social worker noted that Mr. Frazier presented as a timid and anxious youngster, and that he was hampered by poor impulse control.[75]

117.   Notably, Mr. Frazier's siblings Annette and Sherita, and his mother Carol, also exhibited academic difficulties and irregular attendance during their enrollment in the Detroit public schools.  Neither

---

[73]The Exhibits show that Frazier suffered poverty and frequent changes of residence and schools.

[74]The Exhibits only show that Frazier was robbed once of items he had earned as a result of a summer job, and that he was bussed to school.

[75]The Exhibits support this contention.

he nor his mother nor Annette graduated from junior high or high school.[76]

118.  Mr. Frazier began taking drugs early in his adolescence.  He was addicted to alcohol and drugs throughout his adolescence, and leading up to the present offenses, including crack cocaine, marijuana and alcohol.[77]

119.  Mr. Frazier left the Detroit public schools while in the first semester of his eighth grade year after reportedly being suspended for "insubordination."[78]

120.  After Mr. Frazier was committed to the W.J. Maxey Boys Training School, at the time Michigan's largest juvenile facility, in March 1988, his care and education became the responsibility of the Michigan Department of Social Services.  Again, there is no indication that Mr. Frazier received special education instruction or services.  Mr. Frazier was committed to the Maxey Boys School until January 1990, when he was transferred to a halfway house in Flint, Michigan.  After reportedly walking away from the halfway home, he was returned to the Maxey School until his release to his mother in February 1991.[79]

121.  Mr. Frazier was institutionalized in county and state facilities in Michigan for much of his adolescence and late teenage years, yet competent professionals never addressed his lifelong mental illness, brain damage, and mental retardation, and his education impairments.  During the period of Mr. Frazier's enrollment in the Detroit Public Schools, and during his commitment in the Michigan juvenile correctional system, these institutions were plagued by overcrowding, violence, and inadequate facilities, academic materials, staffing and

---

[76]None of the Exhibits support this contention.

[77]None of the Exhibits support this contention.  While Frazier reported that he drank gin and smoked marijuana, he never reported addiction.

[78]The Exhibits support this contention.

[79]The Exhibits support this contention.

funding.  Despite this, he evidenced a willingness and ability to function in the structured environment of imprisonment.[80]

122.  In September 1993, while incarcerated in a Michigan state prison, Mr. Frazier was hospitalized after being stabbed in his neck and back.[81]

123.  Mr. Frazier has long experienced and exhibited symptoms of profound mental illness, including mental retardation, psychotic delusions, and schizophrenia.  Mr Frazier believes that he can read minds, that other people can read his mind, and that he can see into the future.  He experiences hallucinations and ideas of reference; for example, he believes that he receives messages from television intended directly for him.  He suffers from lifelong intellectual handicaps including mental retardation, and impaired attention.  Mr. Frazier displays grandiose tendencies, compulsive behavior, and severe, chronic depression.  During his 1992 trial in Michigan, the court ordered that Mr. Frazier undergo psychological testing.  CR-82.  While incarcerated in the Wayne County (Michigan) Jail in 1992, Mr. Frazier was administered psychotropic medication.[82]

124.  Additionally, during the period before his arrest, Mr. Frazier suffered the effects of having been shot and hospitalized, and was a repeated victim of crime.[83]

---

[80]The Exhibits show that Frazier was institutionalized as a teenager in juvenile and adult correctional facilities, as well as a half-way house for a two month period.  However, none of the other allegations in this paragraph are supported by the Exhibits.  In fact, Frazier did relatively well academically in the Maxey Boys Training School and earned his G.E.D.  Counselors even recommended that he attend a community college to develop working skills.

[81]The victim in this case was murdered in 1991.  The court can think of no conceivable reason why this information, which relates to events two years later, would have been pertinent to Frazier's background and character at the time of the crime, nor would it have been seen as mitigating evidence before the jury.  In fact, if presented, it would have notified the jury that Frazier had been involved in other violent altercations while incarcerated in a state penitentiary.

[82]Frazier has produced absolutely no evidence to support the allegations in this paragraph.

[83]There is no evidence in the Exhibits to support that Frazier was ever shot before he committed the capital offense against Ms. Brown.  The Exhibits showing hospital visits include the

125.  The evidence of Mr. Frazier's personal history contains powerful and moving mitigation.  Unfortunately, the jury and the sentencing judge never heard or considered it because trial counsel never attempted to learn about Mr. Frazier's past.

126.  The death sentence in this case is unreliable because the jurors and trial court were presented with a false and misleading picture of Mr. Frazier.  They were denied the opportunity to understand him, to weigh the tragedy of his life and history of mistreatment against the crimes for which he was being sentenced, and to grasp the full measure of mitigation essential to their sentencing decision, in violation of the United States Constitution.  *Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Woodson v. North Carolina*, 428 U.S. 280 (1968).

127.  Trial counsel's failure to investigate or prepare a social history report fell short of the professional standards that prevailed in Alabama at the time of Mr. Frazier's trial.  Standard practice in Alabama in capital cases included the preparation of a social history report.  Further, the American Bar Association (ABA) Guidelines "provide that investigations into mitigating evidence 'should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith*, __ U.S. __, 123 S.Ct. at 2537, quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(c)), p. 93 (1989) (emphasis provided by Supreme Court).

128.  In Mr. Frazier's case, "[d]espite these well-defined norms . . . counsel abandoned their investigation of [Mr. Frazier's] background after having acquired only rudimentary knowledge of his history from a narrow set of sources. *Cf. id.*, 11.8.6, p. 133 (noting that among topics counsel should consider presenting are medical history, educational history, employment and training history, *family and social history*, prior adult and juvenile correctional experience, and religious and

---

two already discussed when he was approximately one year old and fourteen years old.  The court does not doubt that Frazier was a repeated victim of crime, if for no other reason than the description of the environment in which he was raised.

cultural influences) (emphasis added); 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 ('The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. . . . Investigation is essential to fulfillment of these functions.") *Wiggins v. Smith*, __ U.S. __, 123 S.Ct. at 2537.

129. Trial counsel conducted *no* investigation. Had counsel competently performed a reasonably adequate and thorough penalty investigation, they would have discovered, developed, and presented critical, necessary and compelling facts in mitigation to Mr. Frazier's penalty phase jury. These facts include, but are not limited to: evidence of Mr. Frazier's tragic family background; Mr. Frazier's traumatic life history; his genetic predispositions for mental illnesses; his actual medical, psychiatric and neurological impairments, including mental retardation, psychotic delusions, and schizophrenia; debilitating head and brain trauma; profound neglect, abandonment, instability, isolation and imprisonment; childhood exposure to substance abuse, and severe racial and ethnic discrimination, all of which have direct bearing on Mr. Frazier's character, mental functioning and disabilities and numerous other factors in mitigation.

. . . .

142. The foregoing information set forth in this claim was readily available to defense counsel before and during trial. This evidence was relevant to the sentencing factors enumerated in Alabama Criminal Code §§ 13A-5-51, 13A-5-52, and 13A-5-47, on which the jury was instructed and the prosecution argued extensively. See R. 564-573.

. . . .

146. The readily available but un-investigated mitigating evidence also would have reduced the persuasiveness of the arguments of the prosecution in support of their one aggravation factor — the capital conviction for robbery-murder — by indicating that the instant offenses were not the actions of "a stone cold killer." R. 573.

(Doc. 7, pp. 30-43).

Based on the Exhibits presented by Frazier, this court will assume counsel was objectively deficient for failing to investigate and discover same. Despite that assumption, however, the court cannot conclude that Frazier was prejudiced by counsels' deficiencies. The only evidence that actually supports Frazier's assertions that an abundance of mitigating evidence was available for counsel to present are those Exhibits produced by Frazier in response to this court's order to expand the record.

The mitigation evidence that would have assisted Frazier, however, are those Exhibits that reveal Frazier's tragic, violent, and deprived childhood. The story would have been told through the records and family members who could have humanized him in front of the jury. As such, there was no need for a social history expert to be employed. Frazier's records and family members were the best historians, and, as Frazier has repeatedly alleged, all of the information was easily obtainable by counsel.

The court also finds that none of the evidence would support the need to hire an independent mental health expert. That Frazier was antisocial, aggressive, and violent is well-documented. But because Frazier has so exaggerated his mental health issues in his pleadings, it would be speculative at best for this court to determine that

he would have benefitted from an examination, the results of such an exam, and the testimony of any mental health expert. As stated earlier, although Frazier repeatedly alleged that he was afforded a mental health examination while in the custody of Michigan authorities around 1992, he has never produced the results of this exam even when directed to do so. This is true in spite of the fact that habeas counsel was able to secure an affidavit from a Michigan lawyer who stated only that he represented Frazier at a sentencing hearing and would have cooperated with Alabama attorneys had he been contacted. That affidavit never once mentions any factual detail about Frazier that would have been mitigating - including the Michigan mental health exam so often referenced. Thus, Frazier has failed to show that those negative behaviors alone, even if explained by a mental health expert, were necessary and would have produced mitigating evidence beneficial to his defense.

But the most important and overriding reason that Frazier cannot show that he was prejudiced, (even if his counsel was objectively deficient[84] for failing to investigate, discover and present the information in the Exhibits this court has thoroughly studied) is the fact that, in the face of that evidence, the prosecution, in

---

[84]The court has not forgotten that Frazier alleges Juror Alexander engaged in egregious juror misconduct by not only communicating Frazier's prior convictions to the jury during guilt and penalty phase deliberations, but doing so in an effort to sway them to convict and recommend the death penalty. However, Alexander's misconduct cannot be attributed to trial counsel's alleged deficient penalty phase investigation and therefore has no bearing on this issue.

rebuttal, would have introduced Frazier's criminal history.[85]   That criminal history

---

[85]Pursuant to § 13A-5-45 of the Code of Alabama, as amended, a capital defendant's sentencing hearing proceeds in the following manner:

**§ 13A-5-45. Sentence hearing -- Delay; statements and arguments; admissibility of evidence; burden of proof; mitigating and aggravating circumstances.**

(a) Upon conviction of a defendant for a capital offense, the trial court shall conduct a separate sentence hearing to determine whether the defendant shall be sentenced to life imprisonment without parole or to death. The sentence hearing shall be conducted as soon as practicable after the defendant is convicted. Provided, however, if the sentence hearing is to be conducted before the trial judge without a jury or before the trial judge and a jury other than the trial jury, as provided elsewhere in this article, the trial court with the consent of both parties may delay the sentence hearing until it has received the pre-sentence investigation report specified in Section 13A-5-47(b). Otherwise, the sentence hearing shall not be delayed pending receipt of the pre-sentence investigation report.

(b) The state and the defendant shall be allowed to make opening statements and closing arguments at the sentence hearing. The order of those statements and arguments and the order of presentation of the evidence shall be the same as at trial.

(c) At the sentence hearing evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to the aggravating and mitigating circumstances referred to in Sections 13A-5-49, 13A-5-51 and 13A-5-52. Evidence presented at the trial of the case may be considered insofar as it is relevant to the aggravating and mitigating circumstances without the necessity of re-introducing that evidence at the sentence hearing, unless the sentence hearing is conducted before a jury other than the one before which the defendant was tried.

(d) Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama.

(e) At the sentence hearing the state shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances. Provided, however, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing.

included convictions for Murder and Felony Criminal Sexual Conduct I - convictions for which Frazier had already been sentenced to life imprisonment and 60-90 years, respectively in the State of Michigan.[86]   In light of these serious felony convictions, this court finds that, even if the jury had been presented with the material and relevant evidence in the Exhibits submitted by Frazier, there is no reasonable probability he would have convinced the jury to recommend a sentence of life without parole as opposed to the death penalty, nor that the trial judge would have imposed it.  As such, even if the claim were not procedurally defaulted, it is due to be denied.

**Claim V:**          **Frazier Cannot Lawfully be Executed Because He is Mentally Retarded**

Frazier alleges he is mentally retarded and, as such, *Atkins v. Virginia*, 536 U.S. 304 (2002), requires his death sentence be vacated.  (Doc. 7, ¶¶ 157-70 pp. 46-

---

(f) Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole.

(g) The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence.

(Acts 1981, No. 81-178, p. 203, § 7.)

[86](*See* R. Vol. 4, Supp. Rec., p. 14).

145

49; Doc. 24, pp. 46-47).  Respondent denies that Frazier is mentally retarded.  (Doc. 16, p. 29; Doc. 18, pp. 72-74).

### A.  *Atkins* Standards for Determining Mental Retardation

The Supreme Court did not dictate a national standard for determining mental retardation in *Atkins*.  Instead, the Court said that:

> To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded. . . .  Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus.  As was our approach in *Ford v. Wainwright*, 477 U.S. 399 (1986), with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Id.*, at 405.

*Atkins v. Virginia*, 536 U.S. at 317 (footnote omitted).  The omitted footnote observed that, even though the statutory definitions of mental retardation adopted by Congress and the twenty states that prohibited the execution of such persons were not identical, all of them "generally conform[ed] to the clinical definitions" promulgated by the American Association on Mental Retardation and the American Psychiatric Association.  *Id.* at 317 n.22.  The Court sketched the parameters of those definitions as follows:

> The American Association on Mental Retardation (AAMR) defines mental retardation as follows:  "*Mental retardation* refers to substantial limitations in present functioning.  It is characterized by significantly subaverage intellectual functioning, existing concurrently with related

limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992).

The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000). "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. *Id.,* at 42-43.

*Atkins v. Virginia*, 536 U.S. at 309 n.3 (emphasis in original).

When attempting to assess whether an individual's "intellectual functioning" is "significantly subaverage" - a diagnostic criterion central to both definitions of mental retardation quoted above - the *Atkins* Court pointed to the Wechsler Adult Intelligence Scales test (WAIS-III) as being

> *the standard instrument in the United States for assessing intellectual functioning.* AAMR, Mental Retardation, *supra.* The WAIS-III is scored by adding together the number of points earned on different subtests, and using a mathematical formula to convert this raw score into a scaled score. The test measures an intelligence range from 45 to 155. The mean score of the test is 100, which means that a person receiving a score of 100 is considered to have an average level of cognitive

functioning.  A. Kaufman & E. Lichtenberger, Essentials of WAISIII
Assessment 60 (1999).  It is estimated that between 1 and 3 percent of
the population has *an IQ between 70 and 75 or lower, which is typically
considered the cutoff IQ score for the intellectual function prong of the
mental retardation definition*.  2 Kaplan & Sadock's Comprehensive
Textbook of Psychiatry 2952 (B. Sadock & V. Sadock eds. 7th ed.2000).

*Atkins v. Virginia*, 536 U.S. at 309 n.5 (emphasis supplied).

Thus, the Supreme Court clearly pointed the states in the direction of clinical

definitions of mental retardation that have three constituent parts: *i.e.*, (1)

significantly substandard intellectual functioning as measured by such normative

standards as the Wechsler Adult Intelligence Scales test, "the standard instrument in

the United States for assessing intellectual functioning"; (2) accompanied by

significant limitations in adaptive skills in such areas as communication, self-care,

and self-direction; and, (3) both deficiencies must be manifest before the age of

eighteen years.  *See id*. at 318.

## B.   The Alabama Standard for Determining Mental Retardation

Following *Atkins*, the Alabama Supreme Court urged the state legislature "to

expeditiously develop procedures for determining whether a capital defendant is

mentally retarded and thus ineligible for execution."  *Ex parte Perkins*, 851 So. 2d

453, 455 n.1 (Ala. 2002).[87]   In the breach, the *Perkins* Court applied a broad

_____

[87]Although it was encouraged by the Alabama Supreme Court to formulate procedures for
determining whether a capital defendant is mentally retarded, the Alabama Legislature still has failed
to do so.  As such, the burden has fallen upon the state judicial branch to attempt to resolve justly

definition of mental retardation gleaned from legislation enacted by eighteen states that prohibited the execution of mentally retarded individuals.  *See id.* at 456 n.3.  The consensus definition thus arrived-at and applied in *Perkins* contained the same constituent parts emphasized by the Supreme Court in *Atkins*:  that is, "a defendant, to be considered mentally retarded, must have significantly subaverage intellectual functioning (an IQ of 70 or below), and significant or substantial deficits in adaptive behavior.  Additionally, these problems must have manifested themselves during the developmental period (i.e., before the defendant reached age 18)."  *Ex parte Perkins*, 851 So. 2d at 456.[88]

The Alabama Court of Criminal Appeals subsequently recognized that the definition promulgated in *Ex parte Perkins* was consistent with the definition of the term "mentally retarded person" adopted by the Alabama Legislature when enacting

---

numerous death penalty cases in which mental retardation is a core issue.  *But see Ex parte Perkins*, 851 So. 2d at 457 (Johnstone, J., specially concurring) ("I do not necessarily join in that part of footnote 1 urging the Alabama legislature 'to expeditiously develop procedures for determining whether a capital defendant is mentally retarded and thus ineligible for execution.'  I neither encourage nor discourage such legislation.  *This Court is capable of rightly resolving these issues if and when they are presented*, what the statutory scheme may be at the time.") (emphasis supplied).

[88]The only, possibly significant, deviation between this Alabama standard and that discussed by the Supreme Court in *Atkins* lies in the cutoff IQ score for determining subaverage intellectual functioning:  the Alabama Supreme Court placed the bar at 70, rather than the 70 to 75 standard that the *Atkins* Court stated was "*typically considered* the cutoff IQ score for the intellectual function prong of the mental retardation definition."  *Atkins v. Virginia*, 536 U.S. at 309 n.5 (emphasis supplied).  The differences between these two standards does not come into play here.

the State's "Retarded Defendant Act": *i.e.*, "A person with significant subaverage general intellectual functioning resulting in or associated with concurrent impairments in adaptive behavior and manifested during the developmental period, as measured by appropriate standardized testing instruments." *Morrow v. State*, 928 So. 2d 315, 322 (Ala. Crim. App. 2004) (quoting Ala. Code § 15-24-2(3) (1975) (1995 Replacement Vol.));[89] *see also Stallworth v. State*, 868 So. 2d 1128, 1182 (Ala. Crim. App. 2003) (noting that "[t]his definition is consistent with the majority of those states that have legislation prohibiting the execution of a mentally retarded defendant but that do not establish a specific IQ score as a barrier").

The current procedures for addressing the question of whether a particular capital defendant is mentally retarded were promulgated by the Alabama Court of

---

[89]As the *Morrow* Court observed, Alabama's "Retarded Defendant Act," codified at Ala. Code § 15-24-1 *et seq.*,

> consists of seven short sections and basically authorizes the defendant or the State to file an affidavit with the trial court establishing that the defendant "is a person who has been identified as mentally retarded and [who] has received or is presently receiving services through the Department of Mental Health and Mental Retardation, a program certified by the Department of Mental Health and Mental Retardation, or the Department of Education." § 15-24-3, Ala.Code 1975. The affidavit may then be used by the parties and the court "in connection with the decisions relative to bail hearings, determination of place of detention, and ultimate disposition of such case." § 15-24-4, Ala.Code 1975.

*Morrow v. State*, 928 So.2d 315, 317 n.2 (Ala. Crim. App. 2004).

Criminal Appeals in *Morrow v. State,* 928 So.2d 315 (Ala. Crim. App. 2004).  The

*Morrow* court stated as follows:

> We agree with the Alabama Supreme Court that appellate courts should "refrain from making policy decisions with regard to claims of mental retardation by capital defendants."  *Ex parte Perkins*, 851 So.2d at 455 n. 1.  However, this Court cannot hold death-penalty cases indefinitely; as the State has so often noted in its motions filed with this Court requesting timely disposition of death-penalty cases, justice delayed is justice denied.  We must provide the trial court in this case, and trial courts in future cases, with some guidance on how to determine whether a capital defendant is mentally retarded.
>
> Alabama's Retarded Defendant Act provides no insight as to what procedure the Legislature might adopt for implementing the constitutional restrictions on executing a mentally retarded defendant; it became law in 1985, long before *Atkins* was decided.  However, Rule 32, Ala. R. Crim. P., has a procedure for determining whether a defendant is entitled to postconviction relief, and issues relating to *Atkins* have been resolved in previous cases under Rule 32.  Although Rule 32 was adopted by the Alabama Supreme Court as an avenue for postconviction relief, the procedure provided therein is simple and can easily be applied outside the postconviction setting to determine whether a capital defendant is mentally retarded.
>
> Rule 32 places the burden of persuasion on the defendant to establish that he or she is entitled to an evidentiary hearing.  *See* Rule 32.3 and Rule 32.6(b). Once the defendant meets his or her initial burden, an evidentiary hearing must be held, see Rule 32.9, at which time the defendant has the burden of proving by a *preponderance of the evidence* that he or she is entitled to relief, see Rule 32.3.  Following the hearing, the trial court is required to issue specific written findings of fact regarding the defendant's claim for relief.  See Rule 32.9(d).

*Morrow*, 928 So.2d at 322-23.  (footnote and some citations omitted).

This court has carefully examined all of Frazier's allegations of mental retardation, engaged in an independent review of the record on direct appeal and collateral review, and carefully examined all Exhibits (*see* Doc. 33) filed by Frazier in response to this court's Order to Expand the Record.  Based upon this thorough investigation, it is readily apparent that Frazier cannot even make a *prima facie* showing that he is mentally retarded under the criteria outlined above.  The only evidence remotely supporting Frazier's contention that he is mentally retarded are circumstances surrounding a 1978 standardized intelligence test administered to him for which he scored a 79.[90]

There are no factors establishing that Frazier is mentally retarded.  What is glaring is the complete absence of any other documentary evidence showing that Frazier had any significant intellectual deficits or substantial limitations in his adaptive functioning originating prior to the age of 18, (*i.e.*, during the time period in which his criminal activities occurred), or has any such deficits or limitations at the present.  Accordingly, this claim is due to be denied for failure to state a claim upon which relief can be granted.

---

[90]*See* the court's in depth examination of that record in its discussion of Claim IV.4 (in which Frazier alleges that his counsel were ineffective at the penalty phase of trial), *supra*.

**Claim VI:**          **Frazier was Improperly Denied Access To, as well as the Assistance of Competent Psychiatric Assistance**

**Claim VII:**          **The Trial Court Reversibly Erred When it Failed to Determine [*sua sponte*] Frazier's Competency to Stand Trial**

**Claim VIII:**          **Frazier's Convictions and Sentence are Unconstitutional Because he was Mentally Incompetent Throughout the Proceedings Below**

Frazier presents these grounds for relief as three separate claims in his Habeas Petition. (*See* Doc. 7, ¶¶ 171-183, pp. 49-52 (competent psychiatric assistance); Doc. 7, ¶¶ 184-192, pp. 52-56 (competency to stand trial); Doc. 7, ¶¶ 193-201, at pp. 56-60 (mentally incompetent through proceedings)).   On direct appeal, Frazier raised one ground for relief bearing a close resemblance[91] to these three grounds for relief. (Appellate brief, R. Vol. 5, Tab. 24, pp. 5-14).   For comparison's sake with the above claims, the claim in the appellate brief was titled as follows:

---

[91] Any new allegations, purported evidence or new constitutional theories made in support of Claims VI, VII and VIII that were not raised and/or adjudicated on the merits by the Alabama Court of Criminal Appeals on direct appeal are procedurally defaulted.  Therefore, unless otherwise stated, the analysis of Claims VI, VII and VIII is restricted solely to determining whether the state court's decision, as it was raised and interpreted on direct appeal, was contrary to or an unreasonable application of clearly established Supreme Court precedent, or an unreasonable determination of the facts in light of the evidence before it.

The court specifically notes that Frazier argues the state court's decision regarding Claim VII, that the trial court failed to *sua sponte* determine his competency to stand trial, was based on state law grounds alone, and as such, this court must review the claim *de novo* as opposed to the more restrictive 2254(d) requirement.  (Doc. 24, p. 48).  As can be seen in the extended discussion of all three claims herein, the state court's decision clearly included an adherence to and application of federal constitutional law.

153

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
DENYING THE DEFENSE MOTION FOR A PRE TRIAL MENTAL
EXAMINATION OF THE APPELLANT WHERE BOTH HIS
COMPETENCY TO STAND TRIAL AND HIS SANITY AT THE
TIME OF THE OFFENSE WERE SERIOUSLY IN QUESTION.

(C.R. Vol. 5, Tab. 24, pp. 5-14).

The Alabama Court of Criminal Appeals' opinion on direct review reads as
follows (and the quoted text is lengthy):

> The appellant maintains that "[t]he trial court committed reversible error
> by denying the defense's motion for a pretrial mental examination of the
> appellant where both his competency to stand trial, and his sanity at the
> time of the offense were seriously in question." (Appellant's brief, p. 5.)
> Although the appellant claims that both his sanity at the time of the
> offense and his competency to stand trial were in question, the thrust of
> his argument on appeal addresses his competency to stand trial.
>
> The appellant's sanity at the time of the offense and his competency to
> stand trial are two distinct issues, and are governed by different legal
> standards. *See* Committee Comments to Rule 11.1, Ala.R.Crim.P.  The
> defense of mental disease or defect is codified at § 13A-3-1, Code of
> Alabama 1975, which provides:
>
>> "(a) It is an affirmative defense to a prosecution for any
>> crime that, at the time of the commission of the acts
>> constituting the offense, the defendant, as a result of severe
>> mental disease or defect, was unable to appreciate the
>> nature and quality or wrongfulness of his acts. Mental
>> disease or defect does not otherwise constitute a defense.
>>
>> "(b) 'Severe mental disease or defect' does not include an
>> abnormality manifested only by repeated criminal or
>> otherwise antisocial conduct.

"(c) *The defendant has the burden of proving the defense of insanity by clear and convincing evidence.*"  (Emphasis added [by appellate court].)

"The United States Supreme Court has held that 'when the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, he is entitled to psychiatric assistance at trial.' *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985)."[92]

*Fox v. State*, 602 So.2d 484, 486 (Ala.Cr.App.1992).  However,

"A criminal defendant does not have a right to a mental examination merely because he requests one.  *Blevins v. State*, 516 So.2d 914, 915 (Ala.Cr.App.1987); *Marlow v. State*, 538 So.2d 804, 807 (Ala.Cr.App.1988).  Nor does the fact that an accused is indigent automatically entitle him to a free psychiatric evaluation.  *Nelson v. State*, 405 So.2d 392, 394 (Ala.Cr.App.1980), reversed on other grounds, 405 So.2d 401 (Ala.1980 [1981]); *Bailey v. State*, 421 So.2d 1364, 1367 (Ala.Cr.App.1982).  An indigent defendant will be entitled to state-funded psychiatric assistance only after he has made a preliminary showing that his sanity at the time of the offense is questionable.  *Holmes v. State*, 497 So.2d 1149, 1151 (Ala.Cr.App.1986); *Sabiar v. State*, 526 So.2d 661, 663 (Ala.Cr.App.1988)."

*Stewart v. State*, 562 So.2d 1365, 1368 (Ala.Cr.App.1989).

---

[92]In his appellate brief to the Alabama Court of Criminal Appeals, Frazier concentrated his argument almost exclusively upon the competency aspect of the motion at issue and utilized *Drope v. Missouri* as constitutional support. (C.R. Vol. 5, Tab. 24, pp. 5-14).  Not once did Frazier mention or argue that *Ake* provided a constitutional basis for relief with regard to the sanity portion of the motion.  Still, as is evident in the appellate court's opinion, the appellate court considered and examined the sanity aspect from an *Ake* standpoint.

A defendant's "'competency to stand trial refers to a defendant's current mental state and functional capacities as they relate to a pending trial process.'"  Committee comments on Rule 11.1, quoting T. Grisso, *Evaluating Competencies*.

"'Ala.Code 1975, § 15-16-21, provides in pertinent part:

"'"If any person charged with any felony is held in confinement under indictment and the trial court *shall have reasonable ground to doubt his sanity*, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity...." [FN1]

FN 1.  See also § 15-16-22, Code of Alabama 1975, which provides, in relevant part:

"(a) Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, that there is *reasonable ground*[93] to believe that such defendant may presently lack the capacity to proceed or continue to trial, as defined in Section 22-52-30, or whenever said judge receives notice that the defense of said defendant may proceed on the basis of mental disease or defect as a defense to criminal responsibility; it shall be the duty of the

---

[93]Frazier has never contended that the procedure and standard outlined in the above statute are inadequate to afford him protection from being tried while incompetent in violation of his due process right to a fair trial.  Additionally, in *Drope v. Missouri*, the United States Supreme Court found that a Missouri statute allowing appointment of a mental health expert when there was "'reasonable cause to believe the accused has a mental disease or defect excluding fitness to proceed'" was "on its face, constitutionally adequate to protect a defendant's right not to be tried while legally incompetent."  *Drope v. Missouri,* 420 U.S. 162, 172-73 (1975) (statutory citation omitted).  Although Frazier has not made Alabama's 'reasonable ground' standard an issue, the court does note that Alabama's standard is substantially similar to the one approved by the Supreme Court in *Drope.*

presiding judge to forthwith order that such defendant be committed to the Department of Mental Health and Mental Retardation for examination by one or more mental health professionals appointed by the Commissioner of the Department of Mental Health and Mental Retardation. . . ." (Emphasis added [by appellate court]).

"'This section authorizes the trial court to make a preliminary determination (without the aid of a jury) as to whether there are reasonable grounds to doubt the defendant's competency to stand trial. *Ex parte LaFlore*, 445 So.2d 932, 934 (Ala.1983); *Richardson v. State*, 354 So.2d 1193, 1196 (Ala.Cr.App.1978). The trial court is, thus, the "screening agent" for mental examination requests. *Livingston v. State*, 419 So.2d 270, 274 (Ala.Cr.App.1982).'

"*Reese v. State*, 549 So.2d 148, 150 (Ala.Cr.App.1989), overruled on other grounds, *Huntley v. State*, 627 So.2d 1013 (Ala.1992). 'It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity and, thus, whether a further examination is required.' *Waldrop v. State*, 459 So.2d 953, 955 (Ala.Cr.App.1983), aff'd, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). The standard of review is whether the trial court abused its discretion by not requiring an evaluation of Russell's competency to stand trial. *See Baker v. State*, 599 So.2d 60, 62 (Ala.Cr.App.1991).

"A trial of an accused who is incompetent violates due process. *Wagner v. State*, 489 So.2d 623, 628 (Ala.Cr.App.1985); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Rule 11.1, Ala. R.Crim. P., states:

157

"'A defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant.'

"The trial court makes the ultimate determination of a defendant's competency pursuant to the following standard:

"'The test for determining competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).'

"*Anderson v. State*, 510 So.2d 578, 579 (Ala.Cr.App.1987). This determination [of competency to stand trial] should be left to the discretion of the trial court.' *Baker v. City of Huntsville*, 516 So.2d 927, 931 (Ala.Cr.App.1987)."

*Russell v. State*, 715 So.2d 866, 868-69 (Ala.Cr.App.1997). (Emphasis added [by appellate court].)

On December 4, 1995, the appellant was arraigned on three counts of capital murder. He pleaded not guilty, but he did not enter a plea of not guilty by reason of insanity.

On March 15, 1996, the defense filed a motion for a court-ordered mental examination to determine the appellant's competency to stand

158

trial and to determine the appellant's mental condition at the time of the offense.  In support of its motion, the defense argued:

> "1. The Defendant is charged in Jefferson County, Alabama, with capital murder;

> "2. That the undersigned attorneys were appointed as counsel and cocounsel by the Honorable Michael McCormick, after the Defendant was found indigent.

> "3. The Defendant is without funds to afford an independent psychological evaluation.

> "4. The Defendant, over the past several years has had several incidents during which time the Defendant exhibited uncontrollable violent behavior which was not in keeping with the history of the Defendant and which may indicate the onset of some mental disease or disorder;

> "5. The Defendant has become very difficult to communicate with and assisting counsel in preparing for his defense appears limited."

(C.R. 60-61.)

During a pre-trial motion hearing, the following exchange took place:

> "THE COURT: All right. I have a motion for the Court to order a mental examination of the defendant. This case is set for trial on June 3. What is the basis for this motion, Mr. Neumann?

> "MR. NEUMANN [defense counsel]: Your Honor, Mr. Street, who had filed the motions, called me this morning and was extremely ill and had to go to the doctor.  He was scheduled-he was supposed to be handling the motions. And I did not get a chance to discuss that aspect with him

or what has taken place on it.  So I'm not prepared to give the Court an answer at this time.

"THE COURT: Has the defendant to your knowledge had any history of mental illness or disease or defect?

"MR. NEUMANN: To our knowledge the only information we have is what is alleged in the petition itself, Your Honor, with regard to past problems with regard to court proceedings and so forth.  I believe it's alluded to in the petition itself.

"THE COURT: Well, I'm going to deny it at this point. If you get any further information that's relevant to that issue, I need to know as soon as possible.

"MR. NEUMANN: Yes, sir."

(R. 2-4.)

The appellant's pre-trial motion requesting a mental examination was very general, and there was no other evidence before the trial court at the time the motion was entertained that warranted an investigation into the appellant's sanity at the time of the offense or his competency to stand trial.

> "'In the absence of any evidence, the mere allegations by counsel that the defendant is incompetent to stand trial do not establish reasonable grounds to doubt the defendant's sanity and warrant an inquiry into his competency. *Wharton v. State*, 422 So.2d 812 (Ala. Cr.App.1982[)].'
>
> "*Cliff,* [ *v. State*], 518 So.2d [786] at 791 [(Ala.Cr.App.1987) ]."

*Tankersley v. State*, 724 So.2d 557, 565 (Ala.Cr.App.1998).  *See also Woodall v. State*, 730 So.2d 627 (Ala.Cr.App.1997), aff'd. in part, reversed in part on other grounds, 730 So.2d 652 (Ala.1998) (quoting *Nelson v. State*, 511 So.2d 225, 238 (Ala.Cr.App.1986), aff'd, 511 So.2d 248 (Ala.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)) ("'[m]ere allegations by counsel that the accused is incompetent to stand trial or was insane at the time of the commission of the offense do not establish reasonable grounds to doubt a defendant's sanity which would warrant an inquiry into his competency.'") Accordingly, due to the lack of evidence before the trial court, we find no abuse of discretion in the trial court's denial of the appellant's pre-trial motion for a mental examination.

The appellant suggests that because of his behavior at trial, the trial court, *sua sponte*, should have ordered a mental evaluation for the purpose of determining his competency to stand trial.  We disagree.

On the second day of the trial, before the opening arguments of counsel, defense counsel informed the trial court that the appellant was unwilling to wear a leg brace during the trial.  The following exchange then occurred, outside the presence of the jury:

> "THE COURT: For purposes of the record, the Defendant has a history of violent behavior in another jurisdiction in the courtroom and, on at least one occasion, attacked a prosecuting authority in the courtroom.
>
> "Hence, it's the Court's opinion that, given his history of violent behavior in the courtroom, which has been supported by not only a newspaper report, but also officers who are involved in that jurisdiction, and that the Court [has] attempted to order the Defendant to wear a knee brace, which is designed to be concealed under the pants and it merely prohibits the Defendant from moving quickly from one area to another to hinder any violent acts or movements or quick movements on his behalf during the trial of this case.  The Court has attempted to do this in a manner that would not be prejudicial to the Defendant in

161

that this device is concealed and the jurors would not have any indication at all that he was being shackled or restrained in any way.

"It's my understanding, Mr. Street [defense counsel], that he refuses to wear the knee brace and insists on being shackled or handcuffed; is that correct?

"MR. STREET: That's what he said.

"THE COURT: Well, let's go ahead and put shackles on him and bring him up and we'll go on the record with this.

"....

"THE COURT: Good morning, Mr. Frazier.  It's been reported to the Court-of course, the Court was aware of this yesterday-that you have a history of violent and disruptive behavior in the courtroom.  And that's been reported by officers of the court, as well as news media from Michigan, where you were tried before for other offenses.

"And we don't want to sit here all week worrying about whether there's going to be some disruption in this courtroom that would jeopardize your safety, as well as [the] safety of the other people in the courtroom.  And I've attempted to restrain you by using a leg brace, which the jurors couldn't see and would be reasonably comfortable to you, and it's my understanding that you refuse to wear that; is that correct?

"THE DEFENDANT: (No audible response).

"THE COURT: Sir?

"THE DEFENDANT: (No audible response).

"THE COURT: Are you going to answer me, Mr. Frazier?

162

"THE DEFENDANT: (No audible response).

"THE COURT: Do you have any response at all to what I'm saying?

"THE DEFENDANT: (No audible response).

"THE COURT: Well, I'm going to give you a choice, you can either wear the leg brace or you can wear the shackles and the handcuffs.  Obviously sitting there with shackles and handcuffs is not going to impress the jury very much; in fact, it would prejudice your case.  I don't want to do that.  In fact, I have never done that in the 15 years I've been on the bench.  And most people understand that it hurts their case to do that, [and it is] an unreasonable position to take.  Do you have anything to say?

"THE DEFENDANT: (No audible response).

"THE COURT: Mr. Frazier?

"THE DEFENDANT: (No audible response).

"THE COURT: Are you going to sit there like that during the trial?

"THE DEFENDANT: (No audible response).

"THE COURT: I understand you refuse to dress as well; is that correct?

"THE DEFENDANT: (No audible response).

"THE COURT: You're not going to respond at all to the Court?

"THE DEFENDANT: (No audible response).

"THE COURT: Do you want to talk to him a minute?

"THE DEFENDANT: (Conferring with counsel).

"MR. STREET: Your Honor, I've advised Mr. Frazier of the prejudicial effect of the ankle shackle and the handcuffs and how the leg brace would work, would not be seen by the jury, he would be allowed in casual clothes. He chooses not to respond to me either.

"THE COURT: Well, Mr. Frazier, this is an important proceeding, and it's a matter of life and death in your case. It's not a time to be stubborn. You need to think about what you're doing. Do you have any response at all to the Court? And what I'm doing is for your benefit.

"THE DEFENDANT: Okay. Don't make me no difference, go on with y'all, do what you got to do.

"THE COURT: Sir?

"THE DEFENDANT: I say go on and do what you got to do. I don't care, don't make me no difference. I don't even want to be in the courtroom for my hearing.

"THE COURT: Well, you understand that would hurt your case, you're not-

"THE DEFENDANT: I don't care, I don't care. I don't want to be in the courtroom, period.

"THE COURT: Well, let's proceed. Do y'all want to try to talk to him any more?

"MR. NEUMANN: Could we have one more chance to talk to him, just-

"THE DEFENDANT: I don't want to talk to you, I don't want to talk.

"MR. STREET: Just listen to me, just listen to-

"THE DEFENDANT: I don't want to talk, period.

"MR. STREET: Just listen to me.

"THE DEFENDANT: I don't want to talk to you.  I don't want to be in the courtroom, either.

"THE COURT: Sir?

"THE DEFENDANT: I don't want to be in the courtroom either.

"....

"THE DEFENDANT: I want to be placed in the, placed in the hole over there at county jail.

"THE COURT: Sir?

"THE DEFENDANT: I say I want to be placed in the hole at county jail.

"THE COURT: Why would you want to do that?

"THE DEFENDANT: Because I need to be placed in the hole for real.

"THE COURT: Why do you say that?

"THE DEFENDANT: Because I'm telling you, I need to be placed in the hole.

"THE COURT: You don't want to attend this proceeding?

165

"THE DEFENDANT: No.  I don't trust my lawyers.  Plus I got a all mother-fucking white jury.  I don't-I got 10 white jurors and 4 black jurors.  I don't even want to sit in trial with them.  I don't trust that jury.  I don't trust the lawyers, either.  I think them with the other prosecutors.

"THE COURT: Well, do you understand you would be making a big mistake by not attending your own trial?

"THE DEFENDANT: I'm just telling you about, I'm just telling you about-I don't want, I don't want-the lawyers back there, I don't trust them two lawyers back there.  They lied to me.  And I don't trust that jury.  That jury, I got 10 white jurors up there and 4 black jurors up there.  And I don't see I'm going to get a fair trial with them white jurors up there with you.  We in Birmingham right now.  This city majority, this city right here majority black, and I got 10 mother-fucking white jurors, a white jury.

"THE COURT: Well, in my opinion what you're saying is not true, Mr. Frazier.  And I've been trying cases a long time, and jurors, whether white or black, try to do a conscientious job.  I'm sorry you feel that way.  But do you want to attend your trial?

"THE DEFENDANT: I said, 'no.'"

(R. 175-83.)

A discussion then took place between counsel and the court regarding whether the appellant could waive his presence at his trial. The trial court concluded that the appellant could not waive his presence at the trial, and it instructed the appellant to wear the leg brace and to dress appropriately so as not to prejudice his case.  The following then occurred:

"THE DEFENDANT: Take me over there, I'll put it on.

166

"THE COURT: Sir.

"THE DEFENDANT: Take me over there, I'll put it on.

"THE COURT: All right.  Take him back over there.

"MR. STREET: Your Honor, at this time, because of previous statements made by Mr. Frazier concerning his attorneys and the lack of trust, we're going to move for a mistrial and ask to be allowed to be excused from this case. And the second part of that motion is that Mr. Frazier, against our recommendations, wishes to say something to this court.

"THE COURT: Go ahead, Mr. Frazier.

"THE DEFENDANT: Like I said before, I said I don't trust these two attorneys.  Like I said, I think they're two undercover prosecutors, like I said before.  I don't trust, I don't think they really trying to help me, and I don't think they be really trying to defend my case because they never came to see me.

"They only came to see me starting first since Friday or Thursday for a trial.  Been a whole year, I been down here a whole year, they come see me three times for a trial.  And I think they working with the prosecutors, and I think they undercover prosecutors, myself.

"And I don't like that jury they picked.  They picked 10 white jurors and 4 black jurors.  I don't see why y'all couldn't have picked out more black people to fit in that jury.  The city, there's a lot of blacks in this city.  Ain't enough black males in there, and almost all white jurors in that jury, and I don't trust that jury.  I think that a jury, they elaborate [sic] with the government, the jury, got it theirself and I don't like that.  And plus, I said before, like I said

before, put me in a hole when I get-before you go back over there.  I want to be put in the hole, seriously.

"THE COURT: Why do you want to be put in the hole?

"THE DEFENDANT: *I want to be put in the hole before I do something going to have me in there.*

"THE COURT: Before you do something to go down in there?

"THE DEFENDANT: I need to be put in the hole, seriously.

"THE COURT: Why, are you saying that you don't think you could behave-

"THE DEFENDANT: *Because right now I'm mad, I'm real mad right now, I'm real mad.*  There ain't no telling what I might do when I get back-

"THE COURT: Well-

"THE DEFENDANT: I'm giving you a warning, I'm just letting you know.  Like I say, I'm really mad right now.  I might slap the shit out of my lawyer right there.

"THE COURT: You might what?

"THE DEFENDANT: I might slap the shit out of my lawyer right here.  Like I said, they going to put me in the hole when I get back over there.

"THE COURT: Well, we'll take up the first matter you mentioned first.  First place, I've known both counsel for many years.

"THE DEFENDANT: I don't care what you know about-

"THE COURT: And regardless of your feelings, they certainly wouldn't be in collusion with the prosecution in this case.

"THE DEFENDANT: Why would I believe you?

"....

"THE COURT: Well, I don't care whether you believe me or not.

"THE DEFENDANT: Why you telling me?  I don't want to hear it, I-

"THE COURT: I just want you to know that, and I want the record to show that.

"THE DEFENDANT: I don't want to hear it.

"THE COURT: All right.  We're going to proceed with this case.  It will be up to you to behave.

"THE DEFENDANT:: Why you forcing me to go with these two lawyers right here?  They, they-I've been here for almost eight months, they only came to see me three times.  I got a capital murder case.

"THE COURT: Mr. Street, Mr. Neumann, do you want to respond to his allegations?

"MR. NEUMANN: Your Honor, with regard to the case and so forth, and what we know about it, we feel like we have adequately prepared for the case.  We have also discussed all the facts and details of the case.  And you know, it's a quite common occurrence that most people that are in jail feel like that attorneys have to come over to talk to them at least once or twice a week, which is not necessary.

"As I said, Mr. Street and I have spent many hours discussing this case, going over the evidence and so forth. You know, it's just a matter of opinion, Judge, but we feel like that we've done an adequate job in preparing for the defense, considering all the facets of the case, as we know about it, and so forth.

"THE DEFENDANT: One more thing I need to say, Your Honor: Before we got started the jury trial, started picking the jury, you had told, Your Honor had told the jury, you and the lawyers and prosecutors told the jury that I was pleading innocent in this case.  You said the Defendant is pleading innocent to the case.  I ain't innocent to the case, you already know I'm guilty, so I don't like how y'all told the jury that I'm pleading innocent to the case when I'm not pleading innocent to the case, I'm pleading guilty to the case.

"Y'all lied to the jury, put a false illusion, put false ideas in their mind.  Tell them that I'm pleading innocent and they going to hear the tape and stuff, say that why is the man pleading innocent when he made a statement? So y'all told the jury I'm pleading innocent.  I ain't pleading innocent, I'm pleading guilty.

"THE COURT: Well, for the record, you've pled not guilty, and that's the reason we're-

"THE DEFENDANT: I didn't plead no not guilty.

"THE COURT: That's the reason we're having a trial.

"THE DEFENDANT: I'm pleading, I'm pleading guilty.

"THE COURT: Well, have you discussed that with your counsel?

"THE DEFENDANT: They know that.

"MR. STREET: Your Honor, we have discussed with Mr. Brown the possibility, offer of life without parole, and Mr. Brown would not make that offer.  I advised Mr. Frazier of that, myself, because you-

"....

"MR. STREET:-do not plead guilty to the death penalty, because they were seeking the death penalty, that we had been advised they would not offer life without parole.

"THE COURT: Do you understand that, Mr. Frazier?

"THE DEFENDANT: It don't make no sense to me.  If I'm guilty, I'm guilty; if I'm innocent, I'm innocent.  Because it's the law don't make sense, since with that what I'm pleading with, don't mean for me it's right. I said I'm guilty, I'm guilty.  I ain't pleading innocent.

"You going to tell the jury that I'm pleading innocent, then I got to sit in front of the jury, they going to hear the tapes and the statements, say, 'Why is the man pleading innocent when he made a statement and got it on tape that he's guilty?'  So the jury automatically going to be against me automatically any way you go.  I'm still guilty.  And I don't like it, the way y'all tell the jury that I'm innocent.  I ain't innocent.

"THE COURT: Well, you also understand there's an issue of punishment in this case, even if you're found guilty; do you understand that?

"THE DEFENDANT: Yeah, I understand the punishment.

"THE COURT: And the possible punishment is death or life without parole.

171

"THE DEFENDANT: Yeah, I understand that. But what that got to do with innocent and guilty? What if I'm pleading-

"THE COURT: Well, do you understand if you've pled guilty at that point that-

"THE DEFENDANT: Why we going through this, then, if I'm guilty already? I already-we already know that. That's why I don't trust my attorneys right here, because it don't make no sense to me, I'm going through a trial and the trial like this is-I don't know what this trial's for.

"THE COURT: Well, Mr. Street and Mr. Neumann, have you gone over that with Mr. Frazier?

"MR. STREET: We have told Mr. Frazier that we're trying to save his life, Your Honor. I mean, there obviously is a question of punishment in this case; we would not be offered life without parole. As I previously stated Mr. Brown made it perfectly clear to the jury during our questioning yesterday that they were going to seek the death penalty. And that has been made clear to Mr. Frazier, why we're here.

"THE DEFENDANT: Well, what that got to do with me pleading innocent, that's why I'm talking about. I filed-that don't make no sense to me I'm pleading innocent when I'm not innocent.

"THE COURT: Well, have you discussed with him the sentencing process if he decided to plead guilty to the underlying offense?

"MR. STREET: We haven't discussed that with him, not believing that he would plead guilty, knowing that there's a possibility that he could get sentenced to the electric

chair, no, sir.  We only discussed the possibility of a life without parole if he pled guilty, not the possibility of facing the death penalty.  We will be glad to discuss that with him.

"THE COURT:  All right.  You might want to discuss that with him a few minutes."

(R. 185-95.) (Emphasis added [by appellate court].)

After a short recess, counsel indicated that they were ready for trial.  The trial court instructed the jury on some preliminary matters, and opening statements began.

During the prosecution's opening statement, the appellant threw a writing pen at the jury, cursed, and expressed his displeasure at the racial composition of the jury.  The appellant was escorted from the courtroom.  (See Part III of this opinion for a more thorough rendition of what occurred during the appellant's outburst.)[94]
A discussion ensued about whether the trial could proceed in the appellant's absence.  The trial court ultimately decided to move the trial to a different courtroom, where the appellant could observe the trial from a media room.

---

[94]The outburst as set out in Part III of the opinion reads:

"THE DEFENDANT: (Throws pen across room toward the jury.)  Shut the fuck up.  That jury right there is racist, man.  That jury is racist, man, look at them.  That guy looking at me, man.  That jury is racist, man.  That jury is racist, man.  Look at them.  Look at that jury, man, 10 mother-fucking white jurors up there.  Fuck that.

"(Whereupon, the Defendant was escorted from the courtroom.)["]

*Frazier v. State*, 758 So.2d 577, 593 (Ala. Crim. App. 1999).

The appellant argues that "[f]rom the record it is clear that [he] had neither the requisite ability to communicate rationally with his attorneys, nor the ability to rationally or factually understand the proceedings against him." (Appellant's brief, p. 13.) Accordingly, he contends that "the trial court should have ordered a mental examination ... in order to ensure that he received a fair trial." (Appellant's brief, p. 13.)

The appellant's violent outburst and his belligerent, disrespectful, and suspicious behavior toward the court, the jury, and his counsel all appear to be the result of a bad temper and poor judgment-not a lack of competency to stand trial. The record reflects that when the appellant wanted to, he was able to act appropriately. In fact, the appellant was allowed to return to the courtroom the day after his outburst, and the remainder of the trial proceeded without incident. The appellant's professed consternation over being tried after having confessed to the crime does not indicate an incompetency to stand trial, as that term is defined in Rule 11.1, Ala.R.Crim.P. On the contrary, the appellant's opinion that the jury would be confused because his confession was inconsistent with his plea of not guilty is quite astute-it indicates an understanding that his confession could be very damaging to his case. Furthermore, any apparent confusion over why he was being tried after having confessed appears to have been resolved when he consulted with his trial counsel.

"'The trial court is in a far better position than the reviewing court to determine a defendant's competency to stand trial.'" *Matthews v. State*, 671 So.2d 146, 148 (Ala.Cr.App.1995), quoting *Dill v. State*, 600 So.2d 343, 371 (Ala.Cr.App.1991), aff'd, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993). Although the appellant's actions during trial were often not in his best interest, the record does not support the conclusion that he lacked the "*ability* to assist in his ... defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against" him. Rule 11.1, Ala.R.Crim.P. [emphasis added by appellate court]. Accordingly, we cannot say that the trial court abused its discretion by failing to order a mental evaluation of the appellant for purposes of determining whether he was competent to stand trial.

174

*Frazier v. State*, 758 So.2d 577, 584-93 (Ala. Crim. App.1999).

With regard to Claim VI, Frazier does not contend the state court's decision was contrary to or an unreasonable application of clearly established federal law, nor does he show that the state court's decision was based upon an unreasonable interpretation of the facts in light of the evidence before it.  Instead, Frazier simply alleges he was entitled to a psychiatric expert pursuant to *Ake*, and that  the trial court "erred in denying the motion."  (Doc. 24, p. 60).

The  appellate  court  clearly  understood  that  *Ake*  and  *Drope*  provided  the constitutional precedent to support Frazier's legal claim.  Thus, its decision is clearly not contrary to established Supreme Court precedent.   Additionally, there is no evidence that the appellate court unreasonably applied *Ake* or *Drope* to the facts before it.  Finally, Frazier fails in any respect to overcome the factual finding that the pretrial motion for a mental health expert was proffered without any evidence to support it. This claim is due to be denied.

With  regard  to  Claims  VII  and  VIII,  again  the  appellate  court  clearly understood that *Dusky* and *Drope* provide the constitutional standards regarding a defendant's competency.   Frazier therefore cannot show that the appellate court's decision was contrary to clearly established Supreme Court precedent.  Nor has he made any attempt to show the precedent was unreasonably applied in his case.  At

best, Frazier is arguing that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it.[95]  Frazier has failed in this last regard as well for the reasons set out below.

First, Frazier does not dispute the accuracy of the transcribed record cited by the appellate court in support of its decision that Frazier was angry, as opposed to incompetent at trial.  He simply argues that the reverse conclusion should have been drawn from the same portions of the transcript.  This court has carefully examined the record and expressly finds that the undisputed historical facts do not support Frazier's argument.

The appellate court's opinion focuses primarily on the second day of trial, and rightfully so since that is the day Frazier's behavior was at its worst.  A careful reading of the dialogue between Frazier, his counsel, the court, the prosecutor, and the jury shows that Frazier had "the ability to consult with his lawyer with a reasonable degree of rational understanding-and . . . he ha[d] a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402-03(1960); *see also Drope*, 420 U.S. at 171-72 (1975).  Even without affording the substantial deference to which the trial court was entitled in its

---

[95]Frazier attempts at one point to argue the state court's decision was based only upon state procedural rules pertaining to competency.  That assertion is erroneous.  Moreover, even if it were not, this court's conclusions regarding Frazier's competency have no effect on whether the claims are reviewed *de novo* or pursuant to § 2254(d).

assessment and decision of these issues (based on his first hand knowledge and observation of Frazier's demeanor), the cold record supports the same conclusion. That conclusion most decidedly is that Frazier was angry that his trial was going to proceed with a jury whose racial composition he did not approve, he was disgruntled with his counsel for the number of times they had made efforts to visit him at jail before trial, suspicious of the motivations of all players involved in the trial and outraged that the trial was going to proceed regardless of the fact that he purportedly desired to plead guilty to the offense.[96]

That Frazier was perturbed about the way his case had been prepared and was being presented at trial does not mean he could not communicate with his lawyers with a rational degree of understanding as to the proceedings and facts. The type,

---

[96]After discussion with counsel concerning the fact that the trial was to proceed even though he had confessed, Frazier voiced no other concerns with this particular conflict. As the appellate court pointed out, it was quite astute for Frazier to express confusion over this matter and fear that the jury would be biased against him in light of what would appear to be a rather obvious conflict between his plea of not guilty and the confession when it was admitted into evidence. Certainly, the court does not and will not presume what the substance of the conversation between counsel and Frazier was after Frazier so adamantly expressed his displeasure. However, it does observe that the overwhelming theme in defense counsels' opening and closing arguments at the guilt phase of the trial, was that, although Frazier may have committed rape, robbery , burglary, and murder, he did not do so with the express intent of committing rape, robbery and burglary contemporaneously with intentional murder. (R. Vol. 2, pp. 221-23; R. Vol. 3, Tab. 12, pp. 466-77). Counsel tried to strongly persuade the jury to listen to Frazier's taped statement, and glean from that statement that, for whatever reason, Frazier lost his faculties when Ms. Brown made him mad, and then shot her. Thus, counsel was desperately trying to prevent a conviction for capital murder, the only offense with which Frazier was charged that would have subjected him to the death penalty.

manner, and substance of Frazier's expressions of anger and frustration are simply not commensurate with constitutional incompetence.

Moreover, another matter, unmentioned by the appellate court, but which is certainly pertinent to the trial court's perception of whether Frazier's behavior on the second day of trial was arising from incompetency, was the trial court's ability to observe Frazier at every other court appearance preceding the trial, Frazier's behavior on the first day of trial, and Frazier's behavior after the disruptions described by the appellate court on the second day of trial.  These will be described in short order.

First, the record shows no indication whatsoever that Frazier displayed any incompetence during any of the pretrial proceedings in front of the trial judge. Additionally, on the first day of trial, the court conducted a suppression hearing regarding a statement Frazier made concerning the Birmingham crime while he was being questioned in Detroit, Michigan, that was related to other criminal offenses he was suspected of committing in that area.  (R. Vol. 1, Tab. 4, pp. 6-73).  Law enforcement officials from Detroit and Alabama testified regarding whether *Miranda* warnings were delivered and whether Frazier knowingly, intelligently, and voluntarily waived his right to remain silent and right to counsel prior to giving the statement. (*Id.* at 7-43).

Frazier then took the stand and testified in his own behalf.  (*Id.* at 43-73).  He was able to clearly and succinctly answer questions on direct and cross-examination. Frazier testified that he gave a statement concerning the Birmingham, Alabama, offense because a member of the Detroit Police Department scared him into doing so by coming into the interrogation room, placing his arm around Frazier's neck and on Frazier's shoulder, and informing Frazier that he had "other ways of making me talk." (*Id.* at 45, 50).  Frazier also stated he was told that if he confessed, the officer would look out for him with the judge and "make a mental recommendation that I be sent to a . . . . mental ward. . . [so maybe] I get out [in] fifteen . . . twenty years." (*Id.* at 50-51).

Frazier's testimony at the suppression hearing continued for some 30 pages of the transcript of the suppression hearing.  Again, a review of the record shows that Frazier is an individual who clearly understood the nature of the suppression hearing and the defense theory advanced during the hearing.[97]  Frazier was able to succinctly testify as to what he alleged had occurred immediately preceding the statement he gave concerning Ms. Brown's murder.  He was also able to adhere to his version of events and the chronology thereof under cross-examination by the prosecutor.  After

---

[97]For instance, when asked by the prosecutor if he understood his *Miranda* rights, Frazier answered, "It's easy.  Anybody can understand that." (*Id.* at 57).

listening to the evidence, the trial court did not credit Frazier's testimony that he had been coerced or induced into making the statement and denied the motion to suppress.

Only when the trial itself actually was set to begin in earnest on the second day did Frazier become obstructive, disrespectful, disruptive, angry, threatening, and violent. When reasoning with counsel and the trial judge proved unsuccessful, Frazier was removed from the courtroom and allowed to watch the trial continue with one of his defense counsel by way of a media room. Soon thereafter, Frazier returned to the courtroom, informed the judge that he would behave himself for the remainder of the proceedings, and in fact, did behave without incident.

For the foregoing reasons, Frazier has failed to show that state court's determinations with regard to Claims VI, VII and VIII were contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence before it. There was no constitutional reason to investigate any purported incompetency and Frazier was not incompetent during the trial proceedings. These claims are due to be denied.

**Claim IX:**        **Alabama's Capital Sentencing Scheme**

Frazier next claims that Alabama's capital sentencing scheme runs afoul of *Ring* and *Apprendi* and constitutes a violation of Frazier's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 7, ¶¶

202-17, pp. 60-66). Frazier did not raise this claim at trial or on direct appeal. It was presented for the first time in his Rule 32 petition, and found to be procedurally defaulted by the trial court pursuant to Rules 32.2(a)(3) & (5).[98] The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision during collateral proceedings.[99]

Respondent argues the state court's decision was primarily based upon independent and adequate state procedural rules, thus precluding federal review of this claim. In any event Frazier cannot take advantage of *Ring v. Arizona*, 536 U.S. 584 (2002), because it is not retroactive to cases on collateral review. (Doc. 16, pp. 33-34 and Doc. 18, pp. 88-89, respectively). Frazier admits that *Ring* is not retroactive to his case. (Doc. 18, pp. 80-81).[100]

New procedural rules are only applicable to cases on direct review at the time the Supreme Court's decision is made. *Schiro v. Summerlin*, 542 U.S. 348, 351-52 (2004) ("*Ring* announced a new procedural rule that does not apply retroactively to

---

[98]*See* Rule 32, C.R. Vol. 7, Tab. 31, pp. 70-71, and the trial court's order regarding same. (*Id.* at Vol. 14, Tab 49, pp. 70-71).

[99]*Frazier v. State*, mem. op., CR-01-1317. (*See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2).

[100]Frazier incorrectly contends his argument is not undermined by *Ring's* non-retroactivity because, the same day *Schiro v. Sullivan* was decided, the Supreme Court also published *Blakely v. Washington*, 542 U.S. 296 (2004), a case that, to Frazier "indicat[es] that the Supreme Court is not retreating from its strong tend establishing [sic] the jury as the ultimate sentencing body." *Id.* This does not change the fact that Frazier's *Ring/Apprendi* claim is procedurally defaulted.

cases already final on direct review."))  Because Frazier's case became final on direct review in 1999, he cannot benefit from the Supreme Court's 2002 decision in *Ring*. This claim is procedurally defaulted and due to be dismissed.

**Claim X:**        **Unconstitutionality of Statutory Limits on Attorney's Fees and Other Resources in this Capital Case**

Frazier also argues that the statutory limits on attorney's fees and other resources in this capital case are unconstitutional.  (Doc. 7, ¶¶ 218-27, pp. 66-69). Frazier did not raise this claim at trial or on direct appeal.  It was presented for the first time in his Rule 32 petition, and found to be procedurally defaulted by the trial court pursuant to Rules 32.2(a)(3) & (5).[101]  The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[102]  Respondent argues the state court's decision was primarily based upon independent and adequate state procedural rules, thus precluding federal review of this claim.  (Doc. 16, p. 34; Doc. 18, p. 90).

Frazier tacitly concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal.  (Doc. 24, pp. 83-84).  However, he declares the default should be excused because his appellate counsel was constitutionally ineffective for failing to raise the

---

[101]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 89-93, and the trial court's order regarding same, *id*. at Vol. 14, Tab 49, p. 70.

[102]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

claim on direct appeal and he was prejudiced thereby. (*Id.* at 84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Frazier's cause and prejudice arguments are without merit. In *Eagle v. Linahan*, 279 F.3d 926 (11th Cir. 2001), the Eleventh Circuit explained how ineffective assistance of counsel can suffice as cause and prejudice to excuse a procedural default:

> The Supreme Court . . . made clear in *Murray v. Carrier*, 477 U.S. 478, 486-87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986), that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." This is true whether the procedural default resulted from counsel's failure to make a claim at trial or failure to raise a claim on appeal. *Id.* at 492, 106 S.Ct. at 2647 (holding that "counsel's failure to raise a particular claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts"). Moreover, attorney error is cause for procedural default only if the error rises to the level of constitutionally deficient assistance of counsel under the Sixth Amendment. *Id.* at 488, 106 S.Ct. at 2645.

*Id.* at 937.

A claim of ineffective assistance must be both exhausted *and* not defaulted in state court before it can be asserted as cause. *Hill v. Jones*, 81 F.3d 1015, 1030-31 (11th Cir. 1996). If the ineffective assistance claim is defaulted, then a petitioner must demonstrate independent cause and prejudice excusing the default of the ineffectiveness claim before that claim can be asserted as cause in relation to a

second, substantive claim. (*Id.*). In this case, Frazier cannot meet this burden. Frazier defaulted his claims of ineffective assistance of trial and appellate counsel in the Alabama courts, and he has not shown cause or prejudice excusing this default. Frazier therefore cannot rely on his attorneys' alleged ineffectiveness to excuse the procedural default.

Thus, the mere fact that appellate counsel did not raise this claim on direct appeal is insufficient to satisfy the cause and prejudice standard. Additionally, while Frazier lists ineffective assistance of appellate counsel as a ground for relief in Claim XXIV of his Petition, he never once mentions appellate counsel's failure to raise the statutory limitations on attorney fees on appeal as a basis for relief. (*See* Doc. 7, pp. 113-21). Thus, he has completely failed to raise an independent ineffective assistance of counsel claim with regard to attorney's fees. Frazier cannot establish cause and prejudice to excuse the procedural default. As such, the claim is procedurally defaulted and is due to be dismissed.

<u>**Claim XI:**</u>         **Trial Court's Failure to Address Counsels' Irreconcilable Conflict**

In this claim, Frazier contends that the trial court denied him his right to effective assistance of counsel by failing to address counsels' irreconcilable conflict. (Doc. 7, ¶¶ 228-33, pp. 70-72). Frazier did not raise this claim either at trial or on direct appeal. It was presented for the first time in his Rule 32 petition, and found to

be procedurally defaulted by the trial court pursuant to Rules 32.2(a)(3) & (5).[103]  The

Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[104]

Again, Frazier tacitly concedes this claim is procedurally defaulted pursuant

to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct

appeal, but nonetheless, declares the ineffective assistance of his appellate counsel

excuses the default.  (Doc. 24, pp. 83-84) (citing *Coleman v. Thompson*, 501 U.S.

722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

As stated earlier, the mere fact that appellate counsel did not raise a claim on

direct appeal is insufficient to satisfy the cause and prejudice standard.  Frazier has

set out the allegations underlying this claim as support for an independent claim of

ineffective assistance of counsel on direct appeal.  (*See* Claim XXIV (Doc. 7, pp. 115-

16)).  The allegations, appearing among a laundry list of appellate counsel errors, read

as follows:

> Appellate counsel failed to raise substantive claims challenging the
> court's: . . . failure to excuse counsel from representing Mr. Frazier upon
> their request, despite their contention that they could not adequately
> assist Mr. Frazier in his defense; denial of Mr. Frazier's right to counsel
> of his choice and failure to provide substitute counsel, R. 186-195; . . .

---

[103]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 76-79, and the trial court's order regarding same.
*Id.*, at Vol. 14, Tab 49, pp. 66-67.

[104]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

(*Id.*).   These allegations are far too conclusory and unsupported to state a constitutional claim of ineffective assistance of appellate counsel.[105]   Again, as the Eleventh Circuit has stated:

> [i]n order to constitute cause sufficient to overcome procedural default, a counsel's performance must be constitutionally ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   *See Devier v. Zant*, 3 F.3d 1445, 1455 (11th Cir.1993) (petitioner could not use ineffective assistance of counsel as cause for procedural default because he failed to satisfy two-prong *Strickland* test); *Smelcher v. Attorney General of Alabama*, 947 F.2d 1472, 1475 (11th Cir.1991) ("While it is true that ineffective assistance of counsel may be the cause for a default, ... it must first satisfy [the] two-part [*Strickland*] test").   In *Strickland*, the Supreme Court set forth the test for determining whether counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."   *Id.* 466 U.S. at 686, 104 S.Ct. at 2064.

*Jackson v. Herring*, 42 F.3d 1350, 1358 (11th Cir. 1995).

Because Frazier clearly cannot state a claim for ineffective assistance of appellate counsel, he also cannot establish cause to excuse the procedural default of the substantive claim at issue.   For these reasons, and based upon an examination of the record and applicable law, this court is precluded from further review of the claim, and it is due to be dismissed as procedurally defaulted.

---

[105]Moreover, the state court correctly found the ineffectiveness claim was insufficiently pled and thus procedurally defaulted.  As can be seen by this court's examination of the ineffectiveness claim (*see* Claim XXIV discussion further herein), Frazier cannot show he is entitled to any relief.

**Claim XII:**          **Trial Court's Failure to Protect and Accept Frazier's Guilty Plea**

Likewise, Frazier did not raise his next claim - that the trial court erred by failing to protect and accept his guilty plea, thereby precluding the jury from considering and giving effect to significant mitigating evidence (Doc. 7, ¶¶ 234-47, pp. 72-76) - either at trial or on direct appeal. It was presented for the first time in his Rule 32 petition, and found to be procedurally barred by the trial court pursuant to Rules 32.2(a)(3) & (5).[106] The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[107] Respondent argues that the state court made a default determination based upon adequate and independent state procedural rules. (Doc. 16, p. 35 and Doc. 18, p. 90).

Frazier concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal. (Doc. 24, pp. 83-84). Nonetheless, he argues the ineffectiveness of his appellate counsel excuses any default. (*Id.* at 84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

---

[106]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 58-63, and the trial court's order regarding same. *Id.* at Vol. 14, Tab 49, pp. 65-66.

[107]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

187

As stated earlier, the mere fact that appellate counsel did not raise a claim on direct appeal is insufficient to satisfy the cause and prejudice standard. Moreover, Frazier failed to set out the allegations underlying the above claim as an independent ground for relief on the basis that appellate counsel was ineffective. (*See* Claim XXIV (Doc. 7, pp. 113-21). Thus, Frazier cannot establish cause to excuse the procedural default. For these reasons, and based upon a review of the record and applicable law, this court is precluded from further review of the claim, and it is due to be dismissed as procedurally defaulted.

**CLAIM XIII:      Prosecution's Misconduct**

Frazier's next claim is that he was denied a fair trial and due process of law as a result of the prosecution's misconduct throughout the trial proceedings. (Doc. 7, ¶¶ 248-74, pp. 76-83). The court has carefully examined each and every allegation of prosecutorial misconduct made by Frazier in this case. (Doc. 7, pp. 76-83). This ground can be divided into two categories of claims. In the first category, Frazier alleges he was denied a fair trial and due process of law because the prosecutor engaged in improper argument at the guilt and penalty phases of the trial. (*Id*. at 78-81). However, this category is virtually identical[108] to Claim XIV in the Habeas

---

[108]The court uses the phrase "virtually identical" because Frazier attempts to interject a few new instances of alleged improper prosecutorial argument at the guilt and penalty phases of trial that he asserts deprived him of due process and a fair trial and that were not adjudicated on the merits by the Alabama Court of Criminal Appeals. These new allegations were never raised in support of the

Petition and Frazier's claims are discussed as part of the court's examination of that claim, *infra*.

In the second category related to this ground, Frazier alleges he was denied a fair trial and due process of law because the prosecutor continually attempted to improperly inject "inflammatory, prejudicial and unproven information regarding Mr. Frazier during the proceedings." (*Id.* at 81-83). This part of Frazier's claim was not raised on direct appeal. Accordingly, it is procedurally defaulted and is due to be dismissed.[109]

To the extent Frazier may be attempting to argue that trial counsel's failure to timely object to unidentified instances of alleged prosecutorial misconduct in Claim XIII is cause and prejudice to overcome any procedural default, his argument is without merit. (Doc. 7, p. 83).

---

claim in state court and most do not appear in Claim XIV. Therefore, they are presented for the first time in the Habeas Petition, and as such, are procedurally defaulted.

[109]The court finds that both categories of claims were actually raised as 'Claim R' in Frazier's Rule 32 petition. (Rule 32 C.R. Vol. 7, pp. 99-108). On collateral review, the Alabama Court of Criminal Appeals affirmed and adopted the trial court's holding that the claims were "procedurally barred because they either could have been but were not raised at trial, were raised or addressed on appeal, or could have been but were not raised on appeal. Rules 32.2(a)(2), 32.2(a)(4), and 32.2(a)(5), ARCrP; *see also Frazier* [*v. State*], 758 So.2d at 601-607." (Rule 32 C.R., Vol. 14, p. 71). The adequate and independent state procedural rules relied upon by the state court to dismiss this claim effectively preclude, on the grounds of procedural default, federal review of all prosecutorial misconduct claims that were not adjudicated on the merits by the Alabama Court of Criminal Appeals.

> The Supreme Court . . . made clear in *Murray v. Carrier*, 477 U.S. 478, 486-87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986), that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." This is true whether the procedural default resulted from counsel's failure to make a claim at trial or failure to raise a claim on appeal. *Id.* at 492, 106 S.Ct. at 2647 (holding that "counsel's failure to raise a particular claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts"). Moreover, attorney error is cause for procedural default only if the error rises to the level of constitutionally deficient assistance of counsel under the Sixth Amendment. *Id.* at 488, 106 S.Ct. at 2645.

*Eagle v. Linahan*, 279 F.3d 926, 937 (11th Cir. 2001).

An examination of the court's opinion related to Claim IV of Frazier's Petition (in which he alleges his trial counsel was constitutionally ineffective) shows two things. First, Frazier did not raise the allegations underlying the procedurally defaulted prosecutorial misconduct claims as part of any allegations underlying trial counsel's ineffectiveness. Second, even if he could be viewed as raising it previously, his ineffectiveness claim is itself procedurally defaulted, or alternatively without merit. For the foregoing reasons, Frazier has failed to show the cause and prejudice necessary to overcome any of his procedurally defaulted prosecutorial misconduct claims.

**CLAIM XIV:**   **Trial Court's Error in Allowing Prosecutor to Make Comments in Opening Statements and Closing Arguments**

Next, Frazier contends that the trial court committed reversible error by allowing the prosecution to make numerous improper and prejudicial comments in opening and closing arguments.  (Doc. 7,  ¶¶  275-85, pp. 83-88).  Frazier's allegations of improper and prejudicial prosecutorial comments during opening and closing arguments fall into five categories: (1) comments intended to evoke sympathy (*e.g.*, victim impact testimony) for the victim and her family; (2) argument imploring the jury to "'do the right thing'" by sentencing Frazier to death; (3) commenting on Frazier's "character and prior bad acts;" (4) drawing the jury's attention at the penalty phase of trial to Frazier's outburst at the guilt phase of trial; and (5) commenting on Frazier's failure to testify or present evidence in the penalty phase of trial.  (Doc. 7, pp. 83-88).  According to Frazier, these remarks, individually and collectively, denied him his "right to a fair trial and a reliable penalty determination under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution."  (*Id.* at 87-88).

Prior to discussing each of the five categories of prosecutorial misconduct, this court finds that Frazier has repeatedly attempted to add new claims of purported improper prosecutorial argument throughout this claim. Additionally, a good portion

191

of the pleadings underlying this claim clearly fail to satisfy the Federal Rules of Procedure Governing Habeas Corpus Proceedings, and are due to be dismissed on that basis alone.[110]

Along the same lines, it is not the court's responsibility to engage in a full scale fishing expedition of the record to determine if any of Frazier's citations to pages in the Petition that purport to reference improper prosecutorial comment are procedurally defaulted because they were not first raised before the state court. Suffice it to say that this court will examine this claim only as it was raised by Frazier on direct appeal and as adjudicated on the merits by the Alabama Court of Criminal Appeals, the last state court to issue a reasoned opinion on the merits.[111]

---

[110]In his reply brief, Frazier tacitly (but never explicitly) concedes that some of his prosecutorial misconduct claims (whether pleaded inartfully or even worse, completely unidentified except by a page number to the record), are procedurally defaulted. Instead, he proceeds to list Claim XIV by claim number and title only, and then allege his "appellate counsel's failure to raise the issues materially prejudiced [him]. [Therefore,] his failure to comply with Rules 32.2(a)(3) and 32.2(a)(5) is therefore excused with regard to this claim." (Doc. 24, pp. 83-84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). As explained already in this Memorandum Opinion (*see* discussions of Claims IX, X and XI *supra*), Frazier's assertion of ineffective assistance of appellate counsel as cause and prejudice to excuse the procedural default of any of the prosecutorial misconduct claims described above is without merit because his pleadings are woefully inadequate. On collateral review, the state court arrived at the same conclusion pursuant to Rule 32.3 and 32.6(b).

[111]Again, the failure to raise any other claims of prosecutorial misconduct during state court proceedings renders those claims procedurally defaulted in this court.

## A.    Improper Invocation of Sympathy for the Victim and Family at the Guilt Phase of Trial

Frazier alleges the "prosecution impermissibly injected sympathy for the victim and her family into [his] trial . . .through arguments made at the guilt and penalty phase of trial. (Doc. 7, ¶¶ 276-77, pp. 83-84). As support for this claim, Frazier provides an extremely abridged version of those comments he believes to be improper victim impact testimony and simply cites to numerous pages from the trial transcript. (*Id*).

The Alabama Court of Criminal Appeals made more than adequate findings of fact and conclusions of law about this issue in its opinion. Unlike Frazier's Petition, that opinion clearly delineates any purported offensive comments made at the guilt phase versus the penalty phase of the trial as well as the substance of those comments. *See Frazier v. State*, 758 So.2d 577, 600-604 (Ala.Crim.App. 1999). The opinion reads:

> The appellant contends that the "trial court committed reversible error by allowing the prosecution to make numerous prejudicial comments in opening and closing statements which inflamed the passion and prejudice of the jury and led to the appellant's conviction and sentence of death." (Appellant's brief, p. 35.) He alleges that "the net sum of these comments was so prejudicial as to render [his] trial unfair, and the jury's verdict of guilty and recommended sentence of death unreliable." (Appellant's brief, p. 35.)

The appellant did not object to most of the allegedly improper comments; thus, this Court will review the comments pursuant to the plain error doctrine.  Rule 45A, Ala.R.App.P.

> """This court has concluded that the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful." *Johnson v. Wainwright*, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).'

" *Kuenzel v. State*, 577 So.2d 474, 489 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).

"....

"As the United States Supreme Court stated in *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986):

> "'[I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).'

"(Citation omitted.)

"We must evaluate the comment in the context of the entire proceedings.

> """Whatever is in evidence is considered subject to legitimate comment by counsel." *Bankhead v. State*, 585 So.2d 97 (Ala.Cr.App.1989), aff'd, 585 So.2d 112 (Ala.1991).   See also *Ward v. State*, 440 So.2d 1227 (Ala.Cr.App.1983).   "The prosecutor has the right to present his impressions from the evidence.  He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way." . . . *Donahoo v. State*, 505 So.2d 1067, 1072 (Ala.Cr.App.1986).'

"*Williams* [*v. State*], 601 So.2d [1062,] at 1072-73 [(Ala.Cr.App.1991)].   '"[C]ounsel in the trial of any lawsuit has the unbridled right (to be sure, duty) to argue the reasonable inferences from the evidence most favorable to his client."'  *Kuenzel*, 577 So.2d at 492, quoting *Ex parte Ainsworth*, 501 So.2d 1269, 1270 (Ala.1986). (Footnote omitted.) . . .   '"Counsel for the state and defendant are allowed a rather wide latitude in drawing their deductions from the evidence."'  *Kuenzel*, 577 So.2d at 493, quoting *Arant v. State*, 232 Ala. 275, 279, 167 So. 540, 543 (1936)...."

*Burton v. State*, 651 So.2d 641, 651-52 (Ala.Cr.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995).  See also *Mason v. State*, [Ms. CR-94-2143, March 6, 1998] — So.2d — (Ala.Cr.App.1998).

The appellant alleges that, in its opening and closing arguments at the guilt phase of the trial, and again during its closing argument at the sentencing phase of the trial, the prosecution improperly injected the issue of sympathy for the victim and her family.

In support of his assertion, he cites the following comments from the prosecution's opening argument at the guilt phase of the trial:

> "Pauline Brown died two days before Thanksgiving in 1991. She wasn't somebody that our grandchildren are going to read about in the history books, she didn't accumulate a million dollars in her lifetime. Who was this faceless person whose name appears in that indictment?
>
> "....
> "She came from a good family, that kind of family, whose mother had worked for over 30 years in the Birmingham Housing Authority. And, Curtis, her brother, who you met yesterday[112], has worked for ACIPCO for 25 years. Good, decent, honest people.
>
> "In November of 1991 the family was planning their Thanksgiving. The girls were divvying up the food things that they were all going to take to Augusta's house for Thanksgiving dinner."
>
> "....
>
> "Pauline was 40 years old, in the prime of her life, had raised her two daughters. Six weeks ago Phyllis had her baby; she would have been a grandmother for the first time. And that grandbaby will never see grandmother because Demetrius Frazier got tired of listening to Pauline beg."

(R. 198-99; 220.)

After viewing the allegedly objectionable comments in the context of the entire opening statement, we find no plain error. "The purpose of opening statements is for each party to give the jury an overview of what

---

[112]Curtis was introduced to the venire during *voir dire* to determine if the jury knew any member of the victim's family. (R. Vol.2, p. 108-09).

the evidence will show." *McKinney v. State*, 654 So.2d 95, 98 (Ala.Cr.App.1995). Contrary to the appellant's assertion, we do not believe that the prosecutor's comments were intended to inject irrelevant or prejudicial information into the trial; rather, the prosecutor was setting forth what he expected the evidence to establish.

The prosecution did establish at trial, without objection, that Pauline Brown was the daughter of Augusta Starks, that she had worked as a cook for Bama Foods for 20 years, and that she had two daughters. In addition, the prosecution established, without objection, that Augusta Starks last spoke with Pauline around 8:30 p.m. on the Tuesday before Thanksgiving, and that they discussed their Thanksgiving plans. The state elicited testimony, again without objection, that Augusta Starks learned of her daughter's murder the next day, while she was working at the Birmingham Housing Authority, where she had been employed for 30 years. The state also established that the appellant murdered Pauline Brown because she continued to beg for her life during the assault. (R. 398.) All of the above facts were properly admitted into evidence; they were relevant to the prosecution's reconstruction of the crime. See *McNair v. State*, 653 So.2d 320, 333-36 (Ala.Cr.App.1992), aff'd, 653 So.2d 353 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995).

Accordingly, the following portions of the prosecutor's closing argument at the guilt phase of the trial do not constitute plain error:

> "Well, Ladies and Gentlemen, you heard some evidence, testimony of witnesses, and you learned who Pauline Brown was, a 40-year-old woman living in Birmingham, old enough to have two children of her own, two beautiful daughters, Pam and Phyllis. And even though she was old enough to have her own children, she was somebody's baby. She was Augusta Starks's baby, and always will be."

> "...."

> "All a few days before she was going to celebrate Thanksgiving with her family."

197

(R. 456-57, 459.)  The prosecutor's comments were based upon the evidence presented at trial or were legitimate inferences derived from that evidence.  *Burton*, *supra*.

Even if we were to conclude that the above-mentioned comments from the prosecution's opening and closing argument at the guilt phase were erroneous, reversal would not be warranted.

> "'Recently, this Court examined the issue of victim impact evidence in *Ex parte Rieber*, 663 So.2d 999 (Ala.1995).  In *Rieber*, we acknowledged that testimony regarding a murder victim's children was not relevant to the issue of the accused's guilt or innocence and was, thus, inadmissible during the guilt phase of trial; we noted, however, that "a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant."  663 So.2d at 1005.  After thoroughly reviewing the record of this present case, we conclude that the limited testimony regarding Ms. Brown's infant son and the impact of Ms. Brown's death on her family, and the prosecution's limited references to such evidence, did not operate to deny Land a fair trial or to prejudice his substantial rights.  Thus, we find no reversible error as to this issue.'

"*Ex parte Land*, 678 So.2d 224, 236 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996).

"*In Ex parte Rieber*, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995), the Alabama Supreme Court held as follows:

> "'We agree with Rieber that Mr. Craig's testimony concerning Ms. Craig's children, their ages, and the status of their custody after the murder was not relevant with respect to the question of his guilt or innocence and,

therefore, that it was inadmissible in the guilt phase of the trial. The only issue before the jury during the guilt phase of the trial was whether Rieber had robbed and killed Ms. Craig.

However, in *Ex parte Crymes*, 630 So.2d 125 (Ala.1993), a plurality of this Court held in a capital murder case in which the defendant was sentenced to life-imprisonment without parole that a judgment of conviction can be upheld if the record conclusively shows that the admission of the victim impact evidence during the guilt phase of the trial did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant. See, also, *Giles v. State*, 632 So.2d 568 (Ala.Crim.App.1992), aff'd, 632 So.2d 577 (Ala.1993), cert. denied, [512] U.S. [1213], 114 S.Ct. 2694[, 129 L.Ed.2d 825] (1994); *Ex parte Parker*, 610 So.2d 1181 (Ala.1992), cert. denied, [509] U.S. [929], 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993); *Lawhorn v. State*, [581 So.2d 1159 (Ala.Cr.App.1990) ]; *Hooks v. State*, 534 So.2d 329 (Ala.Crim.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989); and *Ex parte Whisenhant*, [555 So.2d 235 (Ala.1989) ], applying a harmless error analysis in death penalty cases. Our review of the record indicates that Rieber's attorneys did not object to Mr. Craig's brief references to Ms. Craig's children or ask him any questions on cross-examination. The trial court clearly instructed the jury that it had to determine, based on all of the evidence, whether Rieber had robbed and killed Ms. Craig. The jury was instructed that it could not find Rieber guilty unless the prosecutor had established his guilt beyond a reasonable doubt. The jury was also instructed not to let sympathy or prejudice affect its verdict. We caution prosecutors that the introduction of victim impact evidence during the guilt phase of a capital murder trial can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the

guilt or innocence of the defendant based on the admissible evidence and the applicable law. However, after examining the record in its entirety, we conclude that the aforementioned portions of Mr. Craig's testimony, although they should not have been permitted, did not operate to deny Rieber a fair trial. *It is presumed that jurors do not leave their common sense at the courthouse door. It would elevate form over substance for us to hold, based on the record before us, that Rieber did not receive a fair trial simply because the jurors were told what they probably had already suspected-that Ms. Craig was not a "human island," but a unique individual whose murder had inevitably had a profound impact on her children, spouse, parents, friends, or dependents* (paraphrasing a portion of Justice Souter's opinion concurring in the judgment in *Payne v. Tennessee*, 501 U.S. 808, 838, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).'

"663 So.2d at 1005-06 (emphasis supplied [in *Smith* ] )."

*Smith v. State*, 37 Ala.App. 116, 64 So.2d 620, 621 (Ala.Cr.App.1998). See also *Hyde v. State*, [Ms. CR-95-2036, January 30, 1998] --- So.2d ---- (Ala.Cr.App.1998).

In this case the evidence against the appellant was compelling-the appellant confessed and his confession was corroborated by the state's evidence. The jurors were instructed several times that the arguments of counsel were not to be considered as evidence. In addition, they were instructed that they should base their verdict strictly on the evidence, and that they could not find the appellant guilty unless the prosecution proved its case beyond a reasonable doubt. "The jury is presumed to follow the instructions given by the trial court." *Hutcherson v. State*, 727 So.2d 846, 854 (Ala.Cr.App.1997), aff'd, 727 So.2d 861 (Ala.1998) (citing *Taylor v. State*, 666 So.2d 36 (Ala.Cr.App.), opinion extended on remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996)). Accordingly, even if the prosecutor's comments were

construed as an improper attempt to invoke sympathy for the victim and her family, no plain error occurred.  Rule 45A, Ala.R.App.P.

The appellant also contends that the prosecution improperly injected the issue of sympathy for the victim and her family during the following portion of its closing argument at the penalty phase of the trial:

> "I didn't have the privilege of knowing Pauline.  I wish I had, because I know a lot about her from my friends, and I'm proud to say that Augusta and Curtis and Fred and Pam and Phyllis are my friends.  And I wish I'd known Pauline better, because I'm the last person on the face of this earth who ever gets to say anything on her behalf, to beseech you on her behalf for justice.  And I feel inadequate.  And knowing her would have helped me, I'm sure.  And I hope she can help me, where she is.

> "....

> "One day, one Thanksgiving or one summer at the Starks family reunion, when Phyllis's baby is a few years older and the eating's done and it's time to sit down in the chair and have grandma read a book, Phyllis's little girl is going to say to her, 'Momma, why don't I have a grandma?'  And the only thing she's going to be able to do is pat her on the head and say, 'Don't cry, baby.  It's not so bad.  She was killed by a black man."  FN2

> > FN2. Both the victim and the appellant in this case were Black.

(R. 565; 573-74.)

We find no plain error in the prosecutor's comments during the closing argument at the penalty phase of the trial.  "We have held that it is not reversible error for a prosecutor to suggest that he is speaking on behalf of the victim's family."  *Burgess v. State*, 723 So.2d 742, 754 (Ala.Cr.App.1997), aff'd, 723 So.2d 770 (Ala.1998).  See also *George*

*v. State*, 717 So.2d 849 (Ala.Cr.App.1997), aff'd, 717 So.2d 858 (Ala.), cert. denied, 525 U.S. 1024, 119 S.Ct. 556, 142 L.Ed.2d 462 (1998). Furthermore, victim impact argument is not prohibited at the penalty phase of the trial. *Hutcherson v. State*, 727 So.2d 846 (Ala.Cr.App.1997), aff'd, 727 So.2d 861 (Ala.1998); *Ex parte Slaton*, 680 So.2d 909 (Ala.1996), cert. denied, 519 U.S. 742, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997).

*Frazier v. State*, 758 So.2d 577, 601-604 (Ala.Crim.App. 1999).

## 1.    Guilt Phase Comments

Frazier does not allege the state appellate court's adjudication of this claim is contrary to or an unreasonable application of clearly established Supreme Court precedent. Likewise, he cannot show that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it. Instead, he simply contends the comments deprived him "of due process, a fair trial and an impartial jury pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." (Doc. 7, pp. 84-85). While he does develop some legal support for this conclusion, that support relates only to the comments made at the guilt phase of trial. Frazier declares:

> The guilt phase of a criminal trial is about factual guilt or innocence - the good character of the victim or the impact of the victim's death on those left behind bears no relevance on such an inquiry. *See e.g., Taylor v. Kentucky*, 436 U.S. 478, 488-489 (1978); *Ex parte Rieber*, 663 So.2d 999, 1005 (Ala. 1995) (stating that testimony regarding victim's family not relevant with respect to guilt or innocence and impermissibly admitted in guilt phase); *Hutto v. State*, 178 So. 2d 810 (Ala. 1965) (reversible error for district attorney to show that decedent had

children).  Comments about the loss to a victim's family have been held "highly improper . . . and calculated to inflame the minds of the jury." *Lowman v. State*, 91 So. 2d 697, 699 (Ala. Crim. App. 1956) (overturning conviction due to improper prosecutorial argument about children of deceased).

(*Id.* at 84).

After careful examination of the prosecutorial comments at the guilt phase of trial about which Frazier complains, and after reviewing the state appellate court's lengthy opinion regarding same, it is apparent that Frazier cannot show the state court's adjudication of this claim is contrary to or an unreasonable application of clearly established Supreme Court precedent.  Nor can he show that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it.  The appellate court considered that the comments made by the prosecutor at the guilt phase of trial may have been improper invocations of sympathy to the victim.  In fact, in analyzing his arguments, the state court relied on *Ex Parte Reiber*, the same case Frazier cites here.  And although this point is unmentioned by Frazier, the *Reiber* case is very similar to this case in the following respect.  There, the court found any improper prosecutorial comments concerning victim impact testimony during the guilt phase did not constitute plain error because of the overwhelming evidence against the defendant.  The same is true here.

Moreover, in Frazier's case, the Alabama Supreme Court relied upon some of the most preeminent United States Supreme Court cases on the subject of prosecutorial misconduct when it denied relief to Frazier as to this claim. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations and internal quotation marks omitted).

In light of the full record, it was not in any way unreasonable for the Alabama Court of Criminal Appeals to conclude that these statements did not rise to a level that undermined the fairness of Frazier's trial. Frazier has not offered clear and convincing evidence to rebut the presumption of correctness this court is required to accord the state court's finding. Further, he has not demonstrated that the state appellate court's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable interpretation of the facts in light of the evidence before that court. This claim is due to be denied.

## 2. Penalty Phase Comments

With regard to the state court's determination regarding the prosecutor's comments at the penalty phase of trial, not only does Frazier not contend the decision

is an affront to 28 U.S.C. § 2254 standards, he proffers absolutely no argument in support of this portion of his claim.[113]  Since he has not demonstrated that the state appellate court's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable interpretation of the facts in light of the evidence before that court, this portion of the claim is also due to be denied.

### B.       Request that the Jury "Do the Right Thing"

Next, Frazier alleges his "rights were violated pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution[]," because "the prosecutor improperly implored the jury to 'do the right thing' by

---

[113]The United States Supreme Court in *Payne v. Tennessee*, 501 U.S. 808 (1991) held:

> if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim' s family is relevant to the jury's decision as to whether or not the death penalty should be imposed.  There is no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, 501 U.S. at 827.

sentencing [him] to death[.]"    (Doc. 7, ¶ 278, p. 85)(quoting R. 564-65)).[114]

According to Frazier, such an argument:

> improperly called upon the jury to consider irrelevant and impermissible factors.  The moral evaluation of the prosecutor that the death penalty is "the right thing' . . . . [is a factor] forbidden under the federal constitution.    Th[is] comment[] deprived Mr. Frazier of his constitutional right to a fair trial and reliable sentencing.

(Doc. 7, p. 85).

On direct appeal, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law:

> We find no plain error in the prosecution's exhortation to the jury to "do the right thing" during its closing argument at the penalty phase of the trial.
>
> > "Generally, the prosecutor is in error by exhorting the jury to 'do what's right,' or to 'do its job,' if that exhortation 'implies that, in order to do so, it can only reach a certain verdict, regardless of its duty to weigh the evidence and follow the court's instructions on the law.'"
>
> *McNair v. State*, 653 So.2d at 339-340.  Contrary to the appellant's assertion, we are not convinced that the prosecutor was encouraging the jury "to recommend a sentence of death *regardless* of the weight of the evidence or the instructions of the trial court." (Appellant's brief, p. 39.) (Emphasis added [by appellate court].)  Rather, when the comment is

---

[114]As part of this same sentence, Frazier alleges the prosecutor told the jury, "'that he can't just [kill someone]'— to tell him that "for Pauline Brown and for her family." (*Id.*) (quoting R. 465).  This particular quotation was taken from the prosecutor's closing argument at the *guilt* phase of trial, not the penalty phase.  Frazier further argues that such a comment was improper at the sentencing phase of trial which, again, is a misrepresentation about the timing of the prosecutorial remark.

viewed in the context of the entire closing argument, it is clear that the prosecutor was encouraging the jury to recommend a death sentence based upon the evidence and the law.

*Frazier v. State*, 758 So.2d 577, 604-605 (Ala. Crim. App. 1999).

Frazier's Petition has failed to show that the state court's adjudication of this claim is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Frazier has also made no effort to argue that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it.  This claim is due to be denied.

### C.    Comments Regarding Character and Prior Bad Acts/ Attention During Penalty Phase to Frazier's Outburst at Guilt Phase

Frazier also argues that the prosecutor improperly commented on Frazier's character and prior bad acts  (Doc. 7, ¶ 279, pp. 85-86), and, at the penalty phase of trial, the prosecutor improperly drew the jury's attention at the penalty phase of trial to Frazier's outburst at the guilt phase of trial (Doc. 7, ¶ 280, last two sentences of ¶ 281, ¶¶ 282-83, pp. 86-87). The allegations underlying these two claims intertwine with one another to some extent.  (Doc. 7, pp. 85-87).  Therefore, this court shall examine together the Alabama Court of Criminal Appeals' findings of fact and conclusions of law regarding them together.  The state appellate opinion reads:

The appellant claims that the prosecution improperly commented on his character and on prior bad acts.  In support of this assertion, he refers

this Court to two portions of the prosecution's closing argument made during the penalty phase of the trial.

In the first instance of alleged improper argument, the prosecution stated:

> "And Judge McCormick told you that unlike the aggravating circumstances that we're limited to by statute, the law, in an attempt to bend over backwards to help the defendant, says they can offer you any other aspect of the character, record and background of the Defendant, which they care to offer you. And in the face of that, the wide open door that says they can bring you anything, what have they brought you? That he was 19, that's it. I ask you to use your common sense and logic and draw what logical inference from that you will."

(R. 565-66.)

The appellant argues:

> "By asking the jury to draw the 'logical inference' from the defense's failure to produce evidence of the appellant's good character and clean record, the prosecution is in essence alleging that he doesn't have one. Hence he is telling the jury that the Appellant has bad character and a prior criminal record."

(Appellant's brief, p. 40.)[115]

We find no plain error in the cited portion of the prosecution's argument. We do not interpret the prosecution's comments to be a comment on the appellant's bad character or an indication that he has a prior criminal record; rather, the prosecution was simply commenting on lack of mitigating evidence. This is a proper subject of comment.

---

[115]*See* Doc. 7, ¶ 279, pp. 85-86 for this claim as set out in the Petition.

" '[T]he impeachment of the evidence of defendant and the matter of impairment of its weight are properly matters for argument of counsel. . . .' *Mosley v. State*, 241 Ala. 132, 136, 1 So.2d 593, 595 (1941).  'It is proper for counsel to disparage the case of his opponent if he speaks with propriety and does not go outside the record.'  23A C.J.S. Criminal Law § 1263 (1989)."

*Taylor v. State*, 666 So.2d at 65.

The appellant maintains that the prosecution also improperly commented on his character in the following portion of his argument:

"[T]here's something I'm compelled to talk about that I despise having to talk about, because it has no business in this courtroom in this trial, or in any other trial.

"Tuesday morning you would have thought you were in Chicago in 1970; disruptive, loud, obnoxious.  'I'm not going to sit here for this system, I'm not going to put up with it,' à la Abbe Hoffman and the Chicago Seven and dozens of other people in dozens of other courtrooms in the late '60s and '70s.  And that's where we thought we were. This is a throwback to those days.

"Contrast that, folks, with what you've seen since then, the perfect demeanor.  Why?  I'm going to tell you why.  It's because he got to say what he wanted to say, and that was 'You're racist.'

"Now, what is the real message of this, and why did he calm down after he got to say that?  The real message here, folks, is this: 'I'm black.  Everybody down here is white. And if you sentence me to death, you're a race traitor.' That's the psychological subliminal message you're supposed to get out of that tantrum, that you're a bunch of racists.  'And if you're white, if you sentence me to death, it's not because of what I did, it's because you're white and

209

> you're mistreating me because I'm black.' And that's the seed that he wants to plant in your minds, you're either a race traitor, an 'Uncle Tom,' or you're a 'white racist' who won't give a black man a fair shake."

(R. 566-68.)  The trial court overruled the appellant's objection to the above comments.

The appellant argues that the above comments were improperly intended to portray him as a "bad person who dared to call [the members of the jury] racist, and who is attempting to use his race to get away with something." (Appellant's brief, p. 42.)[116] We find no reversible error in the prosecution's comments.  The appellant's behavior during the trial is the proper subject of comment by counsel.  *Bailey v. State*, 625 So.2d 1182, 1183 (Ala.Cr.App.1993); *Cartwright v. State*, 645 So.2d 326, 328 (Ala.Cr.App.1994). (See Part III of this opinion for a discussion of the appellant's misconduct during trial.)[117]  Furthermore, when the allegedly inappropriate comments are viewed in the context of the entire closing argument, it is clear that the prosecution was encouraging the jury to base its sentencing recommendation on the evidence, and not to be intimidated by the appellant's behavior during trial.

*Frazier v. State*, 758 So.2d 577, 605-06 (Ala.Crim.App. 1999).

After careful examination of the comments complained of at the guilt phase of

trial, and the state appellate court's opinion regarding same, it is apparent that Frazier

cannot show the state court's adjudication of this claim is contrary to or an

unreasonable application of clearly established Supreme Court precedent, nor can he

---

[116]*See* Doc. 7, ¶¶ 280, 281, 282-83, pp. 86-87, ¶ 279, pp. 85-86.

[117]Frazier's behavior is described as part of the court's discussion of Claims VI, VII and VIII.

show that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it.

The prosecutor properly commented on the lack of mitigating evidence presented by Frazier at the penalty phase of trial. While commenting on a defendant at trial simply because he is seated at the defense table may indeed be inappropriate, that is not what occurred here. The prosecutor's comments were proper because they were made for the purpose of encouraging the jury to recommend a penalty based on the evidence, not based on fear of being perceived as a traitor or racist.

Moreover, and contrary to Frazier's contention, the remarks were not an improper attempt to inject race as a sentencing factor. In fact, the purpose of the comments was quite the opposite, and that was to encourage the jury to ignore Frazier's race (as well as their own race, ethnicity and place of birth) thus calling for them to make a recommendation based upon legitimate sentencing concerns. Certainly the argument was dramatic, but that does not render it improper, nor did it, as Frazier suggests, strip him of his individuality[118] before the jury.

Even assuming *arguendo*, that the comments were improper,

Improper arguments [only] render the capital sentencing hearing fundamentally unfair and require reversal when there is a reasonable

---

[118]Frazier argues, "The Eighth Amendment requires the sentences to consider the character and record of the *individual* offender. *Woodson v. North Carolina*, 428 U.S. 280, 304; *Lockett v. Ohio*, 438 U.S. 586, 604-605."

probability that they changed the outcome of the case.  *See id.* at 1402. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 1401 *(quoting Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Spivey v. Head*,  207 F.3d 1263, 1275-76 (11th Cir 2000).  Here, "[t]he comment[s] [did not] 'so infect[] the trial with unfairness as to make the resulting [sentence] a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This claim is due to be denied.

### D.    Comment Regarding Frazier's Failure to Testify or Present Evidence at Penalty Phase

Finally, Frazier alleges that  "[t]he prosecutor improperly commented on Mr. Frazier's failure to testify or present evidence in the penalty phase[119], [R. 571][120], and that the trial court failed to admonish the jury to ignore the comments and avoid forming an adverse inference from them."  (Doc. 7, ¶ 281, p. 86).  Frazier contends that "[i]t is well settled under the law of Alabama and the United States that a

---

[119] The purported comment regarding a failure to present evidence has already been addressed in the discussion of Claims XIV, C and D, *supra*.

[120]Frazier also includes record pages 566 and 568 along with page 571 (and all without any explanation or comment).  Based on this court's review of the record on appeal, it is obvious that only page 571 of the trial transcript was made the subject of Frazier's claim on direct appeal.  (R. Vol. 5, pp. 43-44).  As such, only the allegedly improper comment on Frazier's silence, as found on page 571 of the trial transcript will be considered.

212

prosecutor is strictly forbidden to comment on a defendant's failure to testify or to present a defense." (*Id.*) (citing *Estelle v. Smith*, 451 U.S. 454 (1981); *Doyle v. Ohio*, 426 U.S. 610, 617 (1976); *Griffin v. California*, 380 U.S. 609, 615 (1965); *Ex parte Purser*, 607 So. 2d 301 (Ala. 1992); *Ex parte Williams*, 571 So. 2d 1251 (Ala. 1990); *Powell v. State*, 631 So. 2d 289 (Ala. Crim. App. 1993)).

The Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law when it examined this claim on direct appeal:

> We reject the appellant's assertion that the following portion of the prosecution's closing argument at the penalty phase of the trial constituted an improper comment on his failure to testify:
>
>> "We've all dealt with remorse from people who have children or siblings or friends or neighbors who have done things wrong, beyond the point of mistakes, perhaps maliciously, 'mean-spiritedness,' who later had a perk of their conscience and felt bad about it and apologized. 'I'm sorry, what I did was wrong.' *You've never heard one word like that, not one word. Because the only thing, the only thing that he's sorry about is that he sits right here.*"
>
> (R. 571.) (Emphasis added [by appellate court] to highlight the portion the appellant finds objectionable.)
>
>> During defense counsel's closing arguments, counsel argued:
>
>> "And you know from listening to his statement, his confession to the Detroit police and to Sergeant Ken Glass, he offered no excuse or any reason at the time for doing this, just a confession. Why he confessed, we presented at our first close, feeling that maybe he wanted to get this off his chest."

(R. 557.)

> "I told you earlier that there was no, I think, excuse or justification for what Demetrius Frazier did.  And I told you that he made a confession to both the Detroit Police Department and the Birmingham Police Department.  I told you that to me should indicate that there's been a cleansing of the soul, that he has tried to right a wrong, in perhaps a small way.  But, no, I dare say that nobody would ever know who actually killed Ms. Brown unless Demetrius [had] come forward.  And I think that shows quite a lot.

> "And that's something very difficult to do, is to confess for no reason, just to admit twice that he had done what he did.  And that was a, I submit to you, a very difficult decision for someone his age."

(R. 560.)

When the allegedly objectionable comment is viewed in context, it is apparent that it was made in reply to defense counsel's intimation in closing argument that the appellant should be granted leniency because he confessed his crime to the police.  Counsel has the right to respond to arguments by opposing counsel.  *Chandler v. State*, 615 So.2d 100, 110 (Ala.Cr.App.1992), cert. denied, 615 So.2d 111 (Ala.1993) (Ingram, J., dissenting from denial of certiorari review).  The prosecution was not commenting on the appellant's failure to testify, but rather on the appellant's lack of remorse when he confessed his crime to the authorities.  This is the proper subject of comment.  See *Dobyne v. State*, 672 So.2d 1319 (Ala.Cr.App.), on remand, 672 So.2d 1353 (Ala.Cr.App.1994), aff'd. 672 So.2d 1354 (Ala.1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571, 134 L.Ed.2d 670 (1996); *Taylor v. State*, 666 So.2d at 55.

*Frazier v. State*,  758 So.2d 577, 606-607 (Ala.Crim.App.,1999).

214

Contrary to Frazier's contention, the prosecutor's argument was not an improper comment on his right to remain silent. In *Isaacs v. Head*, 300 F.3d 1232 (11th Cir. 2002), the Eleventh Circuit described the proper manner in which to evaluating a *Griffin* claim:

> The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify. A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so. The defendant bears the burden of establishing the existence of one of the two criteria. The comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement. . . .

> *United States v. Knowles*, 66 F.3d 1146 (11th Cir.1995) (citations, quotations, and footnotes omitted). See also *United States v. LeQuire*, 943 F.2d 1554, 1565 (11th Cir.1991) (same); *Solomon v. Kemp*, 735 F.2d 395, 401 (11th Cir.1984).

> In applying *Griffin*, we have strictly enforced the requirement that a defendant show that the allegedly offensive comment was either manifestly intended to be a comment on the defendant's silence or that the comment naturally and necessarily related to the defendant's silence.

*Id.* at 1270.

After careful review of the *Griffin* standard, as interpreted by this Circuit, it is apparent that Frazier has failed to show the state court's decision "was contrary to or involved an unreasonable application of clearly established law" or "was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Read in context, the prosecutor's comments were replies in kind to argument initially raised by defense counsel, and the comments were restricted to the evidence that had been admitted. Such comments were neither improper nor prejudicial to Frazier. *McNair v. Campbell*, 307 F. Supp.2d 1277, 1324 (M.D. Ala. 2004), *rev'd on other grounds*, *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005), (citing *United States v. Robinson*, 485 U.S. 25, 32 (1988) (finding no Fifth Amendment violation where the prosecutor commented in closing that defendant could have taken the stand and explained his side of the story, when the remarks followed defense counsel's closing argument that the government had not allowed defendant, who did not testify, to explain his side of the story)) (other citation omitted). As there is no evidence whatsoever that the prosecutor's comments in this case were manifestly intended to comment on Frazier's right to silence, and Frazier cannot show that the jury would naturally and necessarily have interpreted the comments as such, this claim is due to be denied.

### E.   Cumulative Effect of the Comments

On direct appeal, the Alabama Court of Criminal Appeals wrote:

> The appellant suggests that the cumulative effect of all the above comments constitutes plain error.[121]   "'Because no single instance of alleged improper conduct constituted reversible error, this Court will not consider the cumulative effect to be greater error. *McNeely v. State*, 524 So.2d 375 (Ala.Cr.App.1986); *Johnson v. State*, 541 So.2d 1112 (Ala.Cr.App.1989).'   *Crymes v. State*, 630 So.2d 120, 123-24 (Ala.Cr.App.1993), aff'd, 630 So.2d 125 (Ala.1993)." *Boyd v. State*, 715 So.2d 825, 851 (Ala.Cr.App.1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 119 U.S. 416, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998).

*Frazier v. State*,  758 So.2d 577, 607 (Ala.Crim.App.,1999).

The majority of the prosecutorial comments in Claim XIV (A-E) were proper and none of them individually rendered Frazier's trial fundamentally unfair - either at the guilt or penalty phase of trial.  Therefore, it stands to reason that Frazier cannot show that the state court's opinion regarding the cumulative effect of the comments was contrary to or an unreasonable application of clearly established Supreme Court precedent, or an  unreasonable determination of the facts in light of the evidence before it.  Accordingly, this claim is also due to be denied.

---

[121]*See* (Doc. 7, ¶285, pp. 87-88) wherein Frazier alleges the comments "individually and *in toto*" were highly prejudicial.

**CLAIM XV:**   **Failure to grant mistrial after Frazier narrowly missed a juror with a thrown object and yelled inflammatory accusations at the jury**

Frazier alleges the trial court deprived him of "a fair and impartial jury, due process and a reliable sentencing pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution" when it refused to "grant a mistrial, adequately question and instruct the jurors and . . . admonish the prosecutor when it capitalized on [an] outburst. . ." created by Frazier in which he "threw a pen at a juror and called the virtually all-white jury racist." (Doc. 7, ¶¶ 286-288, pp. 88-89)

On direct appeal, the Alabama Court of Criminal Appeals made the following findings of fact and conclusions of law, regarding this claim:

> The appellant contends that "[t]he trial court committed reversible error by failing to grant a mistrial after the appellant narrowly missed a juror with a thrown object and yelled inflammatory accusations toward the jury." (Appellant's brief, p. 15.) We disagree.

During the prosecution's opening statement, the following occurred:

> "THE DEFENDANT: (Throws pen across room toward the jury.) Shut the fuck up. That jury right there is racist, man. That jury is racist, man, look at them. That guy looking at me, man. That jury is racist, man. That jury is racist, man. Look at them. Look at that jury, man, 10 mother-fucking white jurors up there. Fuck that.
>
> "(Whereupon, the Defendant was escorted from the courtroom.)
>
> "THE COURT: Go ahead, Mr. Brown [prosecutor].

218

"MR. NEUMANN [defense counsel]: We've got a motion to make, your Honor.

"THE COURT: Folks, I'm going to ask you to go back in the jury room just for a minute, please.

"....

"MR. NEUMANN: Your Honor, at this time we would ask the Court to grant a mistrial in regard to the case before the Court.    We feel that the Defendant's remarks have extremely prejudiced his case with regard to the jury, and I'm referring specifically to the inflammatory accusations that he's made toward the jury.

"We feel that this has tainted, perhaps, their perspective on the case, and we do not feel that he would be able to receive a fair trial from this jury. And for that reason we request a mistrial.

"And we also request that we be relieved from representation of Mr. Frazier due to the fact that we have spent at least 10 or 15 minutes further explaining the procedure and so forth, which we had previously explained to Mr. Frazier sometime last week.  He said he under-he indicated that he understood, he was ready to go to trial, and then when we get out, it obviously has been for naught.

"And I'm referring back to the fact that this goes to point out that for whatever reason he has, he doesn't trust us, and that we do not feel like we could adequately represent him with regard to any further communications throughout the course of the trial.

"THE COURT: Well, I would like the record to reflect that not only did Mr. Frazier make the remarks that are recorded, Mr. Frazier also threw an object at the jury box

and came very close to hitting one of the jurors. I'm not sure what the object was. It appeared to be a pen or something-

"MR. STREET: It was a pen, Your Honor.

"THE COURT: One of the Counsel's pens, which he threw before he made his remarks. *It's very clear to the Court that Mr. Frazier has done this purposefully. He doesn't want to be present in the courtroom, despite our admonitions and our explanations about the consequences of his behavior and that sort of thing. And I'm going to deny the motion for a mistrial. And we'll just proceed without him....*

"*All of this has been brought on by the behavior and willfulness of the Defendant, despite our attempt to make this a fair proceeding.... It wouldn't be fair to the State to declare a mistrial in this case because of the purposeful and willful behavior on behalf of the Defendant, which apparently was his purpose.*"

(R. 199-203.) (Emphasis added [by the appellate court])

A discussion ensued about whether the trial could proceed in the appellant's absence. The trial court ultimately decided to move the trial to a different courtroom, where the appellant could observe the trial from a media room. Court then recessed for lunch.

After returning from the luncheon recess, the following occurred:

"MR. NEUMANN: ... We would ask that the Court bring the jury out before we get started and poll the jury as to any possible reactions they might have with regard to the remarks that Mr. Frazier made and the actions that he took this morning that could possibly influence them or perhaps even prejudice them against the Defendant with regard to the trial, itself....

220

"....

"THE COURT: Well, I want to go back on the record in regard to some things that happened before lunch so the record will be clear about what our present situation is.

"As everyone knows at this point, after the Court repeatedly warned the Defendant about the consequences of his behavior while present in the courtroom and, of course, the consequences of not being present during the trial of this case, and the Defendant repeatedly told the Court that he did not want to be here, that he wanted to be in the hole and that if he was left in the courtroom that he would be violent, and I believe he made reference to assaulting defense counsel at one point.

"Despite my warnings and threats, I allowed him to stay in the courtroom. And, of course, he acted on his threat in the presence of the jury during opening statements by throwing a writing pen at the jury box and came within inches of hitting one of the jurors in the face with that object, and also making some abusive and obscene remarks apparently addressed at the jurors and the fairness of this proceeding.

"The Court now has the Defendant in what we call the 'media room' in the lower courtroom in the courthouse, and this is the room that's normally used by media so they could observe the proceedings as well as hear the proceedings during a trial and not interrupt a trial.

"....

"The Defendant has requested that the Court poll the jurors in regard to the actions that took place before we broke for lunch. Does the State have any response to that request?

"MR. BROWN [prosecutor]: Well, Judge, obviously you can't unring a bell. As I understood Mr. Neumann's

221

request, was that the Court require the jury by, and in so doing implant in their minds the idea that they should completely ignore this, and I would point out to the Court that comments the Defendant made this morning injected the issue of race into this trial, which had no place here, never has any place in a trial, shouldn't be here, and I'd feel 'hamstrung' if the jurors were to be instructed to ignore that and thus not affording us an opportunity at any point throughout the course of this trial to address that issue. That's my only problem in that respect.

"I think it might be best left ignored under the circumstances. If the Court's going to explain to the jury what the logistics of the situation are and Mr. Frazier is in a position to be able to see and hear the proceedings, that it might be more detrimental to both the Defendant and to us to even address that issue.

"Now, if there were any of the jurors who would say, and I think if they insist on them being polled, who would say 'I don't think I can be fair,' then that would be a different matter, but I would hope the Court wouldn't go beyond that point.

"THE COURT: Well, I think at this point, I'm merely going to ask the jurors if there's anyone who feels they cannot be fair in this trial, given what took place in the morning and leave it at that and see if there's any response to that question."

(R. 209-14.)

When the trial court asked the jurors whether they would be unable to give the state and the appellant a fair trial, none of the jurors responded affirmatively.

"'A trial judge is allowed broad discretion in determining whether a mistrial should be

222

declared because he is in the best position to
observe the scenario, to determine its effect
upon the jury, and to determine whether the
mistrial should be granted.' *Dixon v. State*,
476 So.2d 1236, 1240 (Ala.Cr.App.1985). 'A
mistrial is an extreme measure and should be
denied when the prejudicial quality of the
comment [or incident] can be eradicated by
curative instructions.' *Walker v. State*, 631
So.2d 294, 300 (Ala.Cr.App.1993)."

*Berryhill v. State*, 726 So.2d 297, 302-303
(Ala.Cr.App.1998). The trial court determined that the
appellant should not profit from his intentionally disruptive
conduct, so it denied the motion for a mistrial. We find no
abuse of discretion in the trial court's denial of the motion.

"As was previously stated in *Hayes v. State*, 340 So.2d
1142, 1143 (Ala.Cr.App.1976), cert. denied, 340 So.2d
1144 (Ala.1977):

"'As to the appellant's contention that a
mistrial should have been declared, we hold
that one cannot purposefully create grounds
for a mistrial by deliberately causing a
disturbance during the trial. See *Illinois v.
Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25
L.Ed.2d 353 (1970). Such a conclusion is
obviously necessary, otherwise a defendant
faced with imminent conviction could disrupt
the trial, prejudice himself in the jury's eyes
and, therefore, be entitled to another trial.'

"'We will not condone such and thus will not
allow a defendant to benefit from his own
misconduct in the courtroom. The trial judge
here acted in a judicious and completely

223

> proper manner, and we find no error on his
> part in denying the motion for a mistrial.'"

*Hayes v. State*, 340 So.2d 1142, 1143 (Ala.Cr.App.1976),
quoted with approval in *Clemons v. State*, 720 So.2d 961,
976 (Ala.Cr.App.1996), aff'd, 720 So.2d 985 (Ala.1998).
See also *Mack v. State*, 736 So.2d 664 (Ala.Cr.App.1998)
(a defendant will not be allowed to profit from disruptive
behavior).

The appellant argues that the trial court's polling of the jury was
insufficient to eradicate any prejudice caused by his behavior because
the questioning did not occur promptly after his disruptive conduct and
because it was not accompanied by any curative instructions.  The
appellant did not object to the trial court's failure to promptly question
the jurors regarding the outburst, nor did he request any curative
instructions.  In fact, he never indicated that he was dissatisfied with the
trial court's remedy of simply questioning the jurors to determine if they
were adversely effected by his outburst.

> "'[T]here is no requirement that in making a
> motion for a mistrial, defense counsel include
> a request for instructions to disregard.'
> *Covington v. State*, 620 So.2d 122, 127
> (Ala.Cr.App.1993)  See also *Ex parte Marek*,
> 556 So.2d 375, 379 (Ala.1989).
>
> *"While a defendant's failure to request
> instructions as part of his motion for a
> mistrial will not constitute a waiver of the
> issue of the failure to instruct, we think it
> should weigh against any claim of prejudice.*
> Cf. *Ex parte Hart*, 612 So.2d 536, 537
> (Ala.1992), cert. denied, 508 U.S. 953, 113
> S.Ct. 2450, 124 L.Ed.2d 666 (1993) (in a
> capital case, '[t]he failure to object will weigh
> against any claim of prejudice'); *Dill v. State*,
> 600 So.2d 343, 360 (Ala.Cr.App.1991),

> affirmed, 600 So.2d 372 (Ala.1992), cert.
> denied, 507 U.S. 924, 113 S.Ct. 1293, 122
> L.Ed.2d 684 (1993) ('[w]hile th[e] failure [to
> object] does not preclude our review [in
> capital cases], it does weigh against any claim
> of prejudice')."
>
> *Allen v. State*, 659 So.2d 135, 145 (Ala.Cr.App.1994).
> (Emphasis added [by appellate court].)

Although perhaps the better practice would have been to question the jurors immediately regarding any prejudice as a result of the appellant's outburst, and then to instruct the jurors to disregard the appellant's disruptive behavior, under the unique facts of this case we cannot say that the failure to do so amounted to plain error. Rule 45A, Ala.R.App.P. The trial court did ascertain that the jurors were not biased against the appellant because of his conduct in the courtroom. An argument can be made that any further action by the trial court would only have unduly emphasized the appellant's conduct.

*Frazier v. State*, 758 So.2d 577, 593-596 (Ala. Crim. App. 1999).

Frazier does not contend that the state court's reliance upon *Illinois v. Allen*, 397 U.S. 337(1970) to deny his claim was a decision contrary to, or an unreasonable application of, clearly established federal law, nor has he shown that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence before it. Similarly, Frazier has not pointed to any Supreme Court precedent showing that the trial court's manner of handling his outburst justifies any § 2254 relief. Accordingly, this claim is due to be denied.

**CLAIM XVI:**     **Failure to Grant Mistrial After Outburst by the Victim's Family Members**

Frazier alleges that outbursts by the victim's family members during his trial "amounted to improper victim impact evidence that had a highly prejudicial effect on the jury[,]" one that remained uncorrected by the trial judge either through granting defense counsel's motion for mistrial, or instructions to the jury they could not consider the display. (Doc. 7, ¶¶ 289-291, pp. 89-90). Frazier contends the trial court's failure to grant a mistrial or admonish the jury violated his right to "due process and a fair trial pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution." (*Id.* at 89-90) (citing *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978); *Woodson v. North Carolina*, 428 U.S. 280 (1976)).

When the Alabama Court of Criminal Appeals examined this claim on direct appeal, it made the following findings of fact and conclusions of law.

> During the trial, as the appellant's audiotaped confession was being played, two members of the victim's family became emotional. Specifically, the following occurred:
>
> > "MS. PHYLLIS BROWN: Why you did that, why did you hurt mama like that? Why you do her like that?
> >
> > "MS. STARKS: That's my baby. Oh, mercy, I can't take that. I can't take no more."
>
> (R. 443.) Both family members were escorted from the courtroom.

226

The appellant later moved for a mistrial, arguing that the outburst from the victim's family members had prejudiced his case. The trial court denied the motion for a mistrial.

The appellant contends that the trial court erred in denying his motion for a mistrial. He maintains that at the very least, the trial court should have instructed the jury to disregard the outbursts. The state did not address this contention in its brief to this Court.

The appellant's motion for a mistrial was not timely-it was not made immediately after the victim's family members made the statements. *Powell v. State*, 631 So.2d 289, 292 n. 2 (Ala.Cr.App.1993.) Nevertheless, because this is a case where the death penalty has been imposed, the appellant's failure to timely move for a mistrial does not preclude review of this allegation under the plain error rule. Rule 45A, Ala.R.App.P.

We have thoroughly reviewed the record and find no plain error in the trial court's failure to grant the mistrial.

"In *McNair v. State*, 653 So.2d 320 (Ala.Cr.App.1992), this Court held:

> """As a general rule, a demonstration by, or the misconduct of, a bystander or spectator during a criminal trial-including even a disturbance having a tendency to influence or disturb the jury-is not deemed to be sufficient reason for the granting of a new trial unless it appears that the rights of the accused were prejudiced thereby, and, generally, in the absence of a showing to the contrary, it will be assumed that the jury was not prejudiced; similarly, manifestations of grief by spectators related to the victim of a crime, as a general matter, will not alone furnish good ground for a new trial, a showing being required that the case of the accused was prejudiced by such conduct."

227

"'Annot., 31 A.L.R.4th 229, 234-35 (1984). This same general rule also applies to emotional manifestations made while testifying. 31 A.L.R.4th at 235-36. See *Hall v. State*, 500 So.2d 1282, 1290-91 (Ala.Cr.App.1986) (rape victim cried during her testimony); *Smith v. State*, 37 Ala.App. 116, 118, 64 So.2d 620, 621, cert. denied, 258 Ala. 647, 64 So.2d 622 (1953) (assault victim "cried aloud" during testimony); *James v. State*, 44 Ala.App. 593, 595, 217 So.2d 545, 547 (1969) (assault with intent to rape victim cried twice during testimony); *Lee v. State*, 265 Ala. 623, 627, 93 So.2d 757, 761 (1957) (wife of deceased murder victim "sobbing" while testifying); *Duff v. State*, 40 Ala.App. 80, 83, 111 So.2d 621, 624 (1958), cert. denied, 269 Ala. 696, 111 So.2d 627 (1959) (mother of deceased murder victim "crying out loud" during prosecutor's opening statement). This rule applies in capital cases. See *Henderson v. State*, 583 So.2d 276, 287 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).

"'The emotional manifestations present rise nowhere near the level presented in *Collum v. State*, 21 Ala.App. 220, 221, 107 So. 35, 35-36 (1926) (new trial required where in a prosecution for seduction, the prosecutrix fainted in the witness chair, and mother came to her aid weeping and crying, "Nobody knows how much we have suffered over this trouble. Lord have mercy on us.") and *White v. State*, 25 Ala.App. 323, 324, 146 So. 85 (1933) (new trial required where widow of

228

> murder victim contradicted defense counsel during his closing argument).

>> "'Here, as in *Smith*, 37 Ala.App. at 118, 64 So.2d at 621: "The trial judge witnessed the incidents. To him must of necessity be committed a wide discretion in determining whether or not the occurrences affected the rights of the accused to a fair, impartial trial." We find no merit to the appellant's argument that the prosecution should have been required to call witnesses who were not members of the victim's family.'

> "See also *Uldric v. State*, 43 Ala.App. 477, 480, 192 So.2d 736, 739, cert. denied, 280 Ala. 718, 192 So.2d 739 (1966) (mistrial properly denied where judge promptly instructed and admonished jury to disregard outburst by widow of deceased)."

*DeBruce v. State*, 651 So.2d 599, 608-09 (Ala.Cr.App.1993), aff'd, 651 So.2d 624 (Ala.1994). See also *Gaddy v. State*, 698 So.2d 1100, 1140 (Ala.Cr.App.1995), aff'd, 698 So.2d 1150 (Ala.), cert. denied, 522 U.S. 1032, 118 S.Ct. 634, 139 L.Ed.2d 613 (1997).

The appellant did not request that the trial court admonish the jury to disregard the outburst by the victim's family members. As discussed above, this failure to request curative instructions weighs heavily against any claim of prejudice. *Allen*, supra. While the better practice would have been to instruct the jury to disregard the outburst, we cannot say that the trial court's failure to do so amounts to reversible error, especially in light of the fact that the appellant apparently did not find the conduct so offensive as to move immediately for a mistrial or to request curative instructions.

*Frazier v. State*  758 So.2d 577, 596 -597 (Ala. Crim. App. 1999).

In his Petition, Frazier argues the outbursts "amounted to highly prejudicial victim impact evidence that had a highly prejudicial effect on the jury." (Doc. 7, p. 89) (citing *Taylor v. Kentucky*, 436 U.S. 478, 488-489 (1978); *Woodson v. North Carolina*, 428 U.S. 280 (1976)). In his reply brief, Frazier argues that the outburst violated his right to a fair trial and due process of law and that violation "unreasonably went uncorrected by the Alabama state courts . . .." (Doc. 24, pp. 82-83).

This court has examined the Supreme Court cases cited by Frazier and finds no support in those cases[122] for Frazier's contention that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it. Although the outbursts were improper, and the trial court should have addressed the matter with the jury, that is not enough for Frazier to show he is entitled to relief. In light of the overwhelming evidence against Frazier, he was not prejudiced by the outbursts even though the court did not do address them and refused to grant a mistrial. This claim is due to be denied.

---

[122]*See* footnote 30 and 31, *supra*.

**CLAIM XVII:**    **Requirement that Frazier Wear a Leg Brace During Trial**

Frazier next argues that the trial court erred in requiring petitioner to wear a leg brace during the trial, a requirement that led to his exclusion from the courtroom and his eventual constraint by shackles visible to the jury.  (Doc. 7, ¶¶ 292-95, pp. 90-91).  Frazier did not raise this claim either at trial or on direct appeal.  It was presented for the first time in his Rule 32 petition, and found by the trial court to be procedurally barred pursuant to Rule 32.2(a)(3) & (5).[123]  The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[124]

Frazier concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal; nevertheless, he asserts the ineffective assistance of his appellate counsel excuses any default.  (Doc. 24, pp. 83-84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Frazier has set out the allegations underlying this claim as support for an independent claim of ineffective assistance of appellate counsel.  (*See* Claim XXIV,

---

[123]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 87-88, and the trial court's order regarding same. *Id*. at Vol. 14, Tab 49, pp. 69.

[124]*Frazier v. State*, mem. op., CR-01-1317.  *See* C.R. Vol. 14, Tab. 50 pp. 1-2.

231

Doc. 7, pp. 115-116).  These allegations appear in a laundry list of various errors he

claims were made by appellate counsel:

> Appellate counsel failed to raise substantive claims challenging the
> court's: . . .insistence that Mr. Frazier wear a leg brace throughout the
> trial and the subsequent exclusion of Mr. Frazier from the courtroom
> and insistence that he be shackled in front of the jury upon his return;
> . . . .

(*Id.*).  These allegations fail to meet the two pronged standard for establishing a

constitutional claim of ineffective assistance of appellate counsel.[125]  Frazier cannot

state a such a claim.  He also cannot establish cause and prejudice to excuse the

procedural default of the substantive claim at issue.  Based on the foregoing, as well

as a careful examination of the record and applicable law, this court finds it is

precluded from further review of the claim, and that the claim is due to be dismissed

as procedurally defaulted.

### CLAIM XVIII:   Failure to Exclude Cumulative, Irrelevant and Prejudicial Photographs and Forensic Evidence

Frazier also argues that the trial court failed to exclude cumulative, irrelevant

and prejudicial photographs and forensic evidence recovered and taken at the crime

scene and offered into evidence by the State.  (Doc. 7, ¶¶ 296-99, pp. 91-92).  Frazier

---

[125]Moreover, the state court correctly found the allegations against appellate counsel were insufficiently pled and thus procedurally defaulted.  And as can be seen by this court's examination of the ineffectiveness claim (see Claim XXIV discussion further herein), Frazier cannot show he is entitled to relief on this claim.

did not raise this claim either at trial or on direct appeal.  It was presented for the first time in his Rule 32 petition, and found by the trial court to be procedurally barred pursuant to Rule 32.2(a)(3) & (5).[126]  The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[127]

Frazier concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal; nevertheless, he asserts the ineffectiveness of his appellate counsel excuses any default.  (Doc. 24, pp. 83-84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Frazier has set out the allegations underlying this claim as support for an independent claim of ineffective assistance of counsel on direct appeal.  *See* (Claim XXIV, Doc. 7, pp. 115-16).  These allegations appear in a laundry list of various errors he claims were made by appellate counsel:

> Appellate counsel failed to raise substantive claims challenging the court's: . . .insistence that Mr. Frazier wear a leg brace throughout the trial and the subsequent exclusion of Mr. Frazier from the courtroom and insistence that he be shackled in front of the jury upon his return; . . . .

---

[126]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 88-89, and the trial court's order regarding same. *Id*. at Vol. 14, Tab 49, p. 69.

[127]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

(*Id.*).   These allegations fail to show that counsel was objectively deficient or that Frazier was prejudiced thereby.   His failure to state a constitutional claim of ineffective assistance of appellate counsel[128] also shows that he cannot establish cause and prejudice sufficient to excuse the procedural default of the substantive claim at issue.   Based on the foregoing, as well as a careful examination of the record and applicable law, this court finds it is precluded from further review of the claim, and that the claim is due to be dismissed as procedurally defaulted.

### Claim XIX:   Double Counting of Robbery as an Element of the Capital Offense and as an Aggravating Circumstance

Next, Frazier contends that the double counting of robbery as an element of the capital offense and as an aggravating circumstance was improper and unconstitutional.   (Doc. 7,   ¶¶ 300-03, pp. 92-93).   Frazier did not raise this claim either at trial or on direct appeal.   It was presented for the first time in his Rule 32 petition, and found to be procedurally defaulted by the trial court pursuant to Rule

---

[128]The state court correctly found the ineffectiveness claim was insufficiently pled.   As can be seen by this court's examination of the ineffectiveness claim (see Claim XXIV discussion further herein), Frazier cannot show he is entitled to relief on this claim.

32.2(a)(3) & (5).[129]  The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[130]

Frazier concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal; nevertheless, he asserts the ineffective assistance of his appellate counsel excuses any default.  (Doc. 24, pp. 83-84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Frazier has set out the allegations underlying this claim as support for an independent claim of ineffective assistance of counsel on direct appeal.  (*See* Claim XXIV, Doc. 7, pp. 116-17).  These allegations appear in a long list of appellate counsel errors Frazier claims were made by his appellate counsel:

> Appellate counsel failed to raise substantive claims challenging the court's: . . .error in allowing the prosecution to submit as it only aggravating factor murder during a robbery, a factor that does not serve to narrow the field of capital defendants at all in the penalty phase because it is used as an elevator in the guilt phase to render the crime death-eligible . . . .

---

[129]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 93-94, and the trial court's order regarding same. *Id*. at Vol. 14, Tab 49, p. 70.

[130]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

(*Id.*).  These allegations do not meet the two prong standard required for a showing of ineffective assistance of appellate counsel.[131]  Alternatively, it is well-known that the type of double-counting about which Frazier complains is constitutionally acceptable. *See Lowenfeld v. Phelps*, 484 U.S. 231,244-46 (1988).  As Frazier clearly cannot state a claim for ineffective assistance of appellate counsel, he also cannot establish cause to excuse the procedural default of the substantive claim at issue.  Therefore, the claim has been procedurally defaulted and due to be dismissed.  Alternatively, the claim is due to be denied because it is without merit.

### Claim XX:        Failure to Suppress Frazier's Coerced and Involuntary Statements

Next, Frazier contends that his alleged confessions were coerced and involuntary, and the trial court erred by permitting their introduction at trial.  (Doc. 7,  ¶¶ 304-19,  pp. 93-97).  Frazier alleges a plethora of reasons[132] that his statement should have been suppressed as coerced and involuntary.  (Doc. 7, pp. 93-97).  Respondent answers that the claim is procedurally defaulted for several reasons

---

[131]Moreover, the state court correctly found that the ineffectiveness claim was insufficiently pled.  As can be seen by this court's examination of the ineffectiveness claim (*see* Claim XXIV discussion further herein), Frazier cannot show he is entitled to relief on this claim.

[132]The majority of these assertions were not raised or argued during trial counsel's litigation of the  motion to suppress in the trial court.  Those reasons presented in this Habeas Petition that were not first brought to the attention of the trial or appellate court on direct review are procedurally defaulted.

(Doc. 16, pp. 56-57), but only one is of any import at this stage of the court's examination of Frazier's claim.  Specifically, Respondent declares that the state appellate court correctly affirmed the trial court's summary dismissal of the claim pursuant Alabama Rules of Criminal Procedure 32.2(a)(2) and (a)(5) because the claim, as it was characterized, raised, and addressed at trial, was not raised on direct appeal.  (*Id.* at 56).  *See also*, *Frazier v. State*, Order on Remand (Rule 32 C.R. Vol. 14, Tab. 49, p. 71).  Respondent contends these rules are adequate and independent state procedural rules, and as such, the claim is procedurally defaulted for federal review purposes.  (*Id.*).

Frazier does not deny that he failed to raise as error the trial court's denial of the motion to suppress on direct appeal.  However, he argues the "ineffective assistance of counsel [he received] at trial and on appeal[]" establishes the cause necessary to excuse "[h]is failure to comply with Rules 32.2(a)(3) and 32.2(a)(5)."  (Doc. 24, pp 70-71) (citing *Coleman v. Thompson*, 510 U.S. 722, 750 (1991)).  Frazier alleges he can establish he was prejudiced by the error as well, since the State had "very little physical evidence against [him].  Without a confession, he argues, the prosecution had no case."  (*Id.* at 70).

There are many other claims that Frazier has procedurally defaulted.  Just as with those other claims, here he asserts that he can overcome the default because of

the ineffectiveness of his trial and appellate counsel.  He argues that ineffectiveness constitutes the cause and prejudice necessary to overcome the default.  In analyzing these claims, the court begins with an examination of the independent ineffectiveness claims raised by Frazier as those claims relate to allegations regarding his statements.

This court has already addressed the ineffective assistance of trial counsel claim involving suppression of Frazier's statement and found that claim to be procedurally defaulted, or alternatively without merit.  (*See* discussion of Claim IV, *supra*).  As such, the ineffectiveness of trial counsel does not provide Frazier with an avenue to overcome the procedural default of this claim.

As to the ineffectiveness of appellate counsel claim, Frazier declares:

> Appellate counsel was ineffective for failing to raise the issue of Mr. Frazier's illegally obtained statement to law enforcement officers.  Trial counsel presented the court with a written motion to suppress Mr. Frazier's statement. CR. 33-4. Then, in the pretrial suppression hearing, trial counsel elicited testimony from Officer Kenneth Glass of the Birmingham Police Department that before a statement was taken from Mr. Frazier he was not informed of his right to bond as required by federal court order. R. 23.  In addition, trial counsel elicited testimony and argued that because law enforcement officers had threatened Mr. Frazier into giving his statement the statement should have been suppressed as involuntarily taken.  R. 25.  Trial counsel objected to the admission of Mr. Frazier's purported *Miranda* waiver forms and his statement.  R. 393; 401; 416; 429.  Despite counsel's objections at trial and law enforcement's clear violations of Mr. Frazier's rights pursuant to federal court order, *Miranda v. Arizona*, 384 U.S. 436 (1966), and the Fourth and Fifth Amendments to the United States Constitution, appellate counsel failed to raise this issue on direct appeal.

238

(*Id.* at 114).

Although, as already noted, Frazier lists a plethora of reasons why his statement should have been suppressed, almost all of these assertions were *never* raised at trial and none of which were raised on appeal. Yet, even in that laundry list of defaulted arguments, Frazier never complained that the absence of information concerning bond rendered the *Miranda* warnings given to him ineffectual. As such, Frazier has failed to establish any cause and prejudice to overcome his procedural default of this claim.

Frazier does allege, as part of his ineffective assistance of appellate counsel, that the statement should have been suppressed because trial counsel elicited testimony and argued that law enforcement officers had threatened Mr. Frazier into giving his statement.[133] However, this claim is flawed because Frazier does not provide any legal or factual support to show why the trial court's failure to suppress

---

[133]At the pre-trial suppression hearing, Frazier testified that he had been physically threatened into giving a statement by a Detroit police officer, and that another officer was aware of it, although he left the room while the coercive behavior occurred. On the other hand, the Detroit police officer who actually took Frazier's statement testified that no such intimidation occurred. It was the role of the trial judge to determine the credibility of the witnesses before him. The court clearly disbelieved Frazier's version of events and decided that under the totality of the circumstances, Frazier's confession was knowingly, intelligently and voluntarily given. Frazier alleges that appellate counsel was ineffective for failing raise the trial court's decision as error; however, he offers no legal or factual basis upon which this court could possibly find that no reasonable appellate lawyer would have foregone this claim on direct appeal. Nor has he shown that, had the claim been raised on direct appeal, there is a reasonable probability it would have met with success before the appellate court.

the statement was erroneous.   Nor does he discuss why there is a reasonable

probability that, if appellate counsel had raised the claim on direct appeal, he would

have convinced the appellate court that the trial court erroneously failed to suppress

the statement.   Thus, Frazier has failed to state a claim upon which relief can be

granted with regard to his complaint concerning appellate counsel's failure to raise

the suppression issue on direct appeal.   Accordingly, he has failed to establish cause

and prejudice to overcome the procedural default of the substantive claim.   The claim

is therefore, procedurally defaulted and due to be dismissed.

**Claim XXI**:          **Prosecution's Failure to Disclose Exculpatory Evidence
to Defense**

Frazier also argues that the prosecution violated its constitutional obligations

to disclose exculpatory evidence to the defense.   (Doc. 7,  ¶¶ 320-31, pp.  98-101).

Frazier did not raise this claim either at trial or on direct appeal.   It was presented for

the first time in his Rule 32 petition, and found by the trial court to be procedurally

barred:

> In *Payne v. State*, 791 So.2d 383, 397 (Ala. Crim. App. 1999), the Court
> of Criminal Appeals held that a *Brady* claim presented for the first time
> in a Rule 32 petition must meet the requirements of newly discovered
> evidence as defined by Rule 32.1 ARCrP.   Frazier fails to plead in his
> Rule 32 petition that the allegations [underlying his *Brady* claim] are
> based on newly discovered evidence or allege how the evidence is
> exculpatory.   *See Boyd v. State*, 746 So.2d 364, 408 (Ala. Crim. App.
> 1999).   This claim is procedurally barred because it could have been but

was not raised at trial and because it could have been but was not raised on appeal.  Rules 32.2(a)(3) & (5).[134]

The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[135]  Respondent asserts that the state court correctly applied its procedural rules to Frazier's *Brady* claim, and as such, this court is precluded from federal review of the claim.  (Doc. 16, pp. 57-58).  Frazier argues the procedural default should not be honored because:

> Alabama courts have not regularly followed and consistently applied Alabama Rule of Criminal Procedure 32.1(e). . . .  [I]n *Ex parte Pierce*, 851 So.2d 606 (Ala. 2002), the court held that a juror misconduct claim discovered after trial, although subject to the procedural bars of Rule 32.2(a)(3) and (a)(5), is cognizable in Rule 32 proceedings if the petitioner shows the claim could not have been raised at trial or on direct appeal.  *Id.* at 614.  Juror misconduct and *Brady* are paradigmatic post-conviction claims because the underlying facts are virtually always unknown (and unavailable) to counsel after trial.  The Alabama Courts failure to Rule 32.1(e) with regard to such similar claims demonstrates that Rule 32.1(e) is not regularly followed in Alabama and thus poses no barrier to federal habeas review.

(Doc. 24, pp. 76-77).  The court finds this argument to be without merit.

Frazier attempts to couch his argument as one that shows Rule 32.1(e) is neither firmly established or regularly followed.  Actually, he is really making a novel assertion that *Brady* claims should be procedurally managed by Alabama courts in the

---

[134]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 115-19, and the trial court's order regarding same. *Id*. at Vol. 14, Tab 49, p. 71-72.

[135]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R.Vol. 14, Tab. 50, pp. 1-2.

same manner as all juror misconduct claims.  Frazier does not dispute that he was required to raise his *Brady* claim in accordance with Rule 32.1(e).  If his argument is really that Rule 32.1(e) was neither firmly established or regularly followed by the Alabama courts, he should have made some attempt to show that, during the time period in which his petition was being reviewed in Alabama, Rule 32.1(e) was not consistently and regularly applied to *Brady* claims.  In other words, if Frazier really had desired to attack the adequacy of Rule 32.1(e), he should have devoted his attention to the rule itself and its application to his *Brady* claim.  He has not.

Just as important, Frazier does not deny that he failed to plead that the allegations underlying his *Brady* claims were newly discovered material facts or exculpatory.  In fact, on the face of the pleadings, it is obvious that the existence or nonexistence of the material Frazier argues should have been disclosed to him was either known or could have been discovered through the exercise of reasonable diligence *before or at trial*.  Specifically, Frazier contends the prosecution should have disclosed:

> the identity of the Detroit police officer who assaulted Mr. Frazier during the custodial interrogations, R. 44-52; the 'rap sheets' and other law enforcement records on prosecution witnesses; the crime scene diagram prepared by Ofc. Greg Bearden, R. 294-95, 303-04; the evidence collection report prepared by Ofc. Bearden, R. 299, 303-04; and the semen sample, and other trace evidence, collected from the victim's body, R. 440-41.  Additionally, the State failed to collect, preserve and otherwise document material evidence including, but not

limited to: the fingerprints of Tyrone Mitchell, Michael Smith, members of the victim's family, and other individuals who had access to the kitchen and car windows where fingerprints were found; and other clothing the victim was wearing at or near the time of the homicide; and the alleged change found in and outside the victim's home.

(Doc. 7, p. 100).

Frazier has also failed to explain why the information was exculpatory or constituted material impeachment evidence. Based on the foregoing, as well as careful examination of the record and applicable law, the court finds the state court's default findings are adequate and independent to preclude further review of the claim. This claim is procedurally defaulted and is due to be dismissed.

### Claim XXII:        State's Destruction of Material Exculpatory Evidence

Frazier complains he was denied due process of law when the crime scene detective's (Mr. Bearden) diagram and field notes were lost and when the State destroyed the semen evidence gathered from the victim. (Doc. 7, ¶¶ 332-37, pp. 101-03). Frazier did not raise this claim either at trial or on direct appeal. It was presented for the first time in his Rule 32 petition, and found by the trial court to be procedurally defaulted pursuant to Rules 32.2(a)(3) & (5).[136] The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision.[137]

---

[136]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 119-124, and the trial court's order regarding same. *Id*. at Vol. 14, Tab 49, p. 72.

[137]*Frazier v. State*, mem. op., CR-01-1317. *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

Frazier concedes this claim is procedurally defaulted; nevertheless he asserts the ineffective assistance of his trial and appellate counsel excuses any default. (Doc. 24, pp. 77-80) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  This court has already examined Frazier's independent ineffectiveness of trial counsel claim to the extent it could relate to Detective Bearden's field notes and diagram, and found them to be procedurally defaulted, or in the alternative, without merit.  (*See* discussion of Claim IV, *supra*). The court has also examined whether Frazier set out the allegations underlying this claim as support for an independent claim of ineffective assistance of counsel on direct appeal.  (*See* Claim XXIV,  Doc. 7, pp. 114-15).  The only other allegations raised by Frazier that relate to the matters at issue in this claim appear in a laundry list of various errors he assigns to appellate counsel:

> Appellate counsel failed to raise as substantive claims the following actions and inactions of the court: require that the State look for the missing report and diagram produced by its evidence technician, Greg Bearden and that the State put on evidence pertaining to the loss of the report and diagram, R. 295; . . .

(*Id.*).  However, in making the allegations, Frazier fails to explain why appellate counsel's failure to assert this error was objectively deficient, nor do his allegations show how the failure was constitutionally prejudicial under the *Strickland* standard.[138]

Because Frazier clearly cannot state a claim for ineffective assistance of appellate counsel, he also cannot rely on his appellate counsel's purported ineffectiveness to establish cause to excuse the procedural default of the substantive claim at issue.  For these reasons, and after a careful examination of the record and applicable law, this court finds it is precluded from further review of the claim.  This claim is procedurally defaulted and due to be dismissed.

## CLAIM XXIII:    Juror Bias and Misconduct

Frazier alleges that four jurors engaged in egregious instances of juror misconduct, and as such, he is entitled to a new trial and/or new sentencing hearing. (Doc. 7, ¶¶ 338-377, pp. 103-113).  Although the procedural development of this claim has already been examined in the "Procedural History' portion of this Memorandum Opinion, the court will review it again.

---

[138]Frazier did not even make an independent ineffectiveness of appellate counsel claim with regard to the destruction of the semen taken from the victim.  Moreover, the state court found these ineffectiveness claims made by Frazier were insufficiently pled and failed to state a claim.  As can be seen by this court's § 2254(d) examination of the ineffectiveness claim (*see* discussion of Claim XXIV, *infra*), Frazier cannot show he is entitled to any relief on this claim.

Frazier filed a petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on September 24, 2001. (Rule 32 C.R. Vol. 7, Tab. 31, pp. 1-178). The State filed an Answer on January 31, 2002. (*Id.* at Vol. 8, Tab. 32, pp. 1-75). Frazier's petition was summarily denied by the trial court in a one (1) page docket entry order on February 8, 2002. (*Id.* at Vol. 14, Tab. 47).

On March 19, 2002, Frazier's counsel filed "an emergency motion to reconsider and withdraw the case action summary sheet denying his Rule 32 petition; and in the alternative, to withdraw its case action summary sheet, enter a new order, and ensure that petitioner is promptly notified of that order." (*Id.* at Vol. 10, pp. 1-12).[139] Simultaneously therewith, Frazier filed an amended Rule 32 petition. (*Id.* at Vol. 9-10, Tab. 33, pp. 1-209). All of the claims in the amended petition were exactly the same as the original petition, except that Frazier added a juror misconduct claim. (*Id.* at Vol. 10, Tab. 33, pp. 191-204). Frazier alleged that he had just discovered the basis for the claim, and could not have filed the claim it any earlier pleading. (*Id.*).

---

[139]Frazier points out that the State requested, and was afforded four months to respond to the Rule 32 petition. The case action summary shows that the State twice asked for extensions of time to answer and those requests were granted. (Rule 32 C.R., Vol. 7, pp. 1-3). On February 4, 2002, four days after the State filed its January 31, 2002, answer, Frazier filed an unopposed motion requesting to file a reply brief by March 15, 2002. (*Id.* at 3). Still, the trial court summarily dismissed the entire petition on February 8, 2002.

On March 21, 2002, Frazier also filed a Notice of Appeal. (*Id.* at Vol. 10, pp. 639-48).   The State responded with a Motion to Strike Frazier's motion for reconsideration on the grounds the trial court had no authority to consider such a post-judgment motion because Rule 32 did not afford such procedure in post-conviction proceedings, and that Frazier's only avenue for relief was through the state appellate process. (*Id.* at Vol. 10, pp. 662-65).   The trial court granted the State's motion to strike Frazier's motion to reconsider on April 3, 2002. (*Id.* at Vol. 7, p. 7). The trial court never mentioned or addressed Frazier's amended Rule 32 petition.

On  February 28, 2003, the Alabama Court of Criminal Appeals remanded the case with instructions to the trial court.   The appellate court directed the trial judge to correct numerous deficiencies in the judgment and also directed the trial court to hold an evidentiary hearing if Frazier's claims met the requirements for such a hearing. *Frazier v. State*, 884 So.2d 908 (Ala. Crim. App. 2003).   The appellate court also found that the juror misconduct claim in the amended petition could not be heard because:

> it was filed after the appellant had knowledge that his original petition had been denied[140], and beyond the two year statute of limitations period.   The certificate of final judgment was issued on December 30, 1999, and the amended petition was filed on March 19, 1992.   Thus, it

---

[140]Not surprisingly, in his reply brief, Frazier completely fails to mention this portion of the appellate court's opinion on remand.  (Doc. 24, pp. 41-46).

247

was precluded from review by the trial court. Rule 32.2(c), Ala.R.Crim.P.

*Frazier v. State*, 884 So.2d 908, 911 (Ala. Crim. App. 2003).

After remand, no evidentiary hearing was held, and on March 7, 2003, the trial court entered a corrected order in which it again denied Frazier post-conviction relief. At the very end of its remand order denying Frazier's Rule 32 petition, the trial court placed the following footnote:

> [FN2] Frazier filed an amended Rule 32 petition after his original petition was dismissed. The Court will not consider any new claims in Frazier's amended petition because the petition was filed outside the 2-year statute of limitations period of Rule 32.2(c) and, therefore the new claims do not relate back to claims in the original petition. See State's brief on appeal from the original denial of the Rule 32 petition at pp. 12-13; see also *Charest v. State*, 2001 WL 1637234 (Ala. Crim. App. 2001).

*Frazier v. State*, mem. op., CC-95-2606.60, p. 75, n.2. On August 15, 2003, the Alabama Court of Criminal Appeals affirmed and adopted the trial court's decision as its own in an unpublished opinion. *Frazier v. State*, CR-01-1317 (Ala. Crim. App. 2003).

Frazier sets forth two reasons why he should be allowed to proceed with his juror misconduct claim. First, he contends Alabama's relation-back doctrine, as applied to amendments to Rule 32 petitions[141] filed after the statute of limitations, was

---

[141]Frazier fails to mention that this rule was being applied to *pending* Rule 32 petitions.

248

neither firmly established and regularly followed when he was litigating his post-conviction proceedings, and as such, the state court's refusal to consider the claim based on that procedural rule cannot preclude federal review.  (Doc. 24, pp. 41-45). Second, Frazier argues that he amended his petition "well before the entry of judgment" and, because Alabama is liberal in its allowance of amendments, his juror misconduct claim should have been considered.

Frazier's first argument simply lacks any merit.  The court declines to engage in an in depth discussion regarding the relation-back doctrine to amendments to *pending* Rule 32 petitions, when the amendment is filed after the statute of limitations has passed[142] because, in Frazier's case, the proposed amendment to his Rule 32 petition was filed after a final entry of judgment.

---

[142]In 2005, the Alabama Supreme Court held that the relation-back doctrine, as found in Alabama Rule of Civil Procedure 15, could not be applied to Rule 32 petitions as Alabama Rule of Criminal Procedure 32.4 "specifically mandates that Rule 32 proceedings are governed by the Rules of *Criminal* Procedure." *Ex parte Jenkins*, — So.2d — , 2005 WL 796809, *3 (Ala. 2005)(emphasis in opinion).  In doing so, it expressly overruled all previous appellate opinions that had utilized Rule 15 as a mechanism to refuse to address amendments to Rule 32 petitions filed outside of the statute of limitations, including *Charest v. State*, 854 So.2d 1102 (Ala.Crim.App.2002), an opinion that superceded the withdrawal of the opinion cited by the trial court in footnote 2 of its order on remand as quoted above.

Additionally, in its discussion, the Alabama Supreme Court examined the genesis of Rule 15's application to Rule 32 petitions  in the state's appellate history, and found that it first appeared in *Garrett v. State*, 644 So.2d 977 (Ala. Crim. App. 1994).  *Ex parte Jenkins*, at *3.  The next application did not appear until *Charest v. State*, 854 So.2d  1102 (Ala. Crim. App. 2002).  Thus, Frazier is correct that the application of Rule 15's relation-back doctrine to post-conviction proceedings was neither firmly established nor regularly following during the time period in which he was litigating his Rule 32 petition.

As to his second argument, Frazier makes the conclusory assertion that his amendment was filed well before entry of judgment, but provides no legal or record basis to support it.  His assertion is patently incorrect.  Pursuant to Alabama Rule of Appellate Procedure Rule 4(a), "the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry date of the judgment or order appealed from."  ALA. R. APP. P. 4(a). In its remand order, the Alabama Court of Criminal Appeals unequivocally found that Frazier's amendment was filed <u>after</u> entry of final judgment.  The claim is procedurally defaulted and is due to be dismissed.

### **Claim XXIV:** **Ineffective Assistance of Appellate Counsel on Direct Appeal**

Frazier dedicates nine pages of his Petition in support of his contention that his appellate counsel was ineffective.  (Doc. 7, ¶¶ 378-97, pp. 113-22).   These claims, as raised in the Rule 32 petition, were summarily dismissed by the trial court for failure to meet the full factual and pleading requirements of Rule 32.3 and 32.6(b) or because they failed to state a claim under Rule 32.7(d).  (*See* Rule 32 C.R. Order on Remand, Vol. 14, Tab. 49, pp. 55-63).  The trial court's order was adopted by the Alabama Court of Criminal Appeals on Return from Remand.  (*Id.*, Tab. 50 pp. 1-2).

In its answer, Respondent asserts that:

> As to all claims below that were dismissed for failure to meet the specificity requirements of Rules 32.6(b) and 32.3, not only should the dismissals be considered adjudications on the merits, they should also be considered dismissal under (sic) an adequate and independent state law ground - namely, the failure to meet a state law pleading requirement.

(Doc. 16, p. 60).   Respondent maintains this same position when separately addressing the individual claims as well.  (*Id.* at 60-80).

After careful consideration, this court finds that, to the extent the state court dismissed Frazier's ineffective assistance of counsel claims for failure to meet the specificity and full factual disclosure requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b), Frazier's ineffective assistance of appellate counsel claims in the present Habeas Petition are procedurally defaulted because the state court relied upon adequate and independent state procedural rules to dismiss the claims.  Even if the trial court's procedural default ruling can be construed as a decision on the merits, along with the trial court's ruling on Frazier's remaining ineffective assistance of appellate counsel claims (that were denied on the merits for failure to state a claim upon which relief could be granted), Frazier cannot show that the trial court's decision was contrary to, or an unreasonable application of, clearly established federal law.  Nor can he show that the decision was based upon an unreasonable determination of the facts in light of the evidence before it.

251

Although the national standard for judging the effectiveness of counsel under the Sixth Amendment has already been examined, it bears repeating as a prerequisite to discussion of the claims in this section.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The court further elaborated as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

In order to show ineffectiveness of counsel, a movant must demonstrate that his or her attorney's performance fell below "an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  When making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983). The court must also be mindful that a defendant in a criminal case has a constitutional right to adequate counsel; he is <u>not</u> entitled to Brendan Sullivan. *See Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir. 1988).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *See Strickland v. Washington*, 466 U.S. at 687. Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred.

Against this standard, the court will examine Frazier's allegations of ineffective assistance of counsel on appeal. As stated earlier, none of the ineffectiveness allegations in Frazier's Petition are sufficient to entitle him to relief. First, a large portion of those assertions are simply a seemingly endless list of complaints floating adrift of any reasoned connection with other circumstances. For instance, paragraph 381 is a 1 ½ page *sentence*, a sample of which reads:

> Appellate counsel also failed to raise as substantive claims the following actions and inactions by the trial court: grant trial counsel's motions for

individual, sequestered voir dire, R. 4; change the venue of trial or least sequester the jurors during the proceedings, R. 164; question prospective juror Benjamin Jackson to determine if he had learned any information about the charged crime through his job in the circulation department of the Birmingham News, R. 85: . . . . [etc., . . ]

(*Id.* at 114-15).  And in the very next paragraph (number 182 which is also one sentence), Frazier again alleges that appellate counsel did not raise numerous instances of trial court error on direct appeal, and follows this with another 1 ½ page laundry list of allegations and observations.  (*Id.* at 116-17).  While paragraphs 384 and 385 are a bit more proportionate to normal paragraph size, each is still comprised of a one sentence list of complaints against appellate counsel, constructed in the same manner as the illustration above, and claim that various counsel failed to adequately brief or raise various claims.  (*Id.* at 117-18).  The circumstances surrounding the allegations are not described, leaving the court with no context in which to assess whether the claims meet the *Strickland* standard.

The other "paragraphs" in Frazier's Petition contain claims that are equally without merit - although presented in a somewhat converse fashion.  For example, "paragraph" number 379 is a simply short sentence that reads, "On direct appeal, appellate counsel for Mr. Frazier failed adequately to raise a number of meritorious

claims[,]"[143] and "paragraph" number 387 reads, "Appellate counsel failed to raise the substantive claim that Mr. Frazier was extradited illegally." (*Id.* at 113 and 119, respectively).

Frazier also alleges that appellate counsel was ineffective for failing to raise the issue of Mr. Frazier's illegally obtained statement to law enforcement officers. (Doc. 7, p. 114). He then simply lists how this issue progressed through the trial court and never proffers any legal or factual support to support a claim that the admission of the statement into evidence was error by the trial court.

He presents as equally an unsubstantiated claim in connection with failing to raise a claim of "double jeopardy regarding Mr. Frazier's prosecution for three counts of murder," even though one of his convictions was reversed on appeal, by arguing that he was prejudiced because "other irrelevant evidence" magnified the heinousness of the crime." (*Id.* at 117). The same reasoning applies to appellate counsel's failure to raise certain claims of prosecutorial misconduct on direct appeal and his conclusory[144] assertion that Alabama's statutory scheme of defining capital offenses

---

[143]This may simply be a prefatory remark since it occurs close to the beginning of this ground for relief, but because of the manner in which Frazier has organized the claim further therein, that is not altogether clear. Out of an abundance of caution, the court addresses it as an attempt to state a claim.

[144] Frazier's string cites to *Furman v. Georgia*, 408 U.S,. 238 (1972); *Gregg v. Georgia*. 428 152 (1976); *Zant v. Stephens*, 462 U.S. 862 (1983); and *Woodson v. North Carolina*, 428 U.S. 280 (1976) provide no support for Frazier's argument that Alabama capital sentencing scheme is insufficiently narrow.

fails to "narrow the class of defendants eligible for the death penalty." (*Id*. at 118-19).

Last, Frazier's contention that appellate counsel was ineffective for prematurely raising and failing to support the ineffective assistance of trial counsel claims is without merit; particularly for reasons already set out earlier in the opinion. Frazier completely fails to show that the state court's decision to deny this claim was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence before it.

For the foregoing reasons, this court finds that Frazier's ineffective assistance of appellate counsel claims are procedurally defaulted and/or without merit.

**Claim XXV:**          **Challenge to Alabama Methods of Execution [Lethal Injection and Electrocution]**

Frazier also asserts that he cannot lawfully be executed because the methods of execution [lethal injection and electrocution] in Alabama are forbidden by federal and international law. (Doc. 7, ¶¶ 398-489, pp. 122-58). This claim was not raised at trial or on direct appeal. It was presented for the first time in Frazier's Rule 32 petition, and found by the trial court to be procedurally barred pursuant to Rule

32.2(a)(3) & (5).[145]  The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision during collateral proceedings.[146]

Frazier concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal.  (Doc. 24, pp. 83-84).  However, he argues the default should be excused because his appellate counsel was constitutionally ineffective for failing to raise the claim and he was prejudiced thereby.  (*Id.* at 84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Frazier has set out some of the allegations underlying this claim as support for an independent claim of ineffective assistance of counsel on direct appeal, but only as to electrocution as an unconstitutional method of execution prohibited by the Eighth Amendment.  (*See* Petition, Claim XXIV, Doc. 7, pp. 114-15).  The allegation, which appears at the end of a laundry list of various errors he assigns to appellate counsel, reads as follows:

> Appellate counsel failed to raise as substantive claims the following actions and inactions by the trial court: . . . find electrocution (sic) cruel and unusual under the Eighth Amendment to the United States Constitution.

---

[145]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 127-60, and the trial court's order regarding same. *Id.* at Vol. 14, Tab 49, p 73.

[146]*Frazier v. State*, mem. op., CR-01-1317.  *See* Rule 32 C.R. Vol. 14, Tab. 50, pp. 1-2.

(*Id.*).   This allegation fails to state a constitutional claim of ineffective assistance of appellate counsel.[147]  Moreover, the challenge is moot since Alabama no longer utilizes electrocution as a method of execution.   Finally, the court notes that Frazier has not attempted to make an ineffectiveness claim against appellate counsel based upon any failure to challenge lethal injection as a method of execution violative of federal and international law.

Because Frazier clearly cannot state a claim for ineffective assistance of appellate counsel, he also cannot establish cause to excuse the procedural default of the substantive claim at issue.   For these reasons, and based upon a careful examination of the record and applicable law, this court finds it is precluded from further review of this claim.

**Claim XXVI:        Execution as Cruel and Unusual Punishment**

Next, Frazier contends that execution would constitute cruel and unusual punishment in violation of international and federal law.  (Doc. 7, ¶¶ 490- 550, pp. 159-176).  This claim was not raised at trial or on direct appeal.  It was presented for the first time in his Rule 32 petition, and found by the trial court to be procedurally

---

[147]Moreover, the state court correctly found the ineffectiveness of appellate counsel claim was insufficiently pled.  As can be seen by this court's examination of the ineffectiveness claim (*see* court's discussion Claim XXIV, *infra*), Frazier cannot show he is entitled to any relief.

barred pursuant to Rule 32.2(a)(3) & (5).[148]  The Alabama Court of Criminal Appeals summarily affirmed the trial court's decision during collateral proceedings.  *See Frazier v. State*, mem. op., CR-01-1317.

Frazier concedes this claim is procedurally defaulted pursuant to Alabama Rule of Criminal Procedure 32.2(a)(5) because it was not raised on direct appeal.  (Doc. 24, pp. 83-84).  However, he argues the default should be excused because his appellate counsel was constitutionally ineffective for failing to raise the claim and he was prejudiced thereby.  (*Id.* at 84) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Regardless, Frazier completely failed to even raise an independent ineffective assistance of counsel relating to the underlying allegations in this claim, and therefore Frazier has failed to establish cause and prejudice necessary to excuse the procedural default of this claim.  This claim is procedurally defaulted and due to be dismissed.

**Claim XXVII:     Cumulative Effect of the Constitutional Violations**

Finally, Frazier contends that his convictions and sentences must be vacated because the cumulative effect of the constitutional violations demonstrate a complete breakdown in the adversarial process. (Doc. 7,  551-60, pp.  176-77).  In support of

---

[148]*See* Rule 32 C.R. Vol. 7, Tab. 31, pp. 160-64, and the trial court's order regarding same. *Id.* at Vol. 14, Tab 49, p. 73.

this claim, Frazier simply repeats in short order (*i.e.*, one or two sentences) approximately six claims already discussed in detail in his Petition. (Doc. 7, pp. 176-77). He contends that each of the constitutional errors made in connection with those claim merit habeas relief but additionally, that "the cumulative effect [of] those errors 'was so prejudicial as to strike at the fundamental fairness of the trial.'" (*Id.* at 177) (quoting *United States v. Parker*, 997 F.2d 219, 222 (6th Cir. 1999). He also points to several other cases from other circuits to support this conclusion.

When this claim was examined on collateral review, the trial court's holding, as affirmed and adopted by the trial court read:

> The claims of ineffective assistance of trial or appellate counsel contained in Frazier's Rule 32 petition fail to meet the specificity and full factual pleading requirements of Rules 32.3 and 32.6(b), fail to state a claim or establish a material issue of fact or law as required by Rule 32.7(d), or are refuted by the record and are without merit. The remaining claims in Frazier's Rule 32 petition are procedurally barred under Rule 32.2(a) ARCrP. No claim in Frazier's Rule 32 petition contains facts that, if true, would establish that trial counsel's performance was deficient or caused him to be prejudiced in any way. The Court finds therefore, that there is no cumulative effect that would warrant granting Frazier relief. See *Ex parte Woods*, 789 So.2d 941, 942, n.1 (Ala. 2001)(holding on direct appeal were "no one instance amounts to error at all. . . the cumulative effect cannot warrant reversal.").

(Rule 32 C.R. Vol. 14, Tab. 49, pp. 73-74).

Frazier has failed to assert or show that the state court's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent, or

260

based on an unreasonable determination of the facts in light of the evidence before

it.  Accordingly, this claim is due to be denied.

## CONCLUSION

For all of the reasons set out in the Memorandum Opinion, Frazier's Petition

for writ of habeas corpus and his requests for an evidentiary hearing are due to be

denied.  A separate order denying the habeas relief he seeks will be entered.

**DONE** and **ORDERED** this _____28th_____ day of September, 2007.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE